EXHIBIT A

Justin T. Beck, Esq. (Cal. Bar No. 53138)
Ron C. Finley, Esq. (Cal. Bar No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
Jeremy M. Duggan, Esq. (Cal. Bar No. 229854)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: jbeck@beckross.com
       rfinley@beckross.com
       abismonte@beckross.com
       chansen@beckross.com
       jduggan@beckross.com

Attorneys for Plaintiffs
Richard W. Berger and Brant W. Berger

(ENDORSED)
FILED

SEP 12 07

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
J. Zenzen       DEPUTY

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| RICHARD W. BERGER and BRANT W. BERGER,<br><br>Plaintiffs,<br><br>v.<br><br>SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an individual; BURNETT, BURNETT, & ALLEN, a California partnership; DOUGLAS B. ALLEN, an individual; and DOES 1-100, inclusive;<br><br>Defendants. | Case No. 107CV-094074<br><br>COMPLAINT FOR:<br><br>1. PROFESSIONAL NEGLIGENCE<br>2. BREACH OF CONTRACT<br>3. FRAUD<br>4. NEGLIGENT MISREPRESENTATION<br>5. BREACH OF FIDUCIARY DUTY |

Plaintiffs allege:

### Parties

1.  Plaintiffs Richard W. Berger and Brant W. Berger are individuals who reside in the State of California. Plaintiffs are the named inventors and joint owners of United States Patent

Complaint                                    1

1  Nos. 5,913,530 (the '530 patent) and 6,196,569 (the '569 patent).

2.  Defendant Seyfarth Shaw LLP is an Illinois limited liability partnership and a law firm with offices in the State of California. During the events that form the basis of this action, defendant Jack L. Slobodin was an attorney and partner of Seyfarth Shaw.

3.  Defendant Jack L. Slobodin is an individual who does business in the County of Santa Clara, State of California. Defendant Slobodin is a California attorney licensed under State Bar No. 34203.

4.  **Defendant Burnett, Burnett & Allen is a California partnership and a law firm that does business in the County of Santa Clara, State of California.** On information and belief, defendant Douglas B. Allen is, and at all relevant times has been, an attorney and partner of defendant Burnett, Burnett & Allen.

5.  Defendant Douglas B. Allen is an individual who does business in the County of Santa Clara, State of California. Defendant Allen is a California attorney licensed under State Bar No. 99239.

6.  At all times relevant to the matters alleged in this complaint, an attorney-client relationship existed between plaintiffs and defendants.

7.  The true names and capacities, whether individual, corporate, associate, or other, of the defendants sued as DOES 1 through 100, inclusive, are unknown to plaintiffs, who sues those defendants under such fictitious names pursuant to Code of Civil Procedure § 474. Plaintiffs are informed and believe, and based thereon allege, that each fictitious defendant is in some way responsible for, participated in, or contributed to the matters and things of which Plaintiffs complain herein, and in some fashion, has legal responsibility therefore. When Plaintiffs ascertain the exact identity of each such fictitious defendant and the nature of each fictitious defendant's responsibility for, participation in, and contribution to, the matters and things herein alleged, Plaintiff will seek to amend this complaint and set forth the same.

8.  Plaintiffs are informed and believe and thereon allege that each defendant named in this action, including Doe defendants, at all relevant times, was the agent, ostensible agent, servant, employee, representative, assistant, joint venturer, or co-conspirator of each of the other

1  defendants, and was at all times acting within the course and scope of his, her, or its authority as
2  agent, ostensible agent, servant, employee, representative, or co-conspirator, and with the same
3  authorization, consent, permission, or ratification of each of the other defendants.

### General Allegations

5  9.  The '530 patent and the '569 patent describe and claim a novel step-in binding (the Berger Binding) used for snowboards and other applications that permits the user to easily and instantly rotate foot position relative to the snowboard while the rider is stopped or in motion. Plaintiffs filed the patent application that matured into the patents at issue in this suit with the United States Patent and Trademark Office on June 16, 1997.

10.  Because of the Berger Binding's novel and attractive design, it quickly developed significant market appeal. The value of the Berger Binding was recognized by Rossignol Ski Company, Incorporated, a large French ski equipment company ("Rossignol"). In 1998, Rossignol began marketing its own tool-less rotatable snowboard binding that copied the Berger invention.

11.  On April 13, 1998, plaintiffs sent a letter to Rossignol advising Rossignol of plaintiffs' pending patent claims and inviting Rossignol to discuss collaboration and licensing options. Over the next two years, plaintiffs attempted to negotiate an agreement with Rossignol. Ultimately, Rossignol refused to obtain a license but continued to use plaintiffs' technology and sell the tool-less rotatable binding.

12.  Meanwhile, the '530 patent issued on June 22, 1999 and the '569 patent issued on March 6, 2001. Reginald Suyat, a senior partner of the law firm of Fish & Richardson at the time, handled the prosecution of those patents through the United States Patent and Trademark Office.

13.  To help plaintiffs prepare their infringement action against Rossignol, Suyat prepared claim charts (the Suyat Claim Charts) explaining how the Rossignol binding infringed both the '530 patent and the '569 patent (i.e. setting forth where each element of each claim was found in the Rossignol binding). Significantly, the Suyat Claim Chart for the '530 patent illustrated that, like the plaintiffs' claimed invention, the Rossignol binding had a "lower attachment (item 5b) connectable to a board" that rotated "relative to" the "upper attachment" (item 3).

14. In or about early 2003, plaintiffs spoke with defendant Slobodin, a partner with Seyfarth Shaw, about filing a patent infringement action against Rossignol. On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the Intellectual Property Group at Seyfarth Shaw, expressing interest in the Berger patent infringement action against Rossignol. According to Slobodin, the "Rossignol bindings do seem to infringe and the prosecution attorney [Suyat] also believes so." Slobodin estimated that the settlement value of the infringement action based on past sales was "at least $6 million" plus future royalties of "about $8 million and another $13 million internationally." Slobodin stressed that "If Rossignol is interested in settlement, we [Seyfarth Shaw] can make a relatively large fee without putting too much into the case."

15. On or about October 13, 2003, Suyat sent Slobodin a copy of the Suyat Claim Charts.

16. On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding he had used to produce the Suyat Claim Charts. Although Suyat specifically requested the return of the binding, Seyfarth Shaw never returned it, prejudicing plaintiffs' ability to later repeat Suyat's work.

17. On or about December 22, 2003, J. Terry Stratman, a Seyfarth Shaw attorney, sent a memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

18. In preparing to file their patent infringement action against Rossignol, plaintiffs also retained defendants Douglas B. Allen and Burnett, Burnett, & Allen (collectively "Allen"). Allen had no prior experience in handling patent infringement actions, but had represented plaintiffs in real estate matters. Accordingly, Slobodin and Seyfarth Shaw agreed to collaborate with Allen and provide the requisite advice and assistance to Allen in handling the patent infringement action against Rossignol.

19. On June 2005, plaintiffs (through defendant Allen) filed their patent infringement action against Rossignol alleging infringement of the '530 patent and the '569 patent in the United States District Court for the Northern District of California, styled *Berger v. Rossignol Ski*

Complaint    4

1  *Company, Inc.*, Case No. 3:05-CV-02523-CRB.

2    20.   The District Court held the initial Case Management Conference in *Berger v. Rossignol* on November 18, 2005. On or about the same day, Allen met with Slobodin and Suyat to discuss and strategize concerning plaintiffs' pending action against Rossignol.

3    21.   Immediately after the initial Case Management Conference, Slobodin assured plaintiffs that he would supervise the litigation and Allen to ensure that all important deadlines would be met and appropriate procedures followed, and that he soon would file a formal appearance in *Berger v. Rossignol*.

4    22.   The Northern District of California Patent Local Rules require that:

> No later than 10 days after the initial Case Management Conference, a party claiming patent infringement must serve on all parties a 'Disclosure of Asserted Claims and Preliminary Infringement Contentions.'

Those "Infringement Contentions" must include

> A chart identifying where each element of each asserted claim is found within each Accused Instrumentality.

In other words, a claim chart.

5    23.   Plaintiffs' Infringement Contentions required under the Northern District's Patent Local Rules were due on or about December 3, 2005. On information and belief, Allen failed to serve the Infringement Contentions by the required deadline because he had not yet received the required claim chart from Slobodin.

6    24.   On or about December 16, 2005, Allen wrote to Slobodin, with a copy to Suyat, asking for the claim chart:

> We need the "Claims Chart" in the above matter as soon as possible. I have left you a couple of voicemail messages in regards to this matter. We would greatly appreciate your immediate attention and cooperation in regards to this matter. If you have any questions, please feel free to contact us at the above.

7    25.   On or about January 3, 2006, Slobodin provided Allen with the claim chart prepared by J. Terry Stratman of Seyfarth Shaw. Slobodin also forwarded a Seyfarth Shaw memorandum which appeared to question the validity of one of the claims of the '569 patent, but without

explaining the appropriate legal steps that Allen should take in light of that memorandum.

26. The following day, on January 4, 2006, Allen served on Rossignol "Supplemental Initial Disclosure Pursuant to Patent Local Rule 3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions" (the Defective Infringement Contentions), including and based upon the Seyfarth Shaw Claim Chart for the '530 patent that Slobodin had just sent.

27. The Seyfarth Shaw Claim Chart used in the Defective Infringement Contentions differed from the Suyat Claim Chart for the '530 patent in an important way that rendered plaintiffs' Infringement Contentions fatally defective. The Suyat Claim Chart properly illustrated that, like the plaintiffs' claimed invention, the Rossignol binding had a "lower attachment (item 5b) connectable to a board" that rotated "relative to" the "upper attachment" (item 3). In contrast, the chart in the Defective Infringement Contentions included the Rossignol "coupler base" (item 4) as part of the "lower attachment." That error was the basis for the court's subsequent ruling that the Rossignol product did not literally infringe the '530 patent. The '530 patent requires that the "lower attachment" rotate "relative to" the "upper attachment." But in the Rossignol product the "coupler base" rotates with the upper attachment, not relative to it.

28. In addition, the Defective Infringement Contentions did not include either a claim chart, or any mention at all, of the '569 patent. That omission erroneously waived plaintiffs' contention that the Rossignol product infringes the '569 patent.

29. Finally, the Defective Infringement Contentions made no contention of infringement under the Doctrine of Equivalents of either the '530 or '569 patents. The Northern District of California Patent Local Rules require such a contention if a patent holder wishes to assert infringement under the Doctrine of Equivalents.

30. On February 21, 2006, seizing on the errors in the Defective Infringement Contentions, Rossignol filed a motion for summary judgment against plaintiffs on various grounds including that (1) plaintiffs' Infringement Contentions confirmed that the Rossignol binding does not infringe the '530 patent; and (2) no claims were asserted as to the '569 patent.

31. On March 14, 2006, Seyfarth Shaw filed its formal appearance in the *Berger v. Rossignol* patent litigation.

Complaint

32. The following day, on March 15, 2006, defendants filed on plaintiffs' behalf a Motion to Defer Rossignol's Motion for Summary Judgment on the ground that plaintiffs needed to conduct discovery before the court could rule on Rossignol's motion. Defendants did not attempt to correct the errors in the Defective Infringement Contentions in that motion.

33. On March 21, 2006, the court denied plaintiffs' Motion to Defer.

34. On March 27, 2006, defendants filed on plaintiffs' behalf a Motion for Leave to File Amended Disclosure of Asserted Claims and Infringement Contentions with supporting declarations from defendants Slobodin and Allen. In presenting that motion, defendants conceded that plaintiffs' Defective Infringement Contentions "were not complete and contained errors," but did not explain how those errors occurred. Specifically, defendants concealed the fact that Seyfarth Shaw had prepared the defective claim chart incorporated into the Defective Infringement Contentions. On information and belief, defendants concealed that fact in order to hide Slobodin and Seyfarth Shaw's early involvement in the *Berger v. Rossignol* patent infringement action and participation in preparing the Defective Infringement Contentions.

35. On March 27, 2006, defendants also filed on plaintiffs' behalf an opposition to Rossignol's motion for summary judgment (1) conceding that plaintiffs' Infringement Contentions were defective; and (2) making no argument that Rossignol's binding infringed the '530 patent under the Defective Infringement Contentions. Specifically, that opposition argued:

> [Rossignol's] noninfringement argument that accused binding is "missing the 'rotation of the upper attachment relative to the lower attachment' limitation," . . . is based on an error in Plaintiff[s'] preliminary claim chart. In that regard, Plaintiff[s'] original claim chart erroneously stated that the rotatable base 4, or coupler base, is part of the lower attachment. Plaintiffs' referring to the rotatable base, or coupler base, as part of the lower attachment was an error. The rotatable base, our coupler base, is not part of the lower attachment. Under the correct infringement contention, where the coupler base is not part of the lower attachment, the "rotation [o]f the upper attachment relative to the lower attachment limitation" is fulfilled.

36. The hearing on Rossignol's Motion for Summary Judgment and Plaintiffs' Motion for Leave to File Amended Disclosure of Asserted Claims and Infringement Contentions took place on April 14, 2006. During that hearing, defendant Slobodin, arguing on plaintiffs' behalf,

again concealed the fact that the errors in plaintiffs' Infringement Contentions resulted from a defective claim chart prepared by Seyfarth Shaw, that formed the basis for the Defective Infringement Contentions. Moreover, when the court specifically asked Slobodin when he and Seyfarth Shaw became involved in the case, defendant Slobodin intentionally misled the court to believe that:

    A. Slobodin did not have a copy of the claim chart prepared on behalf of plaintiff before it was served on January 4, 2006;

    B. Seyfarth Shaw was not involved in the action at the time that the Infringement Contentions were prepared or served; and

    C. Seyfarth Shaw did not record any time in connection with the action until after Rossignol filed its Motion for Summary judgment on February 27, 2006.

Those misrepresentations and concealments of material fact were intentionally made to conceal Slobodin and Seyfarth Shaw's early involvement in representing plaintiffs and error in preparing the mistaken claim chart that was incorporated into the defective Infringement Contentions.

    37. On April 25, 2006, the District Court denied plaintiffs' Motion for Leave to Amend and granted Rossignol's Motion for Summary Judgment.

    38. In denying plaintiffs' Motion for Leave to Amend, the District Court held that plaintiffs failed to show "good cause" because (1) "plaintiffs offer no explanation as to why the 'errors' were made in the first place, and, in particular, how they could have 'mistakenly' omitted any contentions as to the '569"; (2) the Patent Local Rules did not permit plaintiffs to "qualify" their infringement contentions so as to permit them to be revised at a later date; (3) plaintiffs did not diligently seek to amend their infringement contentions; (4) the addition of co-counsel at such late juncture was not "good cause," and (5) defendants would be prejudiced by the proposed amendment.

    39. In granting Rossignol's Motion for Summary Judgment, the District Court noted that (1) "Plaintiffs all but admit noninfringement based on their original infringement contentions"; and (2) "Plaintiffs make no other representation regarding infringement based upon the original infringement contentions."

Complaint    8

40. On April 25, 2006, the District Court also entered Judgment in favor of Rossignol as to plaintiffs' patent infringement claims.

41. Plaintiffs later appealed the District Court's judgment to the United States Court of Appeals for the Federal Circuit. On January 10, 2007, defendant Slobodin argued on plaintiffs' behalf at the Oral Argument before the Federal Circuit. During that argument, Slobodin continued to conceal his and Seyfarth Shaw's early representation of plaintiffs and preparation of the defective Seyfarth Shaw Claim Chart used in plaintiffs' Defective Infringement Contentions. When the Federal Circuit asked Slobodin how the errors occurred in plaintiffs' Defective Infringement Contentions, Slobodin deceptively replied, "the attorney that was handling it before me did that for whatever reason I am not sure."

42. On January 16, 2007, the Federal Circuit affirmed the District Court's April 25, 2006 judgment in favor of Rossignol.

43. All defendants continued to represent plaintiffs through the Federal Circuit appeal and at least through the Federal Circuit's denial of the appeal on January 16, 2007.

44. In March 2007, defendant Seyfarth Shaw sent plaintiffs a legal bill in the amount of $341,350.77 for legal work performed through February 27, 2007. According to that bill, $253,536.06 of that amount was for legal work performed by defendants Slobodin and Seyfarth Shaw prior to July 11, 2006.

### FIRST CAUSE OF ACTION

Professional Negligence

(Against All Defendants)

45. Plaintiffs repeat and reallege paragraphs 1 through 44.

46. Defendants expressly and impliedly led plaintiffs to reasonably believe that defendants would competently represent plaintiffs in connection with their patent infringement action against Rossignol.

47. Defendants owed plaintiffs a duty to exercise a degree of learning, skill, diligence, and judgment ordinarily possessed by attorneys who practice and provide legal serves in the same or similar area of practice and under the same or similar circumstances.

48. Based on the facts alleged above, defendants breached their respective duties to exercise the requisite degree of learning, skill, diligence, and judgment.

49. As a direct and proximate result of defendants' professional negligence as alleged above, plaintiffs have suffered damages in an amount that is presently unknown but believed to exceed $75 million.

## SECOND CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

50. Plaintiffs repeat and reallege paragraphs 1 through 44.

51. Plaintiffs and defendants entered into a contract under which defendants agreed to represent plaintiffs in their patent infringement action against Rossignol.

52. As part of their contract with plaintiffs, defendants agreed to exercise a degree of learning, skill, diligence, and judgment ordinarily possessed by attorneys who practice and provide legal serves in the same or similar area of practice and under the same or similar circumstances.

53. Based on the facts alleged above, defendants breached their respective duties to exercise the requisite degree of learning, skill, diligence, and judgment.

54. Plaintiffs have performed all duties required of them under the applicable contracts.

55. As a direct and proximate result of defendants' breach of contract as alleged above, plaintiffs have suffered damages in an amount that is presently unknown but believed to exceed $75 million.

## THIRD CAUSE OF ACTION

### Fraud

### (Against All Defendants)

56. Plaintiffs repeat and reallege paragraphs 1 through 44.

57. Defendants knowingly or recklessly concealed numerous material facts from plaintiffs including, but not limited to, the following:

A. That defendants did not have the requisite degree of learning, skill, diligence, and judgment to competently represent plaintiffs in their patent infringement lawsuit against Rossignol;

B. That defendants would not maintain prompt, open, honest, and frank communication amongst themselves so as to ensure competent representation of plaintiffs;

C. That Seyfarth Shaw in fact prepared the defective Seyfarth Shaw Claim Chart that was incorporated into, and formed the basis of, plaintiffs' Defective Infringement Contentions;

D. That defendants intended to and did serve Defective Infringement Contentions that did not include any infringement contentions as to the '569 patent;

E. That defendants intended to and did serve Defective Infringement Contentions that did not allege any patent infringement under the Doctrine of Equivalents;

F. That defendants would conceal from the District Court and the Federal Circuit that Seyfarth Shaw provided legal services to plaintiffs before the service of plaintiffs' Defective Infringement Contentions;

G. That defendants would conceal from the District Court and the Federal Circuit that Seyfarth Shaw prepared the defective Seyfarth Shaw Claim Chart that was incorporated into plaintiffs' Defective Infringement Contentions; and

H. That defendants would conceal from the District Court and the Federal Circuit why there were errors in plaintiffs' Defective Infringement Contentions.

58.  Plaintiffs reasonably relied on defendants' misstatements and omissions to their detriment. If plaintiffs had known the true facts, plaintiffs would not have permitted defendants to represent them in their lawsuit against Rossignol.

59. As a direct and proximate result of defendants' fraudulent conduct as alleged above, plaintiffs have suffered damages in an amount that is presently unknown but believed to exceed $75 million.

60. Defendants' conduct was willful, fraudulent, malicious, and oppressive. As a result, plaintiffs are entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

Negligent Misrepresentation

(Against All Defendants)

61. Plaintiffs repeat and reallege paragraphs 1 through 44.

62. Defendants negligently concealed numerous material facts from plaintiffs including, but not limited to, the following:

    A. That defendants did not have the requisite degree of learning, skill, diligence, and judgment to competently represent plaintiffs in their patent infringement lawsuit against Rossignol;

    B. That defendants would not maintain prompt, open, honest, and frank communication amongst themselves so as to ensure competent representation of plaintiffs;

    C. That Seyfarth Shaw in fact prepared the defective Seyfarth Shaw Claim Chart that was incorporated into plaintiffs' Defective Infringement Contentions;

    D. That defendants intended to and did serve Defective Infringement Contentions that did not include any infringement contentions as to the '569 patent;

    E. That defendants intended to and did serve Defective Infringement Contentions that did not allege patent infringement under the Doctrine of Equivalents;

    F. That defendants would conceal from the District Court and the Federal Circuit the extent to which Seyfarth Shaw provided legal services to

plaintiffs before the service of plaintiffs' Defective Infringement Contentions; and

  G. That defendants would conceal from the District Court and the Federal Circuit why there were errors in plaintiffs' Infringement Contentions.

63. Plaintiffs reasonably relied on defendants' misstatements and omissions to their detriment. If plaintiffs had known the true facts, plaintiffs would not have permitted defendants to represent them in their lawsuit against Rossignol.

64. As a direct and proximate result of defendants' negligent misrepresentation as alleged above, plaintiffs have suffered damages in an amount that is presently unknown but believed to exceed $75 million.

## FIFTH CAUSE OF ACTION

Breach of Fiduciary Duty

(Against All Defendants)

65. Plaintiffs repeat and reallege paragraphs 1 through 44.

66. At all times relevant to the matters alleged in this complaint, defendants served as plaintiffs' fiduciaries.

67. As fiduciaries, defendants owed plaintiffs the highest degree of trust, honesty, loyalty, candor, and good faith.

68. Defendants breached their fiduciary duties owed to plaintiffs by, among other things:

  A. Representing plaintiffs in a patent infringement action without having the requisite degree of learning, skill, diligence, and judgment to competently represent them;

  B. Failing to maintain prompt, open, honest, and frank communication so as to ensure competent representation of plaintiffs;

  C. Concealing from the District Court and the Federal Circuit that Slobodin and Seyfarth Shaw provided legal services to plaintiffs before the service of plaintiffs' Defective Infringement Contentions;

      D. Concealing from the District Court and the Federal Circuit that Seyfarth Shaw prepared the defective Seyfarth Shaw Claim Chart that was incorporated into plaintiffs' Defective Infringement Contentions; and

      E. Concealing from the District Court and the Federal Circuit the reasons why there were errors in plaintiffs' Defective Infringement Contentions.

69. Defendants committed the above breaches of fiduciary duty in order to conceal their misconduct while acting in conscious disregard for the harm that their actions would likely cause plaintiffs to suffer.

70. As a direct and proximate result of defendants' breaches of fiduciary, plaintiffs have suffered damages in an amount that is presently unknown but believed to exceed $75 million.

71. Defendants' conduct was willful, fraudulent, malicious, and oppressive. As a result, plaintiffs are entitled to an award of punitive damages.

PRAYER FOR RELIEF

Plaintiffs pray for judgment against the defendants as follows:

1. An award of damages according to proof;

2. An award of punitive damages according to proof as to the third and fifth causes of action;

3. Prejudgment interest;

4. Attorneys' fees;

5. Costs; and

6. Such other and further relief as may be appropriate.

Dated: September 12, 2007            Beck, Ross, Bismonte & Finley, LLP

By: _____
Ron C. Finley
Attorneys for the Plaintiffs
Richard W. Berger and Brant W. Berger