Justin T. Beck, Esq. (Cal. Bar No. 53138)
Ron C. Finley, Esq. (Cal. Bar No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
Jeremy M. Duggan, Esq. (Cal. Bar No. 229854)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: jbeck@beckross.com
       rfinley@beckross.com
       abismonte@beckross.com
       chansen@beckross.com
       jduggan@beckross.com

Attorneys for Plaintiffs
Richard W. Berger and Brant W. Berger

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD W. BERGER and BRANT W. BERGER,<br><br>Plaintiffs,<br><br>v.<br><br>SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an individual; BURNETT, BURNETT, & ALLEN, a California partnership; DOUGLAS B. ALLEN, an individual; and DOES 1-100, inclusive;<br><br>Defendants. | Case No. C 07-05279 JSW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS SEYFARTH SHAW LLP AND JACK L. SLOBODIN'S MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>**Date:** **January 11, 2008**<br>**Time:** **9:00 a.m.**<br>**Place:** **Courtroom 2, 17th Floor**<br>**Judge:** **Hon. Jeffrey S. White** |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

SUMMARY OF ARGUMENT ..............................................................................................1

FACTUAL ALLEGATIONS ..................................................................................................2

ARGUMENT ..........................................................................................................................5

I. The Bergers Have Properly Alleged an Attorney-Client Relationship with Seyfarth.................5

II. The Bergers Have Sufficiently Alleged Fraud and Negligent Misrepresentation ......................8
    A.    Fraud ..........................................................................................................8
    B.    Negligent Nondisclosure ..........................................................................10

III. Seyfarth's Motion to Strike Should Be Denied .......................................................................10

IV. If Seyfarth's Motions are Granted, The Bergers Should Have Leave to Amend.....................11

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

# TABLE OF AUTHORITIES

CASES

*Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)..................................7

*Farnham v. State Bar*, 17 Cal. 3d 605, 612 (1976)..................................................................1, 5

*Michel v. Palos Verdes Network Group, Inc.* 2007 Cal. App. LEXIS 1800 (2007).......................10

*Lister v. State Bar*, 51 Cal. 3d 1117, 1126 (1990) ...............................................................1, 5, 6, 7

*Mosier v. Southern California Physicians Insurance Exchange*, 63 Cal. App. 4th 1022, 1045 (1998) ..........................................................................................................8, 9

STATUTES

Cal. Civ. Code § 1572 ........................................................................................................................8

Cal. Civ. Code § 1710........................................................................................................................8

OTHER AUTHORITIES

Cal. Rule Prof. Conduct 3-500...........................................................................................................9

Mark L. Tuft, Getting in and Getting Out - Avoiding Legal Malpractice (CEB January 2003)..........................................................................................................................7

Schwarzer, Tashima, Wagstaffe, California Practice Guide--Federal Civil Procedure Before Trial (Rutter Group 2006)..............................................................................................................11

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

Plaintiffs' Opposition to Seyfarth Shaw and Slobodin's        ii
Motions to Dismiss and to Strike, Case No. C 07-05279 JSW

## INTRODUCTION

President Kennedy once said that "victory has a thousand fathers, but defeat is an orphan." That's true here. If the Bergers had won their case against Rossignol, both Allen and Seyfarth[1] would be claiming full credit. But because legal blunders lost the case, neither wants responsibility.

Seyfarth takes the same disingenuous position here that it unsuccessfully took before Judge Breyer and before the Federal Circuit; suggesting that Seyfarth could not be responsible for the botched infringement contentions because those contentions were served by Allen before Seyfarth formally appeared. Judge Breyer rejected that argument in *Rossignol*[2] and here it is wrong on both the law and on the facts. The *Rossignol* legal blunders that lost *Rossignol* are fairly laid at the doorsteps of both Seyfarth and Allen.

## SUMMARY OF ARGUMENT

Seyfarth claims that the Bergers' allegations are not sufficient to establish an attorney-client relationship between the Bergers and Seyfarth because they do not specify "the existence, formation, and terms of the contract" between them.[3] But "[n]o formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. *It is the fact of the relationship which is important*."[4] The complaint plainly alleges that an attorney-client relationship existed between Seyfarth and the Bergers at all relevant times. During the course of that relationship—and specifically, following the November 18, 2005 Case Management Conference—Seyfarth assured the Bergers that it would advise and supervise Allen, who had no prior patent litigation experience. But Seyfarth provided no guidance when needed and its "help" lost the case. Indeed, it was Seyfarth's faulty claim chart that rendered the Bergers' Preliminary Infringement Contentions ("Infringement Contentions") fatally defective and allowed Rossignol to prevail on summary judgment.

Most telling, Seyfarth ignores Paragraphs 24 through 29 of the complaint which detail

---

[1] For purposes of this brief, defendants Jack Slobodin and Seyfarth Shaw LLP are collectively referred to as "Seyfarth."
[2] Judge Breyer's order granting summary judgment noted that Seyfarth involvement in the case predated its formal appearance by several months.
[3] (Seyfarth Motion to Dismiss at 6).
[4] *Farnham v. State Bar*, 17 Cal. 3d 605, 612 (1976)(emphasis added); *accord*, *Lister v. State Bar*, 51 Cal. 3d 1117, 1126 (1990)(citing *Farnham*).

Seyfarth's involvement in the Infringement Contentions,[5] and which leave no doubt as to Seyfarth's responsibility. The complaint alleges Seyfarth's attorney-client relationship with the Bergers and Seyfarth's role in botching the Infringement Contentions. The Bergers' allegations are more than sufficient to withstand the "notice pleading" requirement of Rule 8(a)(2).

The Bergers' fraud allegations are also sufficient under Rule 9(b). Seyfarth argues that the Bergers "contend that they would never have hired Seyfarth had the firm not fraudulently concealed the likelihood that it would later commit malpractice."[6] But the Bergers' complaint makes no such allegation. Rather, the Bergers allege that Seyfarth transmitted a faulty claim chart of its own making to Allen, and that defendants later concealed that mistake from the Bergers and the court in order to save their own skins.[7] The Bergers' fraud allegations are neither "incoherent" nor "inadequate." The Bergers have stated "with particularity" the nature and extent of defendants' fraudulent conduct.

**FACTUAL ALLEGATIONS**

The Bergers invented a novel step-in binding (the Berger Binding) that was awarded two United States Patents (Nos. 5,913,530 (the '530 patent) and 6,196,569 (the '569 patent)).[8] Rossignol, a large French ski company, infringed those patents.[9]

In preparing to sue Rossignol, the Bergers' patent attorney, Reginald Suyat, prepared a claim chart (the Suyat Claim Chart) explaining how the Rossignol binding infringed both patents.[10]

In early 2003, the Bergers began consulting with Slobodin and his law firm, Seyfarth Shaw, about filing a patent infringement action against Rossignol. On October 13, 2003, Suyat sent Slobodin a copy of the Suyat Claim Chart.[11]

The Bergers retained Allen and his firm, Burnett, Burnett, & Allen, to initiate the patent infringement action against Rossignol. But because Allen had no prior patent infringement

---

[5] (Seyfarth Motion to Dismiss at 3-5) The missing allegations would logically appear at the top of page 4 of Seyfarth's brief, but they are conspicuously absent.
[6] *Id*. at 2.
[7] (Complaint, ¶ 57(A)-(H)).
[8] (Complaint, ¶¶ 1 and 9).
[9] *Id*. at ¶ 10.
[10] *Id*. at ¶ 13.
[11] *Id.* at ¶¶ 14 and 15.

experience, Slobodin and Seyfarth agreed to advise, supervise, and assist Allen in the action.[12]

Suit was filed in the Northern District of California in June 2005 and assigned to the Hon. Charles R. Breyer. Judge Breyer held the initial Case Management Conference on November 18, 2005.[13] Later that day, Allen met with Slobodin and Suyat. After that meeting, Slobodin promised plaintiffs that he would supervise the case to make sure all important deadlines were met and appropriate procedures were followed, and that he soon would file his formal appearance in *Berger v. Rossignol*.[14]

The Patent Scheduling Order in *Berger v. Rossignol* mandated that Plaintiffs Infringement Contentions were to be served by December 3, 2005. Defendants missed that deadline because Seyfarth failed to provide the promised support. On December 16, two weeks after the deadline had passed, Allen wrote to Slobodin requesting a claim chart to comply with the court's order. Almost three weeks later, on January 3, 2006, Slobodin and Seyfarth sent Allen a modified and fatally defective claim chart. Allen served that claim chart with the Bergers' Infringement Contentions the following day on January 4.

Significantly, and in contrast to the Suyat chart, the Seyfarth Claim chart included the Rossignol "coupler base" (item 4) as part of the "lower attachment." The '530 patent requires that the "lower attachment" rotate "relative to" the "upper attachment." But in the Rossignol product the "coupler base" rotates <u>with</u> the upper attachment, <u>not relative to it</u>.[15]

In addition to providing Allen with a faulty claim chart, Seyfarth also sent Allen a Seyfarth memorandum discussing the validity of the '569 patent. As an apparent result of that memo, defendants did not include a claim chart or any mention of the '569 patent in the Infringement Contentions.[16]

Additionally, the Bergers' Infringement Contentions made no contention of infringement under the Doctrine of Equivalents of either the '530 or '569 patents.[17]

---

[12] *Id.* at ¶ 18.
[13] *Id.* at ¶¶ 19 and 20.
[14] *Id.* at ¶¶ 20-21.
[15] *Id.* at ¶ 27.
[16] *Id.* at ¶¶ 25 and 28.
[17] *Id.* at ¶ 29.

Seizing of their mistakes on defendants' blunders, on February 21, 2006, Rossignol promptly filed a motion for summary judgment asserting that (1) the Bergers' Infringement Contentions confirmed noninfringement of the '530 patent; and (2) the Berger's case should be dismissed as to the '569 patent because no contentions were made as to that patent.[18]

On March 14, 2006, Seyfarth filed an appearance in *Berger v. Rossignol*. But rather than forthrightly telling the Bergers and the court about their mistake and seeking to amend the Bergers' Infringement Contentions, defendants unsuccessfully sought Rule 56(f) postponement of the summary judgment motion.[19]

Finally, on March 27, 2006, defendants conceded that the Infringement Contentions were defective and moved to amend them. But in presenting that motion, *defendants concealed the fact that Seyfarth had prepared the defective claim chart incorporated into the Infringement Contentions*. Defendants also filed the Bergers' opposition to Rossignol's motion for summary judgment conceding that the Bergers' Infringement Contentions were defective and making no argument that Rossignol's binding infringed the '530 patent under the defective Infringement Contentions.[20]

At the April 14, 2006 oral argument, defendant Slobodin again concealed Seyfarth's responsibility for the faulty claim chart and indicated that Seyfarth was not involved in the action until after the Infringement Contentions were served.[21]

On April 25, 2006, the District Court denied the Bergers' Motion for Leave to Amend emphasizing that "the Bergers offer no explanation as to why the 'errors' were made in the first place, and, in particular, how they could have 'mistakenly' omitted any contentions as to the '569." The District court also granted Rossignol's Motion for Summary Judgment and entered Judgment in favor of Rossignol as to the Bergers' patent infringement claims.[22]

The Bergers later appealed the District Court's judgment to the Federal Circuit. During oral argument on January 10, 2007, defendant Slobodin continued to conceal his and Seyfarth's

---

[18] *Id.* at ¶ 30.
[19] *Id.* at ¶¶ 20, 21, and 31-33.
[20] *Id.* at ¶¶ 34- 35.
[21] *Id.* at ¶ 36.
[22] *Id.* at ¶¶ 37-40.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

preparation of the defective claim chart used in the Bergers' Infringement Contentions. When the Federal Circuit asked Slobodin how the errors in the Infringement Contentions occurred, Slobodin deceptively replied, "the attorney that was handling it before me did that for whatever reason I am not sure." On January 16, 2007, the Federal Circuit affirmed the District Court's April 25, 2006 judgment.[23]

Each of the defendants represented the Bergers during these events and continued to do so at least through the Federal Circuit's denial of the appeal on January 16, 2007.[24]

## ARGUMENT

### I. The Bergers Have Properly Alleged an Attorney-Client Relationship with Seyfarth

Seyfarth claims that the Bergers' first, second, and fifth claims for professional negligence, breach of contract, and breach of fiduciary duty should be dismissed because the Bergers have failed "to allege sufficient facts relating to the formation and scope of the alleged legal representation." Seyfarth further argues that the attorney-client relationship is essentially "a contract" and that the complaint fails to specify "the existence, formation, and terms of the contract." According to Seyfarth:

> They [the Bergers] do not specify the date on which Seyfarth became their lawyers. They do not specify how the attorney-client relationship was formed. They do not explain the scope of the representation, or assert that the alleged malpractice was within that scope. They do not even attach a contract or retainer letter to their complaint.[25]

Seyfarth is wrong on the facts and wrong on the law.

As an initial matter, the California Supreme Court recognized long ago in *Farnham v. State Bar* that "[n]o formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. *It is the fact of the relationship which is important.*"[26]

The California Supreme Court later applied *Farnham* in *Lister v. State Bar* to find an attorney-client relationship under similar facts.[27] *Lister* involved disciplinary proceedings

---

[23] *Id.* at ¶¶ 41-42.
[24] *Id.* at ¶¶ 6 and 43.
[25] (Seyfarth Motion to Dismiss at 7).
[26] 17 Cal. 3d 605, 612 (1976)(emphasis added).
[27] 51 Cal. 3d 1117 (1990).

concerning attorney Lister's negligent handling of several cases. In one case, Lister was asked to file suit for improper use of photographs of his putative client, Merrit. But there was a dispute as to whether Lister was to be paid on a contingency or hourly basis. In any event, Lister prepared the complaint but did not file it supposedly because Merrit had not paid him. The statute of limitations expired while Lister took no action, gave no warning to Merrit, and did not provide Merrit with the prepared complaint so she could file it herself.

During the disciplinary proceedings, Lister claimed that there was no "attorney-client relationship" because he did not have a clear agreement with Merrit and because he was never paid. Those arguments were flatly rejected:

> Petitioner contends that because Merritt never paid him, there was no attorney-client relationship. Although there apparently was a misunderstanding as to whether or not petitioner was retained on a contingency fee basis, the record supports the finding that an attorney-client relationship existed between them. Merritt testified that she asked petitioner to file the lawsuit on her behalf, and gave him all the relevant documents. She understood that petitioner was working on the matter. Petitioner's office did, in fact, do substantial work on the case. "No formal contract or arrangement or attorney fee is necessary to create the relationship of attorney and client. It is the fact of the relationship which is important." (Farnham v. State Bar (1976) 17 Cal.3d 605, 612 [131 Cal. Rptr. 661, 552 P.2d 445].)
>
> Under the circumstances, an attorney-client relationship existed between petitioner and Merritt. He could not simply abandon her and let the statute of limitations expire.

Id. at 1126 (emphasis added).

*Lister* has been recognized as a leading case on the "implied-in-fact" attorney-client relationship. In a CEB article titled "Getting In and Getting Out-Avoiding Legal Malpractice," the author identifies the following factors considered by the *Lister* court:

> Relevant factors in determining whether an attorney-client relationship has been created by implied agreement include: whether confidential information has been disclosed, whether the [putative] client reasonably believed he or she was consulting the attorney in the attorney's professional capacity, whether the attorney acted or indicated that he or she was representing the client, the amount of contact between the attorney and the client, whether the client furnished the attorney with information and sought the attorney's advice and whether the attorney actually rendered legal advice to the

client. *Lister v State Bar* (1990) 51 C3d 1117, 1126.[28]

Application of the *Lister* factors supports a finding of an "implied-in-fact" attorney-client relationship between the Bergers and Seyfarth beginning as early as 2003, and in any event, beginning no later than November 2005. In early 2003, the Bergers met with Slobodin and shared their personal strategy and evaluation of their prospective case against Rossignol. The Bergers, through their patent attorney Suyat, later sent Seyfarth the Bergers' work product claim chart on October 13, 2003. Then, in December 2003, Seyfarth performed an evaluation of the *Berger v. Rossignol* matter and prepared its own claim chart. After the Bergers' action was filed, Slobodin again met with Allen and Suyat after the November 18, 2005 CMC to discuss and strategize about the pending action against Rossignol. After that meeting, Slobodin assured the Bergers that he would supervise the litigation to make sure all important deadlines were met and appropriate procedures were followed. Based on Slobodin's conduct and his direct statements to the Bergers, the Bergers reasonably believed that they were consulting with Slobodin and Seyfarth in their professional capacity as experienced patent litigators. And Slobodin and Seyfarth rendered legal services which included preparing a claim chart and transmitting that claim chart to Allen—and those services form the primary basis of this malpractice action.[29]

Seyfarth is doing just what attorney Lister unsuccessfully tried to do—prejudice the client and then claim an ambiguity in the attorney-client relationship. But there is no such ambiguity. The complaint plainly alleges that Seyfarth represented the Bergers "[a]t all times relevant to the matters alleged" and "at least through the Federal Circuit's denial of the appeal on January 16, 2007." Those allegations are not "mere conclusions" but are supported by the well-pleaded allegations of the complaint. And as Seyfarth aptly concedes, the "court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inference from them in favor of the nonmoving party."[30]

Through their words and conduct, the Seyfarth lawyers lead the Bergers to reasonably believe that they were acting as the Bergers' counsel and would look out for the Bergers' best

---

[28] Mark L. Tuft, *Getting in and Getting Out - Avoiding Legal Malpractice* (CEB January 2003), p. 6.
[29] (Complaint, ¶¶ 14-29).
[30] *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), cited in Seyfarth Brief at Page 5.

interests. As *Lister* observed, Seyfarth could not then "simply abandon" the Bergers and allow their rights to expire. But that was precisely what Seyfarth did.

## II.    The Bergers Have Sufficiently Alleged Fraud and Negligent Misrepresentation

### A.    Fraud

The California Civil Code identifies at least five different acts which *each* amount to fraud:

> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
>
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
>
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
>
> 4. A promise made without any intention of performing it; or,
>
> 5. Any other act fitted to deceive.[31]

Seyfarth acknowledges each of these types of fraud at Page 14 of their brief. But Seyfarth then argues that the Bergers' fraud claim is uncertain because it "fails to specify the species of fraud they are asserting." Seyfarth's argument—which is not supported by any citation to authority—is nonsense as fraud "consists in any of" these five acts.[32] So if the Bergers' allegations state a claim for at least one type of fraud, those allegations suffice.

As Seyfarth also notes, the following elements establish fraud by concealment:

> The elements of a fraud cause of action are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.[33]

The Berger complaint alleges each of these elements with particularity. Paragraph 57 of the complaint specifically identifies eight material facts that were concealed and suppressed by

---

[31] Cal. Civ. Code § 1572; *see also* Cal. Civ. Code § 1710 (deceit defined).
[32] Cal. Civ. Code § 1572.
[33] *Mosier v. Southern California Physicians Insurance Exchange*, 63 Cal. App. 4th 1022, 1045 (1998), cited in Seyfarth brief at Page 9.

defendants: (1) that defendants were not qualified to handle the Bergers' patent infringement action against Rossignol; (2) that defendants would not communicate with each other to ensure the Bergers' competent representation—even though Seyfarth agreed to advise and supervise Allen; (3) that Seyfarth prepared the defective claim chart that was incorporated into the Bergers' Infringement Contentions; (4) that defendants' served Infringement Contentions that did not allege infringement of the '569 patent; (5) that the Infringement Contentions did not allege patent infringement under the Doctrine of Equivalents; and that defendants conspired to conceal from the District Court and the Federal Circuit (6) Seyfarth's early involvement in the case; (7) Seyfarth's preparation of the defective claim chart; and (8) the reason for the errors in the Bergers' Infringement Contentions.

Each of those facts was highly material as they ultimately lead to the dismissal of the Bergers' action against Rossignol. As attorneys, defendants were duty-bound to communicate that information to their clients.[34] The complaint specifically alleges that those facts were intentionally suppressed "to conceal Slobodin and Seyfarth's early involvement in representing the Bergers and error in preparing the mistaken claim chart that was incorporated into the defective Infringement Contentions."[35] The Bergers were unaware of those facts and "would not have acted as[they] did if [they] had known of the concealed or suppressed fact."[36] If the Bergers had been aware of the true facts they could have terminated their attorney-client relationship with counsel and hired new counsel to represent them.[37] Or they could have insisted that defendants forthrightly explain the nature of their mistake to the court in seeking to have the Infringement Contentions amended. But because defendants chose to conceal their mistake from the Bergers and the court, the Bergers' action against Rossignol was dismissed.[38]

The Bergers' complaint particularly alleges facts sufficient to support each element of their fraud cause of action. As a result, Seyfarth's motion should be denied.

---

[34] Cal. Rule Prof. Conduct 3-500 ("A member shall keep a client reasonably informed about significant developments relating to the employment or representation....")
[35] Complaint at ¶ 34 and 36.
[36] *Mosier* at 1045.
[37] Complaint at ¶ 58.
[38] Complaint at ¶¶ 38-40, and 59.

**B.     Negligent Nondisclosure**

The Bergers' action for negligent nondisclosure rests on the same facts as their action for fraud. But unlike fraud, negligent nondisclosure does not require a showing of willfulness.

Seyfarth claims that "California does not recognize a cause of action for negligent concealment."[39] But that statement is untrue where, as here, the defendant was acting as the plaintiffs' fiduciary.

The California courts recently recognized a cause of action for negligent nondisclosure by a fiduciary in *Michel v. Palos Verdes Network Group, Inc.*[40] As *Michel* observed, a "fiduciary must tell its principal of all information it possesses that is material to the principal's interests." This duty "is substantially more extensive than the *nonfiduciary* duty" that otherwise applies. "Appellants' cause of action for negligent nondisclosure rests … on respondent's fiduciary duty to disclose material information within its possession. It was immaterial how the fiduciary obtained the information; it has a duty to disclose the information to its principal."[41]

Here, Seyfarth also had a duty to disclose all material information it possessed to its principal, but failed to do so. Seyfarth's failure to disclose such information—even if that failure was negligent—is actionable in light of its fiduciary duty of full disclosure to the Bergers.

**III.    Seyfarth's Motion to Strike Should Be Denied**

Seyfarth's motion to strike claims that the Bergers may not be awarded punitive damages because they have not stated claims for fraud and breach of fiduciary duty.

As stated above, Seyfarth's only challenge to the Bergers' claim for breach of fiduciary duty is based on their flawed assertion that there was no attorney-client relationship between Seyfarth and the Bergers. Because that position is mistaken, the Bergers' otherwise-unchallenged claim for breach of fiduciary appropriately supports their prayer for punitive damages.

Moreover, even if Seyfarth had challenged the merits of the Bergers' breach of fiduciary duty claim, such a challenge would be unsupported. As the complaint alleges, Seyfarth put its own interests ahead of the client by failing to disclose its mistake to the court. As the Bergers' attorney,

---

[39] (Seyfarth Brief at 15).
[40] 2007 Cal. App. LEXIS 1800 (2007).
[41] *Id.* at 12.

Seyfarth had a duty to zealously advocate the Bergers' interests, including putting the best possible argument forward. Seyfarth intentionally chose not to do that because it would have revealed its mistake and responsibility for the defective Infringement Contentions to the court.

Seyfarth has also failed to present a valid challenge to the Bergers' fraud claim which, like the Bergers' claim for breach of fiduciary duty, provides adequate support for the Bergers' prayer for punitive damages.

For those reasons, Seyfarth's motion to strike should be denied.

**IV.    If Seyfarth's Motions are Granted, The Bergers Should Have Leave to Amend**

"As a practical matter, leave to amend is almost always granted by the court."[42] Rule 15(a) expressly states that leave to amend "shall be freely given when justice so requires."

In the event that the court finds the Bergers' allegations to be lacking in any way, the Bergers respectfully ask that they be permitted leave to amend their complaint to cure any deficiencies noted by the court.

Dated: November 20, 2007                    Beck, Ross, Bismonte & Finley, LLP


                                            By:    /s/
                                                Craig Alan Hansen
                                                Attorneys for the Plaintiffs
                                                Richard W. Berger and Brant W. Berger

---

[42] Schwarzer, Tashima, Wagstaffe, California Practice Guide--Federal Civil Procedure Before Trial (Rutter Group 2006) ¶ 9:286.