Justin T. Beck, Esq. (Cal. Bar No. 53138)
Ron C. Finley, Esq. (Cal. Bar No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
Jeremy M. Duggan, Esq. (Cal. Bar No. 229854)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: jbeck@beckross.com
       rfinley@beckross.com
       abismonte@beckross.com
       chansen@beckross.com
       jduggan@beckross.com

Attorneys for Plaintiffs
Richard W. Berger and Brant W. Berger

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD W. BERGER and BRANT W. BERGER,<br><br>Plaintiffs,<br><br>v.<br><br>SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an individual; BURNETT, BURNETT, & ALLEN, a California partnership; DOUGLAS B. ALLEN, an individual; and DOES 1-100, inclusive;<br><br>Defendants. | **Case No. C 07-05279 JSW**<br><br>**DECLARATION OF RICHARD W. BERGER IN OPPOSITION TO ALLEN'S PUTATIVE MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN**<br><br>**Date:   January 11, 2008**<br>**Time:   9:00 a.m.**<br>**Place:  Courtroom 2, 17th Floor**<br>**Judge:  Hon. Jeffrey S. White** |

I, Richard W. Berger, declare:

1. I am a plaintiff in this action. I have personal knowledge of the matters stated in this declaration and, if called as a witness, would competently testify to them.

2. Plaintiff Brant Berger and I are the inventors of the Berger binding that was awarded U.S. Patent Nos. 5,913,530 (the '530 Patent) and 6,196,569 B1 (the '569 Patent).

3. Brant and I were previously represented by defendants Jack L. Slobodin, Seyfarth Shaw LLP, Douglass B. Allen, and Burnett, Burnett, & Allen in our patent infringement action against Rossignol Ski Company. Our action against Rossignol was dismissed on summary judgment on April 25, 2006.

4. Allen's claim that he stopped representing Brant and me in April 2006 is false.

5. After the April 25, 2006 judgment was entered, defendants started working together on a Rule 60 motion to vacate the judgment.

6. On May 7, 2006, Allen e-mailed his draft Rule 60 motion to me. Unlike the earlier briefs that opposed Rossignol's motion for summary judgment and supported our motion to amend our Infringement Contentions, Allen's draft Rule 60 motion explained for the first time that Seyfarth Shaw had prepared its own "claim chart" that Allen incorporated into our Infringement Contentions. When our Infringement Contentions were served on January 4, 2006, Brant and I had been under the impression that defendants had used the claim chart prepared by our patent attorney, Reginald Suyat. We never authorized defendants to modify the Suyat claim chart or to use their own modified claim chart in our infringement contentions. A true and correct copy of Allen's May 7, 2006 e-mail and attached draft Rule 60 motion are attached to this declaration as Exhibit A.

7. Defendants also forwarded their draft Rule 60 motion to David Tunno, a trial consultant they had been consulting with concerning *Berger v. Rossignol*. On May 8, 2006, Tunno e-mailed defendants and myself cautioning defendants that, by explaining their mistake, they were revealing that Slobodin had made "misleading" statements to the court during the April 14, 2006 hearing "that he was not directly or substantially involved until March, '06." Tunno noted that "[i]f not a contradiction to Jack's claim, it may at least seem that Jack's claim was misleading." Tunno's May 8, 2006 e-mail is attached as Exhibit B.

8. On May 15, 2006 and May 18, 2006, Allen sent me additional drafts which each contained similar explanations of how our Infringement Contentions were based on the faulty claim chart prepared by Seyfarth Shaw. A copy of those e-mails and related attachments are attached as Exhibits C and D, respectively.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

9. When Allen later provided me with a copy of his litigation file, I learned that there were additional e-mails about the Rule 60 motion and drafts that were never sent to me. For example, on May 8, 2006 Allen had e-mailed Tunno and Matt Werber of Seyfarth Shaw—but not me or Brant—noting that Allen had "struggled with whether to identify Sayfarths [sic] involvement in 2003" and that he was "concerned about withholding things from the court at this point." A true and correct copy of Allen's May 8, 2006 e-mail is attached as Exhibit E.

10. Allen's file also contained a copy of the Rule 60 motion filed by defendants on May 23, 2006. Unlike the drafts forwarded to me on May 8, 2006, May 15, 2006, and May 18, 2006, the motion actually filed on May 23, 2006 did not disclose the fact that our Infringement Contentions were based on a faulty claim chart prepared by Seyfarth Shaw. A true and correct copy of the motion filed on May 23, 2006 is attached as Exhibit F.

11. After the court denied the Rule 60 motion, defendants began working on the appeal to the Federal Circuit. During late 2006 and early 2007, Allen continued to manage our "litigation fund," consult with Slobodin, and advise Brant and me concerning *Berger v. Rossignol*.

12. Allen's billing records reflect the time that he spent on our case in June and August 2006 writing to Slobodin and talking with him on the telephone. Those records also show that Allen issued an $11,000 "Trust Check" to Seyfarth from our litigation account to cover "costs and partial payment for time spent on brief." A true and correct copy of Allen's billing invoices from September 13, 2005 through September 5, 2006 are attached as Exhibit G.

13. The fact that Allen continued to represent Brant and me as of early February 2007 is confirmed in correspondence between us during that period. For example, I sent Allen an email on February 19, 2007 confirming "that you [Allen] represent Brant and myself" and mentioning that we would be meeting with Allen "to further discuss and reach a conclusion on if we should or should not appeal to the Supreme court." Allen responded the following day on February 20, 2007 acknowledging that "I [Allen] represent you and Brant and have loyally done so over many years" and that Allen "recommended going forward with a petition for Certiorari." True and correct copies of my email and Allen's letter are attached as Exhibits H and I, respectively.

14. In addition to advising Brant and me about appellate matters, Allen also advised us

about whether we should file a malpractice action against Seyfarth. For example, in my February 19, 2007 e-mail, I asked Allen, "If we don't appeal does it mean we didn't exercise all of the remedies available to us and would that hurt us if we were to take legal action against Sayfarth [sic]? How much time do we have? How much is presently in the litigation fund?" During a conversation with Allen following that e-mail, Allen indicated that he did not want us to sue Seyfarth Shaw for malpractice because he feared that would cause the Seyfarth law firm to file a cross-action against him.

15. In February 2007, after the Federal Circuit appeal was denied, Brant and I continued to consult with Allen about filing a Petition for Certiorari to the United States Supreme Court. During those discussions, Allen advised us that we still had approximately $36,000 left in our litigation fund that could be used to cover his legal fees for preparing the Petition. Allen also said that he believed that we had "a good shot" at the Petition and that the money would be well-spent.

16. When we told Allen that we could not reach an agreement on whether to spend the remainder of our litigation fund to pay him for the Petition, he offered to handle the matter if we agreed to waive any malpractice claims against him concerning defendants' mistakes in *Berger v. Rossignol*. During those discussions, Allen did not suggest that Brant and I should consult with an independent lawyer to help us evaluate his proposal. He did, however, pressure us to sign a waiver agreement that he had prepared. In response, I told Allen that it felt like he was putting his own interests ahead of ours and that we were not prepared to waive our claims against him.

17. After Brant and I informed Allen that we would not sign his proposed waiver agreement, Allen chose to proceed with the Petition anyway. On April 12, 2007, Allen filed the Petition with the United States Supreme Court.

18. Brant and I filed the present lawsuit against Allen and the other defendants on September 12, 2007. At that time, Allen was still our counsel of record on the Petition. Attached as Exhibit J is a true and correct copy of the Supreme Court's docket from *Berger v. Rossignol*, Case No 2006-1431 printed from http://www.supremecourtus.gov/docket/06-1372.htm. The docket lists Allen as our attorney of record and the documents that he filed on our behalf.

<br/>
Case 3:07-cv-05279-JSW    Document 36    Filed 11/20/2007    Page 5 of 5

19.     On September 18, 2007, Allen wrote to Brant and my new counsel, Beck, Ross, Bismonte & Finley, LLP (with a copy to me and Brant) noting that he was "in an untenable position with regard to [his] current clients." Allen further noted that: "Both Richard and Brant Berger are my clients, whom I represent currently before the United States Supreme Court on their 'Petition for Certiorari' arising from the same underlying case over which your pleading arises." A true and correct copy of Allen's letter is attached as Exhibit K.

20.     On September 21, 2007, Allen wrote directly to Brant and me advising that our "attorney/client relationship has hereby ended in all respects except for the fact that I will continue to remain counsel of record with the Supreme Court until other arrangements are made." A true and correct copy of that letter is attached as Exhibit L.

21.     The Supreme Court denied our Petition on October 1, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

This declaration was executed on November 19, 2007 at Paso Robles, California.

*/s/ Richard W. Berger*
Richard W. Berger

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

Decl. of Richard W. Berger in Opp. to Allen MSJ and in Supp. of Cross-Mot. for Sum. Adjud. Case No. C 07-05279 JSW      5