# EXHIBIT E

Yahoo! Mail - burnettburnettallen@yahoo.com

Page 1 of 2



**YAHOO! MAIL**

Yahoo! - My Yahoo! - Mail

Welcome, **burnettburnettall...**
[Sign Out, My Account]

Mail Home - Mail Tutorials - Help

Search
the Web

[ Search ]

| Check Mail | Compose | | Mail ▾ | Addresses ▾ | Calendar ▾ | Notepad ▾ | What's New - Mail For Mobile - Upgrades - Options |

Search Mail ▾   Search the Web

**Mail Accounts**
burnettallen...
allenforjudg...
yahoo.com

**Folders** [Add - Edit]
Inbox
Draft
Sent
Bulk (2) [Empty]
Trash [Empty]

See your
credit score: $0

$200,000 Loan
Only $771/Mo.!

Online Degree
Programs

A MasterCard





Previous | Next | Back to Messages

| Delete ▾ | Reply ▾ | Forward ▾ | Spam ▾ | Move... ▾ |

This message is not flagged - [ Flag Message - Mark as Unread ]

Printable View

**From:** Dba123456@aol.com    ▣ View Contact Details    ▣ Add Mobile Alert

**Date:** Mon, 8 May 2006 10:27:26 EDT

**Subject:** Re: Motion for setting aside order

**To:** david@tunno.com

**CC:** MWerber@seyfarth.com, burnettburnettallen@yahoo.com

David,
    Those are good suggestions. I struggled with whether to identify Sayfarths involvement in 2003. I am concerned about withholding things from the court at this point. I have no problem inserting more explanation. Anyway I shall consider your thoughts further today.
    Thanks,
Doug

*FILE*
*COPY TO CLIENT*
*CALENDAR SECT?*
*CALENDAR ATTN*
*RETURN W/FILE*
*SEE ME*
*COPY TO*

| Delete ▾ | Reply ▾ | Forward ▾ | Spam ▾ | Move... ▾ |

Previous | Next | Back to Messages

Save Message Text | Full Headers

# EXHIBIT F

1  SEYFARTH SHAW LLP
   Jack L. Slobodin (SBN 34203) jslobodin@seyfarth.com
2  560 Mission Street, Suite 3100
   San Francisco, California 94105
3  Telephone: (415) 397-2823
   Facsimile: (415) 397-8549
4
   BURNETT, BURNETT & ALLEN
5  Douglas B. Allen (SBN 99239) burnettburnettallen@yahoo.com
   160 West Santa Clara Street, Suite 1200
6  San Jose, California  95113
   Telephone: (408) 298-6540
7  Facsimile: (408) 298-0914

8  Attorneys for Plaintiffs
   RICHARD W. BERGER and
9  BRANT W. BERGER

10            UNITED STATES DISTRICT COURT

11      IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  RICHARD W. BERGER and BRANT W.      )   Case No. 3:05-CV-02523-CRB
    BERGER,                             )
13                                      )   **PLAINTIFF'S MOTION UNDER FED.**
                   Plaintiffs,          )   **R. CIV. P. 60(B) TO VACATE**
14                                      )   **JUDGMENT**
              v.                        )
15                                      )
    ROSSIGNOL SKI COMPANY, INC.,        )
16                                      )
                   Defendant.           )
17
18
19
20
21
22
23
24
25
26
27
28

1  SEYFARTH SHAW LLP
   Jack L. Slobodin (SBN 34203) jslobodin@seyfarth.com
2  560 Mission Street, Suite 3100
   San Francisco, California 94105
3  Telephone: (415) 397-2823
   Facsimile: (415) 397-8549
4
   BURNETT, BURNETT & ALLEN
5  Douglas B. Allen (SBN 99239) burnettburnettallen@yahoo.com
   160 West Santa Clara Street, Suite 1200
6  San Jose, California  95113
   Telephone: (408) 298-6540
7  Facsimile: (408) 298-0914
8  Attorneys for Plaintiffs
   RICHARD W. BERGER and
9  BRANT W. BERGER

10              UNITED STATES DISTRICT COURT

11        IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

12  RICHARD W. BERGER and BRANT W.        )   Case No. 3:05-CV-02523-CRB
    BERGER,                               )
13                                        )   **PLAINTIFF'S MOTION UNDER FED.**
                                          )   **R. CIV. P. 60(B) TO VACATE**
14            Plaintiffs,                 )   **JUDGMENT**
                                          )
15        v.                              )
                                          )
    ROSSIGNOL SKI COMPANY, INC.,          )
16                                        )
              Defendant.                  )
17  _____)

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF EXHIBITS

2

3  | Exhibit 1 | The Infringement Claim Chart attached to Plaintiffs' Preliminary Infringement Contentions submitted January 4, 2006 under Local Rule 3.1.

4

5  | Exhibit 2 | Numbered photographs attached to Plaintiffs' Preliminary Infringement Contentions.

6  | Exhibit 3 | Excepts from Defendant's February 21, 2006 "Motion for Summary Judgment of Unenforceability (Due to Equitable Estoppel), Noninfringement and/or Invalidity."

7

8  | Exhibit 4 | Unpublished Cases.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF ABBREVIATIONS

2

3    **Allen Decl.** refers to the March 27, 2006 "Declaration of Douglas B. Allen in Support of Motion for Leave to File Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions"

4

5    **Berger Decl.** refers to the March 21, 2006 "Declaration of Richard W. Berger in Support of Plaintiffs' Opposition To Rossignol's Motion for Summary Judgment"

6    **Def's Opp. Memo Re: Motion to Amend.** refers to Defendant's April 3, 2006 "Memorandum in Opposition re motion for Leave to File Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions"

7

8    **Def's S.J. Motion** refers to Defendant's March 21, 2006 "Motion for Summary Judgment of Unenforceability (Due to Equitable Estoppel), Noninfringement and/or Invalidity."

9

**Def's S.J. Reply Memo** refers to Defendant's April 3, 2006 "Reply Memorandum in Further Support of Rossignol's Motion for Summary Judgment"

10

11    **Motion to Amend Disclosure** refers to Plaintiffs' March 27, 2006 "Motion for Leave to File Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions"

12

**Order** refers to the Honorable Judge Charles R. Breyer's April 25, 2006 "order granting Defendant's Motion for Summary Judgment, denying Plaintiffs' Motion for Leave to File and denying Plaintiffs' Motion for Summary Judgment."

13

14

**PICs** refers to Plaintiffs' Preliminary Infringement Contentions submitted January 4, 2006 under Patent Local Rule 3.1.

15

16    **Pls' Cross Motion** refers to Plaintiff's March 27, 2006 "Cross Motion for Summary Judgment"

17    **Pls' Opp. Memo Re: Motion to Amend** refers to Plaintiffs' March 7, 2006 Reply Memorandum In Support of Leave to File Amended Disclosure."

18

**Pls' Reply** refers to "Plaintiff's April 7, 2006 Reply Memorandum To Rossignol's Opposition to Plaintiff's Cross-Motion For Summary Judgment"

19

20    **Pls' S.J. Opp. Memo** refers to Plaintiff's March 27, 2006 "Memorandum in Opposition To Rossignol's Motion for Summary Judgment."

21

**Proposed Amended Contentions** refers to Plaintiffs' March 27, 2006 "Disclosure Of Asserted Claims And Preliminary Infringement Contentions."

22

23    **Slobodin Decl.** refers to the March 27, 2006 "Declaration of Jack Slobodin in Support of Motion for Leave to File Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions"

24

25

26

27

28

ii

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

STATEMENT OF THE ISSUE ......................................................................................... 1

FACTUAL AND PROCEDURAL BACKGKROUND ..................................................... 2

I.    PLAINTIFFS' PRELIMINARY INFRINGEMENT CONTENTIONS ................. 2

II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ............................... 2

III.  THE COURT'S GRANT OF SUMMARY JUDGMENT ..................................... 3

SUMMARY OF THE ARGUMENT ................................................................................ 3

A Procedural Issue .......................................................................................................... 4

ARGUMENT .................................................................................................................... 5

I.    The Court's Grant of Summary Judgment Must be Vacated Because Its Ultimate
      Finding Resulted From Its Own Critical Errors. ................................................. 5

      A.    Rule 60(b) Gives This Court The Power to Vacate Its Grant of Summary
            Judgment Based on Its Own Factual Oversights. ..................................... 5

      B.    The Court's Decision Was In Violation of The Federal Rules ................. 6

      C.    The Court Decided Defendant's Summary Judgment Motion Without
            Viewing the Evidence In The Light Most Favorable To The Non-moving
            Party With All Doubts Resolved In Its Favor ........................................... 6

            1.    The Inclusion of Item 4 Does Not Remove the Fact That
                  Defendants Were on Notice of Item 5B. ....................................... 8

            2.    The Court's Finding Was Also Based on the Mistaken Belief that
                  Plaintiffs Conceded Noninfringement Under the Preliminary
                  Infringement Contentions by its Statements Regarding Item 4 ..... 8

            3.    The Court's Error Was Not Merely Harmless Error Because
                  Defendant's Remaining Noninfringement Arguments Failed to
                  Support Summary Judgment. ......................................................... 9

      D.    The Court Could Not Decide The Issue Of Infringement Without Going
            Through The Two-Step Process Required Before Infringement Can Be
            Decided. ...................................................................................................... 10

      E.    Good Cause Was Shown To Amend The Preliminary Infringement
            Contentions. ................................................................................................ 11

PLAINTIFFS' MOTION UNDER FED. R. CIV. P. 60(B) TO VACATE JUDGMENT / 3:05-CV-02523-CRB

**TABLE OF CONTENTS**
(continued)

Page

II.    This Court Should Also Vacate Its Grant of Summary Judgment Because the
       inclusion of Item 4 amounted to Excusable Neglect by Plaintiffs' Attorney. ................... 13

       A.    Rule 60(b) Gives This Court the Power to Vacate Its Grant of Summary
             Judgment Where Excusable Neglect by an Attorney Lead to the Court's
             Ultimate Judgment. .................................................................................................. 13

       B.    Relief From The Grant of  Summary Judgment is Proper Under the
             Pioneer Factors. ...................................................................................................... 14

III.   CONCLUSION ................................................................................................................. 15

TABLE OF EXHIBITS ..................................................................................................................... i

TABLE OF ABBREVIATIONS ....................................................................................................... ii

TABLE OF CONTENTS .................................................................................................................. iii

TABLE OF AUTHORITIES ............................................................................................................. iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Atchison, T. & S.F. Railway v. Hercules Inc.,*
   146 F.3d 1071 ...................................................................................................4, 6

*Briones v. Riviera Hotel & Casino,*
   116 F.3d 379 .........................................................................................................14

*Cole v. Kimberly-Clarke Corp.,*
   102 F.3d 524 .........................................................................................................10

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,*
   683 F.Supp. 979......................................................................................................4

*Dorel Juvenile Group, Inc. v. Graco Children's Prod.,*
   429 F.3d 1043 ..........................................................................................................6

*Hibernia National Bank v. Administracion Central Sociedad Anonima,*
   776 F.2d 1277 .......................................................................................................14

*Lenaghan v. Pepsico, Inc.,*
   961 F.2d 1250 .......................................................................................................14

*MAS-Hamilton Group v. LaGard, Inc.,*
   156 F.3d 1206 .......................................................................................................10

*Network Caching Technology Corp. v. Novell, Inc.,*
   2003 U.S.Dist. LEXIS 9881 ..........................................................................6, 7, 8, 11

*O'Connor v. Boeing N. America, Inc.,*
   114 F.Supp.2d 949...................................................................................................5

*Oliva v. Sullivan,*
   958 F.2d 272 ............................................................................................................6

*Pioneer Investments Services Company v. Brunswick Associate Ltd.,*
   507 U.S. 380 ..........................................................................................................13

*Renesas Tech. Corp. v. Nanya Tech. Corp.,*
   2004 U.S.Dist. LEXIS 23601 .................................................................................3, 8

*Shepherd v. International Paper Co.,*
   372 F.3d 326 ............................................................................................................4

*Surowitz v. Hilton Hotels Corp.,*
   383 U.S. 363 ............................................................................................................6

*Than Vons Hoi v. Thanh Van Vo,*
   935 F.2d 308 ............................................................................................................4

*Unidynamics v. Automobile Products Itern.,*
   157 F.3d 1311 ......................................................................................................4, 6

v

# FEDERAL STATUTES

FRCP § 1 ................................................................................................................6

Fed. R. Civ. P. 60(b)........................................................................5, 15, 16, 17

1    PLEASE TAKE NOTICE that Plaintiffs / Counterclaim Defendants' Richard W. Berger

2  and Brant W. Berger ("Plaintiffs'") will request that this court vacate its April 25, 2006 order

3  granting Defendant Rossignol Ski Company's ("Defendant's") Motion for Summary Judgment

4  (the "Order") under Federal Rule of Civil Procedure Rule 60(b).

5                      **MEMORANDUM OF POINTS AND AUTHORITIES**

6                              **STATEMENT OF THE ISSUES**

7    Whether the court's grant of summary judgment should be vacated under Rule 60(b)

8  based on the following:

9    (a) The court's dismissal of Plaintiffs' case because of a minor mistake in the Preliminary

10  Infringement Contentions ("PICs"), a mere discovery device: This minor mistake – identifying

11  the lower attachment as items "5B, 4, 17" instead of "5B, 17" – should not have resulted in

12  dismissal, the severest of sanctions (particularly where the inclusion of items "5B, 17" provided

13  Defendant with notice that Plaintiffs had a viable theory of infringement with respect to claim 1).

14    (b)    The court's failing to resolve all doubts in favor of Plaintiffs, the non-moving

15  party, in considering summary judgment: The court failed to acknowledge that the PICs did

16  disclose a corresponding lower attachment in the accused device that satisfied the claim 1

17  limitation that the upper attachment be permitted to rotate relative to the lower attachment (the

18  "Rotate Limitation"). Or, at the very least, the court failed to resolve any doubt in Plaintiffs'

19  favor regarding whether the PICs disclosed a viable theory of infringement.

20    (c)    The court's failure to follow the <u>two</u>-step process required to determine

21  infringement: The court did not construe the contested claim terms as the first step and then

22  apply the properly construed claim terms to the accused product to determine if a "lower

23  attachment" was found in the Defendant's accused device. The evidence is overwhelming that

24  the accused binding does contain a lower attachment that satisfies the Rotate Limitation.

25    (d)    The court's mistake of fact regarding how much time had passed before Plaintiffs

26  took steps to correct the erroneous inclusion of item 4 in the PICs.

27    (e)    The court's failure to recognize the erroneous inclusion of item 4 in the PICs

28  amounted to excusable neglect by Plaintiffs' attorney. From reading the local patent rules,

1

1    Plaintiffs believed in good faith that they would be permitted to amend PICs after the court

2    construed disputed claim terms such as upper attachment, lower attachment and the Rotate

3    Limitation.

4         We are filing this motion to alert the court of these oversights so the court's judgment

5    may be corrected.

6                    **FACTUAL AND PROCEDURAL BACKGROUND**

7         Plaintiffs brought this action against Defendant alleging that certain snowboard bindings

8    manufactured and/or sold by Defendant infringed U.S. Patent No. 5,913,530 (the "530 patent").

9    **I.    PLAINTIFFS' PRELIMINARY INFRINGEMENT CONTENTIONS**

10        On January 4, 2006, Plaintiffs submitted their PICs to opposing counsel pursuant to

11   Patent Local Rule 3.1 ("L.R. 3.1"). (Allen Decl. at p. 2, lns. 9-12.) Claim 1 of the '530 patent

12   ("claim 1") requires, in-part, an upper attachment, a lower attachment, and permitting "rotation

13   of the upper attachment relative to the lower attachment (the "Rotate Limitation"). (Exh. 1 at

14   p.1.) As such, the PICs disclosed on plate 3 as the upper attachment, and three corresponding

15   items as the lower attachment, including "<u>5B</u>, 4, <u>17</u> connectable to a board."[1]  (Exh. 1 at p. 1

16   (emphasis added); Order at Pg. 9, ln. 16 (quoting); Exh. 1 at p. 1.) In the accused device, items

17   5B and 17 remain stationary while the upper attachment, part 3, is permitted to rotate relative to

18   it. (Exh. 3 at p. 4, lns. 3-4 (Defendant describing "hold-down disk 5B . . . fixed to the

19   snowboard"); Exh. 2 at p. 6 ("remains stationary"). Plaintiffs disclosed also item 4, a rotatable

20   base, as a lower attachment.

21   **II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

22        On February 21, 2006, Defendant filed a motion for summary judgment unenforceability,

23   noninfringement and/or invalidity. In its summary judgment motion, Defendant acknowledged

24   _____

25   [1] Under claim 1, the Preliminary Infringement Contentions identified item 17 as part of the
     corresponding lower attachment. Item 17 was not shown in the diagrams accompanying the
     original contentions because it sits below item 5B, the hold-down disk. (Exhibit 3, at p. 4;

26   Proposed Amended Disclosures, Exhs. A, E.) However, item 17 is the alignment ring, or white
     disk, disposed beneath item 5B, the hold-down disk. (Exh. 1 at p. 3.) The Preliminary

27   Infringement Contentions identified item 17 as the alignment ring under claim 21. (Exh. 1 at
     p. 3.) The alignment ring was labeled item 2 in Rossignol's Summary Judgment Motion, and in

28   the Proposed Amended Disclosures. (Exhibit 3, at p. 4; Proposed Amended Disclosures, Exhs.
     A, E; Berger Decl. at p. 4, lns. 1-4.)

                                            2

1   that the PICs disclosed "hold-down disk 5B . . . fixed to the snowboard" in referring to the lower

2   attachment. (Exh. 3 at pg. 14, lns. 2-15)  However, Defendant proceeded to focus only on the

3   inclusion of "rotatable base 4" in arguing noninfringement of the Rotate Limitation. (Exh. 3 at

4   pg. 4, 14).

5          Plaintiffs' counsel contacted Defendant on March 15, 2006, putting Defendant on notice

6   that Plaintiffs would be seeking leave to file the amended contentions. (Slobodin Dec. at p. 1.)

7   Plaintiffs' motion papers also addressed Defendant's arguments concerning item 4 by explaining

8   that hold-down disk 5B and alignment ring/white disk 17 were the proper lower attachment.

9   (Pls.' Reply at p. 2; Pls.' S.J. Opp. Memo. at p. 11; Motion to Amend Disclosure, Exhs. A, C;

10  Motion to Amend Disclosure, Exhs. A; Berger Decl. at p. 4, lns. 1-4.)

11  **III.    THE COURT'S GRANT OF SUMMARY JUDGMENT**

12         The court granted Defendant's motion for summary judgment based on the mistaken

13  belief that Plaintiffs' PICs failed to disclose a corresponding lower attachment that satisfied the

14  Rotate Limitation.  According to the court: "it is undisputed that plate 3– the upper attachment–

15  does not rotate relative to what Plaintiffs identify as the lower attachment . . . " (Order at p. 9,

16  lns. 19-24.)  In light of finding merely that item 4 did not satisfy the Rotate Limitation, the court

17  found that the accused device "does not infringe as a matter of law." (Order at p. 9, lns. 19-24).

18  The court did not address Plaintiffs' inclusion of items 5B and 17 in the PICs, nor did it address

19  Plaintiff's repeated assertions that the hold down disk and alignment ring were the proper lower

20  attachment.

21                     **SUMMARY OF THE ARGUMENT**

22         The court dismissed Plaintiffs' case on summary judgment for the simple reason that the

23  numeral 4 appeared in one place in Plaintiffs' Infringement Contingents where it did not belong.

24  The PICs are merely a discovery device to notice Defendant of Plaintiffs' theory of infringement.

25  *Renesas Tech. Corp. v. Nanya Tech. Corp.*, 2004 U.S. Dist. LEXIS 23601 (N.D. Cal. 2004).

26  Plaintiffs' minor error in their discovery submission is not a proper basis for what essentially

27  amounted to the ultimate sanction of dismissal. *Id.*  The sanction of dismissal is generally only

28

1 | used "in the context of abusive conduct." *Atchison, T. & S.F. Ry. v. Hercules Inc.*, 146 F.3d

2 | 1071, 1074 (9th Cir. 1998).  No such willfulness occurred here.

3 | By identifying items 5B and 17 as corresponding to the claimed lower attachment, the

4 | PICs adequately noticed Defendant that its accused device included a lower attachment that the

5 | upper attachment was permitted to rotate relative to (the "Rotate Limitation").  At the very least,

6 | there should have been doubt as to whether Defendant was on notice of Plaintiffs' infringement

7 | theory regarding the Rotate Limitation.  Before summary judgment can be granted the evidence

8 | must be viewed in the light most favorable to the non-moving party with doubts resolved in its

9 | favor. *Unidynamics v. Auto Products Itern.*, 157 F.3d 1311, 1316 (Fed. Cir. 1998).

10 | The patent laws require the court to perform a two steps in determining infringement:

11 | first, to construe the claims and second, to compare the properly-construed claims and to make a

12 | factual finding as to whether the claims terms were found in the accused device.  This court

13 | performed neither of these steps.

14 | The Court also misread the record in finding that Plaintiffs were not diligent in seeking to

15 | amend their contentions.  The court overlooked the Slobodin Declaration indicating that as of

16 | March 15, 2006 -- only 22 days after Defendant filed its motion for summary judgment--

17 | Defendant was put on notice that Plaintiffs would be seeking leave to file the amended

18 | contentions.  This occurred six days before the court denied Plaintiffs' rule 56(f) motion to defer.

19 | **A Procedural Issue**

20 | Plaintiffs also intend to appeal the court's ruling within 30 days from its ruling on April

21 | 25, 2006.  Plaintiffs by filing this Rule 60(b) motion are requesting the court to review the

22 | motion and indicate whether it will grant relief in the motion.  If so, Plaintiffs intend to move the

23 | appellate court for remand in order that relief be granted by this district court. *See Than Vons*

24 | *Hoi v. Thanh Van Vo*, 935 F.2d 308 (D.C. Cir. 1991); *Shepherd v. International Paper Co.*, 372

25 | F3d 326 (5th Cir. 2004); *see e.g. Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 683 F.

26 | Supp. 979, 980 (D.N.Y. 1988) ("the Court would grant the Sumitomo's motion under Rule

27 | 60(b)(1) if the case were remanded by the Court of Appeals . . .  Sumitomo is entitled to a clear

28 | day in court for the trial of that issue").

1    **ARGUMENT**

2        The court's grant of summary judgment was based on the court's own errors and the

3    excusable neglect of the Plaintiffs' attorney.  Both of which warrant relief from the court's grant

4    of summary judgment.  As such, Plaintiffs' respectfully request that the court reconsider its grant

5    of summary judgment for the reasons set forth below.

6    **I.**  **THE COURT'S GRANT OF SUMMARY JUDGMENT MUST BE**
     **VACATED BECAUSE ITS ULTIMATE FINDING RESULTED**
7    **FROM ITS OWN CRITICAL ERRORS.**

8        The court granted Defendant's motion for summary judgment based on critical factual

9    errors and mistakes of law.  The court granted summary judgment on the mistaken belief that

10   Plaintiffs' PICs failed to disclose a corresponding lower attachment in the accused device that

11   satisfied the requirements of claim 1, as well as the court's statement that Plaintiffs all but

12   admitted non-infringement based on the original infringement contentions.

13       **A.**  **Rule 60(b) Gives This Court The Power to Vacate Its Grant of**
     **Summary Judgment Based on Its Own Factual Oversights.**

14       Rule 60(b) gives courts the power to "relieve a party . . . from a final judgment, order, or

15   proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . .

16   . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P.

17   60(b) (2006).  The Ninth Circuit has made it clear that "mistake" or inadvertence" under Rule

18   60(b) "may include mistake and inadvertence by the judge" *Kingvision Pay-Per-View v. Lake*

19   *Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999) (a "district court can correct its own mistake" under

20   rule 60(b)); *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004) ("The

21   district court has discretion to correct a judgment for mistake or inadvertence, either on the part

22   of counsel or the court itself.").  For example, a court may vacate its grant of summary judgment

23   under rule 60(b) where excusable neglect by the Plaintiffs and a factual oversight by the court

24   ultimately caused the court to mistakenly believe the Plaintiffs failed to raise a genuine issue of

25   fact in the earlier proceedings. *O'Connor v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 949, 950 (C.

26   Dist. Cal. 2000) ("[g]iven the multitude of evidence presented by the parties, the Court is not

27   surprised that it did not catch that information.").  Thus, this court has the power to vacate a

28   grant of summary judgment that was based on clear factual or legal errors.

**B.    The Court's Decision Was In Violation of The Federal Rules.**

According to the Ninth Circuit, "district courts have inherent power to control their dockets, but not when its exercise would nullify the procedural choices reserved to parties under the federal rules." *Atchison, T. & S.F. Ry. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (reversing dismissal sanction). According to Rule 1, the Federal Rules of Civil Procedure "govern the procedure in the United States district courts in all suits of a civil nature .... They shall be construed and administered to secure the **just**, speedy, and inexpensive determination of every action." FRCP § 1; *Atchison*, 146 F.3d at 1074 ("district courts may not follow local rules which are inconsistent with the federal rules.") (emphasis added).

The basic purpose of these rules is to administer justice through fair trials on the merits. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966) ("[i]f rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits."); *Oliva v. Sullivan*, 958 F.2d 272, 274 (9th Cir. 1992) ("the public policy favoring disposition on the merits weighs against dismissal."); *Network Caching Technology Corp. v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881 (N.D. Cal. 2003) (deficient PICs do not warrant dismissal of the entire case). In this case, the court failed to determine the merits as to whether the accused device included a "lower attachment" as the term would be properly construed.

**C.    The Court Decided Defendant's Summary Judgment Motion Without Viewing the Evidence In The Light Most Favorable To The Non-moving Party With All Doubts Resolved In Its Favor.**

According to the Federal Circuit, "[i]n deciding whether a genuine issue of material fact exists, the evidence must be viewed in the light most favorable to the non-moving party with all doubts resolved in its favor." *Unidynamics v. Auto Products Itern.*, 157 F.3d 1311, 1316 (Fed. Cir. 1998); *Dorel Juvenile Group, Inc. v. Graco Children's Prod.*, 429 F.3d 1043, 1047 (Fed. Cir. 2005) (reversing summary judgment finding of noninfringement where genuine fact issues existed in comparing the claims to the accused device).

The court failed to consider all of what Plaintiffs disclosed as the lower attachment. The lower attachment was never identified as including item 4 alone. Rather, the PICs disclosed the

6

1    lower attachment as also including items 5B and 17 (i.e., the hold-down disk and alignment

2    ring).  In the accused device, item 5B remains stationary while the upper attachment, part 3, is

3    permitted to rotate relative to it.  (Exh. 3 at p. 4, lns. 3-4 (Defendant describing "hold-down disk

4    5B . . . fixed to the snowboard"); Exh. 2 at p. 1 (showing disk 5 was bolted to the board via four

5    bolts); Exh. 2 at p. 6 ("remains stationary").

6           The court ignored Plaintiff's disclosure of items 5B and 17 in favor of concentrating only

7    on item 4.

8              It is undisputed that Plate 3 – the upper attachment – does not rotate relative to
              what plaintiff identifies as the lower attachment; rather, the upper attachment
9             rotates with the lower attachment.  Accordingly, under plaintiff's infringement
              contentions, defendant's accused device does not read on at least one limitation of
10            Claim 1 of the '530, and therefore does not infringe as a matter of law.

11   (Order at page 9, lines 19-24.)  By concentrating on item 4 and essentially ignoring items 5B and

12   17, the court failed to resolve any doubts in favor of Plaintiffs.

13          Taking the plaintiff's PICs as a whole, it is clear that items 5B and 17 were the proper

14   lower attachment.  The fourth row of the PICs disclosed "a coupling mount attached to the other

15   of said upper and lower attachments" as "5A, attached to **5B** . . ."[2] (Exh. 1 at pg. 1).  Similarly,

16   for claim 19, the PICs disclosed a coupling mount "attached to said lower attachment" as "5A

17   attached to **5B** via 4, 17." (Exh. 1 at pg. 2) (emphasis added).  Next, for claim 31, the PICs

18   disclosed "rotation of said upper attachment relative to said lower attachment" as "3 rotates

19   relative to **5B**" and "5B connectable to 2." (Exh. 1 at pg. 4) (emphasis added).  Thus, by

20   disclosing item 5B as the corresponding lower attachment in claim 1 and throughout the PICs,

21   Plaintiffs' original contentions unmistakably disclosed a lower attachment that satisfied the

22   Rotate Limitation.  As such, the court granted summary judgment based on its mistaken belief as

23   to "what Plaintiffs identify as lower attachment" in the PICs.  (Order at pg. 10).   Or, if anything,

24   the content of the PICs should have raised a doubt as to whether the PICs identified a lower

25   attachment that satisfied the Rotate Limitation.

26

27

28

---

[2]  Under Claim 1, the lower attachment would be the "other" of the upper and lower attachments.

7

1

### 1. The Inclusion of Item 4 Does Not Remove the Fact That Defendants Were on Notice of Item 5B.

PICs are merely a discovery tool to aid the parties and imperfect contentions should not be fatal. In *Renesas Tech. Corp. v. Nanya Tech. Corp.*, 2004 U.S. Dist. LEXIS 23601 (N.D. Cal. 2004), this court declined to strike preliminary contentions where the contentions contained deficiencies. Rather, the court permitted the plaintiff opportunity to amend its PICs to correct any deficiencies. *Id.* ("[t]hat Renesas' contentions are not perfect at this stage is not fatal"). According to the court:

> Patent L.R. 3-1 does not require [plaintiff] to produce evidence of infringement or to set forth ironclad and irrefutable claim constructions, nor does it require a plaintiff to provide support for its contentions. .... Instead, a party need only set forth "particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement" beyond the claim language itself."

*(internal citations omitted).* In *Network Caching*, 2003 U.S. Dist. LEXIS 9881 (N.D. Cal. 2003) the court refused to dismiss a case because of deficiencies in the PICs. According to the court, "[b]ecause dismissal is a harsh penalty, it should be limited as a sanction only in extreme circumstances." *Id* at * 7 ("dismissal of NCT's action on this ground is unwarranted because its third revised PICs are sufficient to comply with Patent LR 3-1.").

Plaintiffs' unmistakable disclosure of item 5B, was likewise sufficient to put Defendants on notice of Plaintiffs' infringement theories regarding the Rotate Limitation and claim 1 in general. For example, Defendant acknowledged that the PICs disclosed "hold-down disk 5B (that is fixed to the snowboard)" in referring to the lower attachment. (Exh. 3 at p. 14, lns. 2-4). Clearly in acknowledging item 5B was fixed to the snowboard, i.e. stationary, Defendants would have understood that plate 3, the upper attachment, rotates relative to it. Thus, the fact that the PICs erroneously included item 4 does not remove the fact that Defendants were on notice of Plaintiffs' theory of infringement at the time.

### 2. The Court's Finding Was Also Based on the Mistaken Belief that Plaintiffs Conceded Noninfringement Under the Preliminary Infringement Contentions by its Statements Regarding Item 4.

The court's finding was also based on the mistaken belief that Plaintiffs conceded noninfringement under the PICs. (Order at pg. 9, lns. 19-24). Plaintiffs' never conceded that

**8**

1  there where no other items disclosed, such as 5B or 17, that could have served as the infringing

2  lower attachment.

3        Plaintiffs continually asserted throughout their motion papers that Rossignol's binding

4  does have a lower attachment connectible to a board. For example, Plaintiffs asserted that

5  "Rossignol's binding has a lower attachment connectable to a board. The lower attachment is

6.  the disc which is attached to the board . . . Rossignol does not deny that it has this element."

7  (Pls' Reply at pg. 2). Plaintiffs asserted in their opposition memorandum that where the

8  rotatable base [4] "is not part of the lower attachment, the "rotation f [sic] and the upper

9  attachment relative to the lower attachment limitation' is fulfilled." (Pls.' S.J. Opp. Memo at

10  page 11). Plaintiffs filed their Opposition Memorandum along with their Proposed Amended

11  Disclosure, which, again, disclosed item 5B as part of the corresponding lower attachment,

12  referring to precisely the same photograph, and the same "5B" label -- referred to in the PICs.

13  (Motion to Amend Disclosure, Exhs. A, C) ("5B, which comprises what Rossignol refers to as a

14  central hold-down disk.") Plaintiff also pointed out that "[t]he white disc together with what

15  Rossignol calls the 'hold down disc,' which has been removed from the photograph, comprise

16  the lower attachment.". (Motion to Amend Disclosure, Exhs. A); (Berger Decl. at pg. 4, lns. 1-4).

17        Thus, Plaintiffs' statements that the device would not infringe if item 4 were the only

18  possible lower attachment should not be read as a general concession that the original claim chart

19  did not put defendants on notice of plaintiffs theory of infringement.

20          **3.    The Court's Error Was Not Merely Harmless Error**
             **Because Defendant's Remaining Noninfringement**

21               **Arguments Failed to Support Summary Judgment.**

22        The court's ultimate finding of summary judgment was based solely on the Rotate

23  Limitation not being satisfied because the court did not review any remaining noninfringement

24  arguments. Thus, as the court's finding regarding the Rotate Limitation should be reversed, the

25  ultimate finding of summary judgment should be reversed as well. Nevertheless, besides the

26  Rotate Limitation, Defendant's remaining non-infringement arguments were also insufficient to

27  warrant summary judgment. In their moving papers, Plaintiffs have showed how Defendant's

28

1  non-infringement arguments and other defenses were also insufficient to warrant summary

2  judgment.

3       **D.      The Court Could Not Decide The Issue Of Infringement
                Without Going Through The Two-Step Process Required**

4            **Before Infringement Can Be Decided.**

5            A case the court relied on in its order, *MAS-Hamilton Group v. LaGard, Inc.*, 156 F.3d

6  1206, 1211 (Fed. Cir. 1998), holds that as every case on this topic holds that "a patent

7  infringement analysis involves two steps. (Order at pg. 8). First, the court determines the scope

8  and meaning of the asserted claims. . . . Second, the properly construed claims are compared to

9  the allegedly infringing device. . . ." *Id.* (citations omitted); *see also Cole v. Kimberly-Clarke*

10 *Corp.*, 102 F.3d 524 (Fed. Cir. 1996) (holding and noting that "a district court should approach a

11 motion for summary judgment on the fact issue of infringement with great care.") In *MAS-*

12 *Hamilton Group*, the court further held that "the second step in the infringement analysis

13 <u>requires</u> a comparison of the claim to the accused device." (Emphasis added) (citations omitted).

14 In other words, the court can only determine if a limitation is missing or not as is claimed only

15 after carrying out both steps. In this case, the court never performed step 1 or step 2. Instead of

16 comparing the claims to the accused the court compared the PICs to the accused device.

17          The court did not construe the disputed claim terms "upper attachment" and "lower

18 attachment." The parties disputed the terms "upper attachment," "lower attachment" and the

19 Rotate Limitation in their summary judgment papers. (Pls' S.J. Opp., pgs. 12, 17-18). In

20 Appendix A of the parties' Joint Claim Construction and Prehearing Statement under Patent L.R.

21 4-3, the parties proposed constructions on disputed terms, phrases or clauses of asserted claims

22 of U.S. Patent No. 5, 913,530 under Patent L.R. 4-3(b).[3] The claim terms "upper attachment"

23 and "lower attachment" were identified as disputed terms. Plaintiffs proposed construction for

24 "upper attachment" was "[a] device part, either part of the boot or attached to or connectible to

25 the boot, to which either the coupler or the coupling mount is attached." Plaintiffs' proposed

26 construction of the term "lower attachment" was "[a] device or part attached to or connectible to

27 claimed board to which either the claim coupler or claim coupling mount is attached and which

28 ────────────────
   [3] On April 17, 2006, the parties submitted to the court their joint claim construction statement in
   which the terms "upper attachment" and "lower attachment" were contested.

1   rotates relative to the upper attachment." Had the court performed a claim construction on these

2   two disputed terms, as the second step requires, the court would have been required to look to the

3   accused device to see whether it had a "lower attachment."

4        The hold-down disk 5B together with the alignment ring (white disk) 17 clearly fits the

5   description of lower attachment. Therefore, had the court compared the claim to the accused

6   device as it is required to do, it would have found that the Rotate Limitation was satisfied, as

7   well as the limitation of permitting "rotation of the upper attachment relative to the lower

8   attachment when the upper attachment is locked to the lower attachment . . ." As previously

9   noted, the lower attachment consists of the hold-down disk 5B and the alignment ring 17 (white

10  disk) which remain rotationally fixed to the board while the upper attachment is permitted to

11  rotate.

12       Neither the court in its decision nor the Defendant has cited to any case where the court

13  avoided the two-step process. Had the court construed the terms "upper attachment" and "lower

14  attachment," Plaintiffs then should have been able to amend their PICs and say "Yes, Rossignol

15  does have a lower attachment as properly construed Under Patent L.R. 3-6." Plaintiffs have

16  been deprived of this right because the court did not construe contested claim terms.

17       **E.    Good Cause Was Shown To Amend The Preliminary
               Infringement Contentions.**
18

19       The court misread the record in finding that Plaintiffs were not diligent in seeking to

20  amend the PICs. (Order at 8) ("Plaintiffs fail to provide any explanation for the original error or

    why it took nearly three months to discover and seek to correct the error."). First, it did not take
21
    Plaintiffs "nearly three months" to seek to correct the error in the PICs. The "three months"
22
    should not have started January 4, 2006, when Plaintiffs served the PICs, because at that time,
23
    Plaintiffs believed in good faith they would be permitted to amend the contentions without leave
24
    of court under Pat. L.R. 3-6 after a "Claim Construction Ruling." At the very earliest, the clock
25
    should have started February 21, 2006 when the Defendant filed for summary judgment and
26
    made Plaintiffs aware of the error. *See e.g. Network Caching,* 2003 U.S. Dist. LEXIS 9881, * 7
27
    ("NCT did not have actual notice that its PICs were deficient until the court's August 13, 2002,
28
    order.") From February 21, 2006, Plaintiffs took only: 22 days to contact Defendant regarding

                                        11

1    Plaintiffs' intent to amend the PICs; 31 days to e-mail the amended claim chart to Defendant

2    (March 21); and 34 days to file its Motion to Amend the PICs. (Slobodin Decl. at 1-2).

3       The court also stated that "plaintiffs sought leave to amend their contentions only after

4    unsuccessfully moving the Court to continue the summary judgment motion on the ground that

5    they needed to take discovery .... This sequence of events suggests that the motion to amend is a

6    last-ditch effort to stave off summary judgment rather than a motion based on an honest

7    mistake." (Order at pg. 6). The day after the undersigned made his appearance in the case on

8    March 14, 2006, the undersigned telephoned opposing counsel to advise him that Plaintiffs will

9    be seeking leave to file amended intentions.

10         On March 15, 2006 I had a discussion with opposing counsel, Ed Walker and
          informed him that I wanted to move to amend the Rule 3-1 disclosure and he

11           asked if I could send him a copy of the proposed amendment. He assured me that
          he was in no way agreeing at that time to any such amendment.

12   (Slobodin Decl. at pg. 1). Thus, Plaintiffs started the process of seeking leave to amend the PICs

13    six days before the court denied the Rule 56(f) Motion to Defer on March 21, 2006. If the Rule

14    56(f) motion was granted and the Markman Hearing was held before summary judgment was

15    decided, Plaintiffs could have corrected their contentions without leave of court at set forth

16    herein.

17       Neither Defendant nor the court has cited a case where Plaintiff was denied a trial on the

18    merits where the patentee sought in such an early stage to amend the PICs. In all of the cases

19    relied upon by Defendant and cited by the court regarding denial of leave to amend PICs, the

20    delay had existed for years. Defendants' can cite to no case where summary judgment of non-

21    infringement was granted at such an early stage and without any consideration of claim

22    construction.

23       The court held that Mr. Allan's declaration has not established "good cause" because

24    Plaintiffs offered no explanation as to why the "errors" were made in the first place. The error

25    was a minor error, and it seemed to Plaintiffs that the issue would not be so much <u>why</u> the error

26    was made as to the fact that an error <u>was</u> made -- and based on the Local Patent Rules, Plaintiffs

27    believed in good faith they would be permitted to amend the PICs without leave of court.

28

1   The second reason given by the court, that Plaintiffs "qualified" their contentions by

2   stating that they were subject to revision, is not a reason to deny the motion. (Order at pg. 6).

3   As explained above, the court's third reason, that Plaintiffs did not diligently seek to amend their

4   contentions, was based on a mistaken reading of the record. (Order at pg. 6). The fourth reason,

5   the addition of the co-counsel, is not a reason to deny the motion, either. (Order at pg. 6).

6   The court also stated that the Defendant would be prejudiced if the court were to grant

7   Plaintiffs' motion for leave to amend. (Order at pg. 7). Any prejudice to Defendant is far

8   outweighed by prejudice to Plaintiffs because Plaintiffs are being denied a trial on the merits

9   because of a minor mistake in a discovery device. Furthermore, in briefing its summary

10   judgment motion, Defendants did not rely solely on the Rotate Limitation as its only defense.

11   (Def's S.J. Motion, pgs. 2-3). Besides the Rotate Limitation, Defendants' summary judgment

12   motion also asserted additional noninfringement defenses, equitable estoppel and invalidity.

13   Thus Defendant would have moved for summary judgment regardless. And, in any event

14   Defendant's lower attachment argument occupied a small portion of its brief.

15   **II.   THIS COURT SHOULD ALSO VACATE ITS GRANT OF
       SUMMARY JUDGMENT BECAUSE THE INCLUSION OF ITEM 4**

16   **AMOUNTED TO EXCUSABLE NEGLECT BY PLAINTIFFS'
       ATTORNEY.**

17

18   Assuming, *arguendo*, the inclusion of item 4 in the PICs was proper grounds for granting

19   summary judgment, the judgment should nevertheless be vacated under Rule 60(b) because the

20   inclusion of item 4 in the PICs amounted merely to excusable neglect by Plaintiffs' attorney. In

21   that regard, Defendant was not prejudiced, Plaintiffs responded promptly to the error, the mistake

22   was excusable and Plaintiffs acted in good faith.

23   **A.   Rule 60(b) Gives This Court the Power to Vacate Its Grant of
        Summary Judgment Where Excusable Neglect by an Attorney
        Lead to the Court's Ultimate Judgment.**

24   The United States Supreme Court, in *Pioneer Investments Services Company v.*

25   *Brunswick Assoc. Ltd.* 507 U.S. 380 (1992) defined the factors for the Court's consideration in

26   determining excusable neglect pursuant to Rule 60(b). The Court indicated that the

27   determination should be based upon equity taking into account the relevant circumstances. In

28   particular, the court held that the determination of excusable neglect is an equitable one based on

13

1  all the relevant circumstances, particularly the following factors: (1) the danger of prejudice to

2  the nonmovant; (2) the length of the delay and its potential impact on judicial proceedings; (3)

3  the reason for the delay, including whether it was within the reasonable control of the movant;

4  and (4) whether the movant acted in good faith. The Ninth Circuit has applied the *Pioneer*

5  Factors to Rule 60(b) motions. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir.

6  1996) ("We now hold that the equitable test set out in Pioneer applies to Rule 60(b) as well.")

7        Rule 60(b) has also been used to relieve a party from harsh judgment resulting from an

8  misreading of local rules. *Lenaghan v. Pepsico, Inc.*, 961 F.2d 1250, 1254 (6th Cir. 1992) ("we

9  conclude that the defendants' error was based on an excusable misreading of a somewhat

10  ambiguous local rule"); *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776

11  F.2d 1277, 1280-1281 (5th Cir. 1985) (" the circumstances are sufficient to excuse the attorney's

12  neglect").

13  **B.  Relief From The Grant of Summary Judgment is Proper Under the Pioneer Factors.**

14

15        In applying the *Pioneer* Factors to the current case, it is clear that relief from judgment is

16  warranted. Regarding the first factor, prejudice to the nonmovant, any prejudice to Defendant is

17  far outweighed by prejudice to Plaintiffs because Plaintiffs are being denied a trial on the merits

18  for a mistake in a discovery device. As discussed above, regardless of the inclusion of item 4,

19  the PICs put Defendants on notice that the accused device had a lower attachment that the upper

20  attachment was permitted to rotate relative to. (*see* Subsection I(C) *supra*). Furthermore, in

21  briefing its summary judgment motion, Defendants did not rely solely on the Rotate Limitation

22  as its only defense. (Def's S.J. Motion, pgs. 2-3). Regarding the second *Pioneer* factor, length

23  of delay, Plaintiffs' first disagree that there was any delay because there had not yet been any

24  claim construction ruling under Patent L.R. 3-6. Nevertheless, the delay, if any, was minimal

25  because Plaintiffs contacted Defendant on March 15, 2006 regarding Plaintiffs' intent to seek

26  leave to file amended contentions. (Slobodin Decl. at 1).

27        Regarding the final two *Pioneer* factors, (3) reason for the error and (4) good faith,

28  Plaintiffs' inclusion of item 4 was inadvertent. Such can be seen by examining the PICs as a

whole. The PICs identify the lower attachment in several other places without referring to item

14

1  4. (*see* Subsection I(C) *supra*) (Exh. 1, pg. 1-3). Furthermore, when Plaintiffs' attorney

2  submitted the PICs on January 4, 2006, he believed in good faith that he would be permitted to

3  amend the "preliminary" contentions as the local rules permit. (Allen Decl. at pg. 2). The PICs

4  also included a qualifying phrase that "[t]his disclosure is made based upon preliminary

5  evaluation and examination and is subject to revision by plaintiffs based upon additional

6  discovery, evaluation, investigation and/or research." (Allen Decl. at pg. 2). Since the error was

7  inadvertent and there was no reason to include numeral 4 where it was included in the PICs,

8  there is no evidence of bad faith on the part of Plaintiffs.

9  **III.    CONCLUSION**

10      We respectfully request that the court consider the above and vacate its grant of summary

11  judgment.

12

13  DATED: May 23, 2006                              SEYFARTH SHAW LLP

14

15                                                  By /s/Jack L. Slobodin
                                                       Jack L. Slobodin
16                                                  Attorneys for Plaintiffs
                                                    RICHARD W. BERGER and
17                                                  BRANT W. BERGER

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION UNDER FED. R. CIV. P. 60(B) TO VACATE JUDGMENT / 3:05-CV-02523-CRB

# EXHIBIT G

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/13/2005 | 8 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| With Client | 4/26/2005 | Meeting with Richard Berger and John Branton, CPA | 2hrs | | | 0.00 |
| Complaint | 6/22/2005 | Prepare and File Complaint; Have County Process Serve Rossignol and Quicksilver with Complaint | 4hrs | | | 0.00 |
| For Complaint | 6/21/2005 | Fee to File Complaint in District Court | | | | 250.00 |
| Serve Compl... | 6/28/2005 | Fee to Have County Process Serve Complaint and Summons on Rossignol | | | | 95.00 |
| Meeting | 7/19/2005 | Meeting with Mr. Fred DeKlotz at his office | 2hrs | | | 0.00 |
| to Opposing ... | 7/20/2005 | letter to Michael Yoder re Quicksilver | .4hrs | | | 0.00 |
| to Client | 8/8/2005 | letter to Richard and Brant | .5hrs | | | 0.00 |
| Letter | 8/8/2005 | letter to Mr. Fred DeKlotz | .5hrs | | | 0.00 |
| With Client | 8/16/2005 | Telephone conversation with Richard Berger | 1hr | | | 0.00 |
| Letter | 8/16/2005 | letter to Mr. Fred DeKlotz re Cost Contributions | 1hr | | | 0.00 |
| to Client | 9/14/2005 | letter to client re first amended complaint | .5hrs | | | 0.00 |
| Research | 9/26/2005 | Research | 2hrs | | | 0.00 |
| Research | 9/27/2005 | Research | .5hrs | | | 0.00 |
| Research | 9/28/2005 | Research, Review, Prepare and File First Amended Complaint | 8hrs | | | 0.00 |
| Letter | 9/29/2005 | letters to Jack Slobodin and Reginald Suyat Requesting Copies of Documents in Their Possession | .3hrs | | | 0.00 |

| | |
|---|---|
| **Total** | $345.00 |
| **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/30/2005 | 19 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Serve Compl... | 10/4/2005 | County Process Fee to Serve Amended Complaint on Rossignol | | | | 90.00 |
| Prepare | 10/13/2005 | Prepared and Filed Declination to Proceed Before a Magistrate; Telephone Conversation with Dick Berger | .8hrs | | | 0.00 |
| With Opposi... | 10/28/2005 | Telephone Conference with Ed Walker and John Omera | .5hrs | | | 0.00 |
| Fee | 10/31/2005 | County Process Fee for Serving Complaint on Quicksilver on 7/7/05 | | | | 67.50 |

| | | Total | $157.50 |
|--|--|-------|---------|
| | | **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/21/2005 | 29 |

| Bill To |
|---------|
| Mr. Richard Berger<br>2881 Juniper Avenue<br>Morro Bay, Ca 93442<br>USA |

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| to Client | 11/4/2005 | Letter to Dick Berger re discovery from Rossignol; Letter to Edward Walker re Proposed Protective Order | 1hr | | | 0.00 |
| Letter | 11/7/2005 | Letter to Dick Berger and John Branton re financing of the case; prepared "Plaintiffs Inserts for the Joint CMC Statement" | 2hrs | | | |
| Prepare and ... | 11/14/2005 | Prepare and File Response to Rossignol's Counter Claims; telephone conference with client; telephone conference with John Branton's Office; telephone with Jack Slobodin; review correspondence with Ed Walker | 2.9hrs | | | |
| Copy Docum... | 11/15/2005 | Copied all documents in the Berger v. Rossignol Case and Sent them to Mr. Slobodin for Information and Review | .3hrs | | | 0.00 |
| Case Manage... | 11/18/2005 | Appearance at CMC in San Francisco; Conference with Opposing Counsel | 3.5hrs | | | 0.00 |
| Meeting | 11/18/2005 | Meeting with Jack Slobodin and Reginald Suyat | 3hrs | | | 0.00 |
| Phone Call | 11/18/2005 | Telephone Conversation with Fred DeKlotz | 2hrs | | | 0.00 |
| to Opposing ... | 11/22/2005 | ltr to Edward Walker re his letter of November 14, 2005; Letter to John Branton and Dick Berger re costs and status of case | .5 | | | 0.00 |

| | Total | $0.00 |
|---|-------|-------|
| | **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/31/2005 | 40 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Prepare | 12/2/2005 | Prepare and Serve Initial Disclosures; Prepare and File Second Amended Complaint | 12hrs | | | |
| Fee | 12/12/2005 | Trust Check #2206 written to John Branton for reimbursement for his check that he wrote to Richard Berger | | | | 5,000.00 |
| With Client | 12/12/2005 | Meeting with Richard Berger re discovery | 3hrs | | | |
| Fee | 12/12/2005 | Trust Check #2207 written to Richard Berger for 700 miles @ .39 cents and $20.00 for copying costs | | | | 293.00 |
| Fee | 12/12/2005 | Trust Check #2208 written to Burnett, Burnett, & Allen for reimbursment for payment made to Fed Ex (Service of Initial Disclosures on Edward Walker and Kenneth Nissly) | | | | 65.40 |
| Prepare | 12/15/2005 | Prepare Responses to Rossignol's Discovery Request | 6hrs | | | 0.00 |
| Prepare | 12/16/2005 | Prepare and Respond to Discovery Requests from Rossignol | | | | 0.00 |
| Fee | 12/16/2005 | Trust Check #2210 Written to Burnett, Burnett, & Allen for reimbursement of fees paid to Kinko's for Copying of all Documents to be Produced in the Rossignol Document Request, Set One | | | | 1,823.84 |
| Prepare | 12/16/2005 | Continue to Prepare Responses to Rossignol's Discovery Requests; Serve Discovery Responses on Rossignol | 12hrs | | | 0.00 |

| | Total | |
|---|-------|---|
| | **Balance Due** | |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/31/2005 | 40 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Fee | 1/3/2006 | Trust Check #2212 Written to Burnett, Burnett, & Allen for reimbursement for Copying Costs | | | | 7.80 |
| Review File | 12/28/2005 | Review file re claims | 2.5hrs | | | |

| | | |
|---|---|---|
| **Total** | | $7,190.04 |
| **Balance Due** | | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/26/2006 | 53 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Prepare | 1/4/2006 | Prepare and Serve Supplemental Initial Disclosure Pursuant to Local Patent Rule 3-1 | 6hrs | | | 0.00 |
| Prepare | 1/4/2006 | Prepare and Serve Responses to Interrogatory Number 14 | 2hrs | | | 0.00 |
| Fee | 1/25/2006 | Trust Check #2215 written to James R. Thein for Copies of File Wrappers for Patents | | | | 300.00 |

| | Total | $300.00 |
|--|-------|---------|
| | **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/1/2006 | 73 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Copying Cost | 2/22/2006 | Copying Costs for Copying Rossignol's Motion for Summary Judgment sent by Fed Ex to Jack Slobodin and by Mail to Richard Berger | | | | 182.80 |
| Postage Cost | 2/22/2006 | Postage Fee to Mail Rossignol's Motion for Summary Judgment to Richard Berger | | | | 6.15 |
| Fee | 2/28/2006 | Trust Check#2217 Written to FedEx Kinko's to Copy Photographs to be Produced to Rossignol | | | | 14.44 |

| | **Total** | $203.39 |
|---|-----------|---------|
| | **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

**Burnett, Burnett & Allen**

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/27/2006 | 79 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Cost | 3/1/2006 | Trust Check #2218 Paid to McMahon & Associates for Copying Videotapes to be produced to Rossignol | | | | 100.00 |
| Meeting | 3/2/2006 | Meeting with Reg Suyat in Oakland | 2.5hrs | | | 0.00 |
| Letter | 3/3/2006 | Ltr to Jack Slobodin and Richard Berger re Proposed Terms of Claim Elements for Construction | .3hrs | | | |
| Prepare | 3/3/2006 | Prepare and Serve Plaintiffs Proposed Terms of Claim Elements | .3hrs | | | 0.00 |
| Cost | 3/7/2006 | Fed Ex Cost to Send Copy  Motion to Summary Judgment to Jack Slobodin | | | | 23.30 |
| Letter | 3/9/2006 | ltr to John O'Meara | .3hrs | | | 0.00 |
| With Opposi... | 3/16/2006 | Phone call with Opposing Counsel | 1hr | | | 0.00 |
| Cost | 3/20/2006 | Trust Check #2140 written to County Process for Hand Delivery of Letter to Judge Spero in San Francisco | | | | 85.00 |
| Cost | 3/20/2006 | Trust Check #2099 written to Fed Ex for Fed Ex Sent to Reg Suyat and Ed Walker | | | | 180.58 |
| Cost | 3/22/2006 | Trust Check #2144 written to Fed Ex to Have them Send to Jack Slobodin Copies of Correspondence Files, and Box of Documents Produced to Rossignol | | | | 54.06 |
| Cost | 3/23/2006 | Trust Check #2102 written to Richard Berger to cover expenses incurred | | | | 560.00 |
| Cost | 3/23/2006 | Trust Check #2101 written to Richard Berger for Storage Expenses | | | | 5,400.00 |

| Total | |
|-------|--|
| **Balance Due** | |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/27/2006 | 79 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Cost | 3/23/2006 | Trust Check #2100 written to Brant Berger to cover expenses incurred | | | | 550.24 |
| With Client | 3/30/2006 | Meeting with Richard and Brant Berger | 2hrs | | | |
| Cost | 3/23/2006 | Trust Check #2103 written to Doug Allen for reimbursement for lunch meeting he paid for | | | | 25.82 |
| Phone Call | 3/23/2006 | Phone call with Jack Slobodin | .3hrs | | | |
| With Client | 3/23/2006 | Phone call with client | .3hrs | | | |
| Review | 3/24/2006 | Review Opposition to Motion for Summary Judgment | 1hr | | | |
| Postage Cost | | Postage Cost for the Month of March 2006 | | | | 7.62 |
| Copying Cost | | Copying Cost for the Month of March 2006 | | | | 215.40 |
| Prepare | 3/27/2006 | Prepare Declaration of Douglas B. Allen and e-mail to Jack Slobodin | 1hr | | | |
| Cost | 3/28/2006 | Trust Check #2108 Written to Fed Ex to Send Boot Binding to John O'Meara | | | | 70.20 |
| Prepare | 3/29/2006 | Prepare Supplemental Responses to Discovery Served by Rossignol | 3.5hrs | | | |

| | **Total** | $7,272.22 |
|---|-----------|-----------|
| | **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/25/2006 | 86 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Phone Call | 4/3/2006 | Telephone call with O'Meara and Walker | 1hr | | | |
| Fed Ex Cost | 4/11/2006 | Trust Check #2109 written to Fed Ex for Delivery of Supplemental Discovery on Opposing Counsel | | | | 52.87 |
| Meeting | 4/12/2006 | Meeting with Reg Suyat in Oakland | 3.5hrs | | | |
| Cost | 4/12/2006 | Cost for Parking in Oakland | | | | 22.00 |
| Cost | 4/12/2006 | Cost for Doug to Travel to Reg Suyat's office in Oakland - Roundtrip (.40 cents x 120miles) | | | | 48.00 |
| Appearance | 4/14/2006 | Appearance at Hearing on Motion for Summary Judgment in San Francisco | 4hrs | | | 0.00 |
| Cost | 4/14/2006 | Cost to Park at Civil Center Plaza in San Francisco | | | | 12.50 |
| Cost | 4/14/2006 | Cost for Doug to Travel to San Francisco Courthouse (.40 cents x 100) | | | | 40.00 |
| Meeting | 4/14/2006 | Lunch meeting at Cafe 450 | | | | 52.08 |
| to Opposing ... | 4/19/2006 | ltr to John O'Meara | .3hrs | | | 0.00 |
| Review File | 4/20/2006 | Review Documents and put together privilege log | 9hrs | | | 0.00 |
| Prepare | 4/21/2006 | Finish Reviewing Documents; Put finishing touches on Privilege Log; ltr to John O'Meara | 6hrs | | | 0.00 |
| Cost | 4/27/2006 | Trust Check #2110 written to Boyer Weaver & Thomas LLP for Invoice #34468 | | | | 3,915.00 |
| Fed Ex Cost | 4/27/2006 | Cost to have Fed Ex ship copies of Jack Slobodin Pleadings to Reg Suyat | | | | 19.04 |
| Postage Cost | 4/28/2006 | Postage Cost for the Month of April 2006 | | | | 29.13 |

| | **Total** | |
|---|---|---|
| | **Balance Due** | |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Page 1

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/25/2006 | 86 |

| Bill To |
|---------|
| Mr. Richard Berger<br>2881 Juniper Avenue<br>Morro Bay, Ca 93442<br>USA |

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Copying Cost | 4/28/2006 | Copying Cost for the Month of April 2006 | | | | 219.40 |

| | Total | $4,410.02 |
|---|-------|-----------|
| | **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 5/30/2006 | 94 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Prepare | 5/1/2006 | Prepare Motion for Reconsideration/New Trial FRCP 59/FRCP 60 | 8hrs | | | 0.00 |
| Cost | 5/2/2006 | Trust Check #2114 Written to Fed Ex to Ship Additional Docs and Privilege Log to Ed Walker and John O'Meara | | | | 45.47 |
| Cost | 5/19/2006 | Trust Check #2115 Written to Beyer Weaver & Thomas LLP for Invoices #34972 & #34971 | | | | 4,272.40 |

| | |
|---|---|
| **Total** | $4,317.87 |
| **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 7/24/2006 | 104 |

| Bill To |
|---------|
| Mr. Richard Berger<br>2881 Juniper Avenue<br>Morro Bay, Ca 93442<br>USA |

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Cost | 5/30/2006 | Trust Check #2116 written to Brant Berger to cover expenses incurred | | | | 574.34 |
| Letter | 6/5/2006 | ltr to Jack Slobodin re Rule 60(b) Motion | .5hrs | | | 0.00 |
| Cost | 6/22/2006 | Trust Check #2120 written to Beyer, Weaver, & Thomas re Invoice #35646 | | | | 765.00 |

| | |
|---|---|
| **Total** | $1,339.34 |
| **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

Burnett, Burnett & Allen

160 West Santa Clara, #1200
San Jose, CA 95113

# Invoice

| Date | Invoice # |
|------|-----------|
| 9/5/2006 | 125 |

**Bill To**

Mr. Richard Berger
2881 Juniper Avenue
Morro Bay, Ca 93442
USA

DUE UPON RECEIPT

| Item | Serviced | Description | Attorney | Paralegal | Time | Amount |
|------|----------|-------------|----------|-----------|------|--------|
| Cost | 8/22/2006 | Trust Check #2126 written to Seyfarth Shaw for costs and partial payment for time spent on brief | | | | 11,000.00 |
| Phone Call | 8/23/2006 | Phone call with Jack Slobodin | .3hrs | | | |

| | Total | $11,000.00 |
|---|-------|-----------|
| | **Balance Due** | $0.00 |

| Phone # | Fax # |
|---------|-------|
| 408-298-6540 | 408-298-0914 |

# EXHIBIT H

Yahoo! Mail - burnettburnettallen@yahoo.com                                          Page 1 of 2

# YAHOO! MAIL

Print - Close Window

| Date: | Mon, 19 Feb 2007 20:09:12 -0800 (PST) |
| Subject: | Patent litigation |
| From: | "Richard W. Berger" <richard.berger@brandgo.com> |
| To: | burnettburnettallen@yahoo.com |
| CC: | Dba123456@aol.com |

*FILE*
*COPY TO CLIENT*
*CALENDAR SECTY*
*CALENDAR ATTNY*
*RETURN W/FILE*
*SEE ME*
*COPY TO*

*RECEIVED FEB 2 0 2007*

Doug,

My understanding is that you represent Brant and myself and the moneys
provided by John Branton for the litigation fund are based soely on an
agreement and understanding between John and myself. I am not aware nor
have I received any correspondance contrary to the agreement or
understanding John and I reached.

I am emailing you the memorandum agreement prepared by John Branton and
the spread sheet. We verbally agreed that any additional moneys raised
would not be at five times, as stated in the agreement, but instead
would
be double.

I received $5,400.00 in Dec 2005 for March 2005 to March 2006. I
received
another $5,400.00 in March 2006. I am now requesting payment from the
litigation trust fund of $5,580.00 for March 2007 to March 2008 as per
my
agreement and arrangement with John Branton.

As you know, negoiations between John and myself went on for nearly 6
months. If you recall, one of the final stumbling blocks was the issue
of
$300.00 per month for payment on a line of credit taken out by my
daughter, which helped pay for the patents, and the ongoing storage
bill
which is now at $165.00 per month. You should recall, I insisted from
day
one that these costs must be considered part of the litigation and be
payed out of the litigation fund.  At that time, you would not disperse
the funds to me until you got Johns permission and as you know that
created more problems. Again John finally agreed, increasing the
litigation fund from $75,000.00 to $80,000.00.

My position is to now ask John's permission to disperse these funds is
like asking him if he and his partners want to renegoiate because,
essentially its saying there is no understanding.

You stated that you didn't want to get on John's bad side, Well either
do
I and that is why I have kept him informed on evething with the
exception
of the dispersal of funds. For some reason your office sends John an
accounting but not me.

I don't want to start down the slippery slope of you having to get
John's
approval on matters pertaining to litigation or the dispersal of funds.

You and I have an agreement pertaining to the litigation and I have an agreement with John for "an understanding to the allocation of receipts from litigation".

During our conversation sunday I stated to get the impression that you and
John might have some kind of understanding that I am not aware of. Do you
feel you need John's approval for an appeal or any dispersal of funds.
e.g. Slabodin, Reg, etc?

Brant and I were looking forward to our meeting with you on monday to
further discuss and reach a conclusion on if we should or should not
appeal to the Supreme court. If we don't appeal does it mean we didn't
excercise all of the remedies available to us and would that hurt us if we
were to take legal action against Sayfarth? How much time do we have? How
much is presently in the litigation fund? Can I get accounting of the fund?

Talk to you tuesday.
Sincerly, Dick

Richard W. Berger
CEO
BrandGo, Inc.
cell: 831.295.9013
email: richard.berger@brandgo.com
http://www.brandgo.com

===
The e-mail is intended soley for the person or entity to which it is
addressed and may contain confidential and or privileged information. Any
review, dissemination, copying, printing or other use of this e-mail by
persons or entities other than the addressee is prohibited.  If you have
received this e-mail in error, please contact the sender immediately and
delete the material from any computer.

# EXHIBIT I

# BURNETT, BURNETT, & ALLEN

### Trial Attorneys and Counselors at Law

DOUGLAS B. ALLEN

160 WEST SANTA CLARA, SUITE 1200
SAN JOSE, CALIFORNIA 95113

DAVID M. BURNETT (1870-1959)

JOHN M. BURNETT (1903-1981)

Hon. BRUCE F. ALLEN (1916-1986)

TELEPHONE
(408) 298-6540

FACSIMILE
(408) 298-0914

20 February 2007

Richard Berger
1519 Country Club Drive
Paso Robles, CA 93446

Re:    Berger v. Rossignol; Fund for Litigation Costs Held in Trust by
Burnett, Burnett, & Allen

Dear Dick:

Thank you for the various correspondence between you and John
Branton copied in your email of February 19, 2007. The information is quite
helpful. First and foremost in response to your email, I want to be perfectly
clear that, I do not have any separate understanding about the litigation costs
with John Branton, nor would I ever enter into such an "understanding" or
agreement separate and apart from you.

In fact that has been the problem for me throughout the course of this
case, as I have been given minimal direction from either you or John regarding
holding these funds for costs. I have never been given any comprehensive
written instructions. Most of the authority to hold and disburse the funds has
come from verbal messages or cryptic email from you and John. Previous
disbursements were all done with John's direct approval, which resolved any
problem on my part.

The undated "Memorandum Agreement Between Dick Berger, Brant
Berger and the BMB Litigation Fund, LLC" was not copied to me. Receipt of
the memorandum this morning constitutes the first time that I have been privy
to a writing evincing the agreement between you and John. As you know I had
proposed an agreement to give me discretion over determining when and to
what extent payment would be made for the costs and expenses. That
agreement covered other specific terms between you, John, and his other
investors, however, that agreement was never signed. I consider the payment
of the funds to this firm to be execution by performance, however, I am
reluctant to attempt to reserve any discretion on my part without unanimity,
due to the lack of signatures.

Letter to Richard Berger
Re: Berger v. Rossignol; Litigation Costs Fund Held In Trust by Burnett, Burnett, &
Allen
20 February 2007
Page 2

I spoke to John this morning, and he indicated that the memorandum was a memorialization of the understanding between the parties involved. The memorandum, however, is vague as to the terms under which I am authorized to disperse the litigation funds.

My reluctance is not based upon any secret agreement with anyone. As you should be well aware, I represent you and Brant and have loyally done so over many years. I expressed to you, as well as John, however, at the inception of this case that I perceive a conflict between representation of your interests adverse to those of John Branton's due to John's intimate involvement in Berger Enterprises Inc. Further, the funds were delivered to me by John, not you.

The funds deposited to my trust account were deposited for the purposes of payment of costs and litigation expenses, including fees for Jack Slobotin and Reg Suyat. That direction was given to me by both you and John Branton. Payment of directly related litigation costs was not difficult to determine through the course of the case in the trial court. Because of the lack of guidance with respect to the deposit of those funds, I have specifically sought John Branton's consent on additional expenditures, such as the expenditures for reimbursement to you of storage costs and the expenditures paid to date for costs of appeal, including the limited attorney's fees billed by Jack Slobotin.

Because of my responsibility for those funds, I feel obligated to attempt to obtain that consensus at the current time. Accordingly, John has assured me that he will contact you today regarding your recent request for expense reimbursement. I am aware that you are concerned about delays, as am I, as I have recommended going forward with a petition for Certiorari. In light of all the circumstances, however, I would appreciate an endeavor to reach a consensus with John. Your current expense demand and his concerns for a payment foreign patent maintenance fees should be discussed.

Thank you for your patience.

Yours truly,

DOUGLAS B. ALLEN

DBA:erf
cc: John Branton

# EXHIBIT J

No. 06-1372
Title:          Richard W. Berger, et al., Petitioners

                v.

                Rossignol Ski Company, Inc.
Docketed:       April 16, 2007
Lower Ct:       United States Court of Appeals for the Federal Circuit
  Case Nos.:    (2006-1431)
  Decision Date: January 12, 2007

~~~Date~~~   ~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~
Apr 12 2007  Petition for a writ of certiorari filed. (Response due May 16, 2007)
Apr 26 2007  Order extending time to file response to petition to and including June 15, 2007.
Jun 15 2007  Brief of respondent Rossignol Ski Company, Inc. in opposition filed.
Jun 26 2007  Reply of petitioners Richard W. Berger, and Brant W. Berger filed. (Distributed).
Jun 27 2007  DISTRIBUTED for Conference of September 24, 2007.
Oct 1 2007   Petition DENIED. Justice Breyer took no part in the consideration or decision of this
             petition.

---

~~~Name~~~~~~~~~~~~~~~~~~~~       ~~~~~~~~Address~~~~~~~~~~~~~~~~~~       ~~Phone~~~
**Attorneys for Petitioners:**
Douglas Blanchard Allen          Burnett, Burnett & Allen               (408) 298-6540
                                 160 W. Santa Clara Street
                                 Suite 1200
                                 San Jose, CA  95113
Party name: Richard W. Berger, et al.
**Attorneys for Respondent:**
Edward Philip Walker             Oliff & Berridge, PLC                  (703) 836-6400
                                 277 South Washington Street
                                 Alexandria, VA  22314
Party name: Rossignol Ski Company, Inc.

# EXHIBIT K

## BURNETT, BURNETT, & ALLEN

### Trial Attorneys and Counselors at Law

DOUGLAS B. ALLEN

DAVID M. BURNETT (1870-1959)

JOHN M. BURNETT (1903-1981)

Hon. BRUCE F. ALLEN (1916-1986)

333 WEST SAN CARLOS ST., 8TH FLOOR
SAN JOSE, CALIFORNIA 95110

TELEPHONE
(408) 298-6940

FACSIMILE
(408) 298-0914

18 September 2007

Justin Beck
Beck, Ross, Bismonte & Finely, LLP
50 W. San Fernando Street, Suite 1300
San Jose, Ca 95113

VIA FACSIMILE AND U.S. MAIL
408-938-0790

Re:   Berger v. Seyfarth Shaw LLP, et, al.; Superior Court Case Number
1-07-CV094074

Dear Mr. Beck:

In addition to being shocked, dismayed and saddened for being sued by Dick Berger and Brant Berger, not only for professional negligence, but for "fraud", I am placed in an untenable position with regard to my current clients. Both Richard and Brant Berger are currently my clients, whom I represent currently before the United States Supreme Court on their "Petition for Certiorari" arising from the same underlying case over which your pleading arises. As you should appreciate, this presents an untenable position. I cannot act both as advocate for the Bergers and as defendant to the Bergers at the same time. The Berger's have not terminated my services, yet through your advise, have included me in a complaint alleging claims not supported by the facts.

Making the claim against me makes little sense from a strategic prospective. Aside from my lack of culpability in the creation of the claims chart, my attorney/client privilege with Dick Berger extends back approximately sixteen years and continues unto today. Waiver of that privilege is not in Mr. Berger's interest. Furthermore, the claim is uninsured.

As you probably know, the underlying case was financed by funds raised by John Branton, who is also responsible for materially contributing to the initial capitalization of Berger Enterprises, Inc. Seyfarth Shaw handled the appeal of Judge Breyer's order on a discounted basis. There were no funds other than those of Mr. Branton to proceed with a petition to the United States Supreme Court for Certiorari. Enclosed for your information is a copy of a letter submitted to John Branton requesting access to funds for those purposes

Letter to Justin Beck
Re: Berger v. Seyfarth Shaw LLP, et, al.; Superior Court Case Number 1-07-CV094074
19 September 2007
Page 2

dated March 21, 2007. No funds were made available for the purposes of filing a "Petition for Certiorari". Accordingly, I entered into an additional agreement by telephone with Mr. Berger whereby I agreed to file the "Petition for Certiorari" to the United States Supreme Court in exchange for a release from any malpractice claim arising from prosecution of the underlying action. Enclosed is my letter of April 10, 2007, memorializing that oral agreement. Although, it is true that Mr. Berger never executed the formal release agreement which included a waiver of Civil Code Section 1542, I proceeded to render the services in reliance on the oral agreement confirmed in writing and filed the brief with the United States Supreme Court. That case is still pending, and it is that continuing relationship with the Bergers that represents an ongoing attorney/client relationship.

The action filed by your firm places me in an obviously untenable circumstance of being sued by the client I currently represent. The compromise reached to allow the case to proceed to its final avenue of appeal was done taking into consideration all the factors, including the need to try to reverse Judge Beyer's decision, the fact that Mr. Berger repeatedly acknowledged that I had no material contribution to the misstatement in the claims chart, and that there was no other source of compensation to fund this final appeal.

It is not my desire to take up a position in opposition to my client and friend of more than 16 years. Accordingly, I request that you immediately dismiss the complaint against myself and the firm name Burnett, Burnett & Allen. Please respond as soon as possible.

Yours truly,

DOUGLAS B. ALLEN

DBA:erf
Enclosures
cc:    Richard Berger
cc:    Brant Berger

Yahoo! Mail - burnettburnettallen@yahoo.com

Print - Close Window

**YAHOO! MAIL** Classic

| | |
|---|---|
| **Date:** | Fri, 2 Mar 2007 08:05:18 -0800 (PST) |
| **From:** | "Douglas Allen" <burnettburnettallen@yahoo.com> |
| **Subject:** | Berger v. Rossignol |
| **To:** | "John F Branton" <bdacpa1@aol.com> |
| **CC:** | "Douglas B Allen" <dba123456@aol.com> |

We want to go forward and file a Petition in the United State Supreme Court in regards to the above matter. I wanted to get authorization from you to use funds out of the Berger Trust to get this task accomplished. We are going to need $10,000.00 to $20,000.00. Do we have your authorization to use the funds for that purpose?

## BURNETT, BURNETT, & ALLEN

Trial Attorneys and Counselors at Law

DOUGLAS B. ALLEN

————————————
160 WEST SANTA CLARA, SUITE 1200
SAN JOSE, CALIFORNIA 95113

DAVID M. BURNETT (1870-1959)

JOHN M. BURNETT (1903-1981)

HON. BRUCE F. ALLEN (1916-1986)

FACSIMILE
(408) 298-0914

TELEPHONE
(408) 298-6540

21 March 2007

John F. Branton, C.P.A.
Branton, de Jong Associates
6155 Almaden Expressway, Suite 350
San Jose, CA 95120

Re:    Berger v. Rossignol; Preparation for Petition for a Writ of
       Certiorari; Use of Funds in Trust

Dear John:

I have not heard from you regarding use of the funds for the "Petition for a Writ of Certiorari" that are currently held in trust. I understand that you are concerned about use of the last $30,000.00, in funds due to the need to payoff other investors that you encouraged to put up the money for this investment. Out of deference for that, I will not go forward and utilize funds into the last $30,000.00, however, due to the pressure of deadlines I am preparing to file a "Petition for a Writ of Certiorari" and would look to the trust funds for at least $9,000.00, that currently is held over and above the $30,000.00, for reimbursement of my time.

Please contact me immediately if you have any objection to this process. I look forward to talking to you at the conclusion of tax time.

Yours truly,

DOUGLAS B. ALLEN

DBA:erf

cc:   Richard Berger

## BURNETT, BURNETT, & ALLEN

Trial Attorneys and Counselors at Law

DOUGLAS B. ALLEN

160 WEST SANTA CLARA, SUITE 1200
SAN JOSE, CALIFORNIA 95113

DAVID M. BURNETT (1870-1959)

JOHN M. BURNETT (1903-1981)

Hon. BRUCE F. ALLEN (1916-1986)

FACSIMILE
(408) 298-0914

TELEPHONE
(408) 298-6540

10 April 2007

Richard Berger
1519 Country Club Drive
Paso Robles, CA 93446

Brant Berger
1171 San Andreas Road
La Selva Beach, CA 95076

Re:   Berger v. Rossignol; Settlement with Douglas B. Allen, Burnett,
      Burnett & Allen

Dear Dick and Brant:

This letter is to confirm our agreement whereby we agree to settle any
malpractice claim you may now or ever possess against me or my firm arising
out of errors and/or omissions involved in the prosecution of the patent
infringement lawsuit entitled *Berger v. Rossignol*, United States District Court
for the Northern District of California Case Number C05-02523CRB. The
settlement is an exchange for the services provided by this office in preparation
of a petition for certiorari to the United States Supreme Court requesting
review of the affirmance of Judge Beyers judgment by the Federal Circuit Court
of Appeals.

Enclosed for your review and execution is a formal settlement agreement
setting forth the terms of this settlement, including a complete waiver of claims
known and unknown by virtue of waiver of Civil Code Section 1542. You
should review the document carefully and insure that it correctly reflects your
intention. Please feel free to have the document reviewed by counsel.

Thank you for your courtesies in this matter.

Yours truly,

DOUGLAS B. ALLEN

## SETTLEMENT AGREEMENT AND GENERAL RELEASE
### April 10, 2007

    1. PARTIES: This Settlement Agreement and General Release (the "Agreement") is made by and between Richard and Brant Berger, father and son and inventors of the Berger 360 Binding and owners of United States Patents 5,913,530 issued June 22, 1999 and United States Patent Number 6,196,569 issued March 6, 2001, their heirs, , successors and assigns, corporate affiliates, attorneys and insurance carriers (hereinafter referred to as "Client") and Douglas B. Allen, d.b.a. Burnett, Burnett & Allen, including his firm, heirs, successors, assigns, and insurance carriers (hereinafter referred to as "Attorney") (referenced to said names and/or designation hereinafter are not to be affected or determined by the use of upper or lower case letters).

    2. SOLE AGREEMENT: This Agreement is based on the premises and mutual promises contained herein. This Agreement is the entire agreement of the parties pertaining to its subject matter and supersedes any prior or contemporaneous negotiations or agreements between the parties whether written or oral. Each of the parties acknowledges representation by counsel and/or the opportunity to be represented by counsel of choice, throughout all negotiations which preceded the execution of this Agreement. Each of the parties acknowledges that it has not relied on any promise, representation or warranty, expressed or implied, not contained in this Agreement.

    3. THE CONTROVERSY SETTLED AND THE ACTION: Attorney has represented Client as attorney in RICHARD W. BERGER; BRANT W. BERGER vs. ROSSIGNOL SKI COMPANY, INCORPORATED; ROSSIGNOL S.A.; SKIS ROSSIGNOL S.A., UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA Case No. C05-02523 CRB. (Attorney's representation and all liability, exposure and claims arising from that representation or other acts and/or omissions set forth in this paragraph are hereinafter the "action"). For the purpose of retaining attorney the parties entered into a written contingent fee agreement dated March 9, 2005. Attorney's representation was to be assisted by experienced patent counsel Jack Slobotin and funded by a separate arrangement with investors including but not limited to John Branton. The action was filed in June of 2005. Funding was unforeseeably delayed, and Jack Slobotin failed to materially contribute to the prosecution of the case until formally associated as co counsel. Unknown to the parties herein at the time of the original contingent fee agreement, Mr. Slobotin's office had created a modified claims chart from the original created by Reg Suyat, which was later submitted without adequate explanation to Attorney for disclosure in the form of preliminary infringement contentions under the local patent rules of the Northern District Court of California. This led to an erroneous identification of the accused products components in the infringement contentions, which the Court refused to amend. These erroneous infringement contentions led to the granting of summary

SETTLEMENT AGREEMENT AND GENERAL RELEASE dated April 10, 2007.

to the prosecution of the case until formally associated as co counsel. Unknown to the parties herein at the time of the original contingent fee agreement, Mr. Slobotin's office had created a modified claims chart from the original created by Reg Suyat, which was later submitted without adequate explanation to Attorney for disclosure in the form of preliminary infringement contentions under the local patent rules of the Northern District Court of California. This led to an erroneous identification of the accused products components in the infringement contentions, which the Court refused to amend. These erroneous infringement contentions led to the granting of summary judgement against client. Mr. Slobotin's firm appealed the adverse judgement to the Federal Circuit Court of Appeal, but the judgment was affirmed. Client desires to petition for Certiorari to the United States Supreme Court. Petitioners' investors have refused to allow the cost retainer to be used for fees for such a petition. Attorney is willing to prepare the petition, originally estimated to cost $40,000 to $50,000, in exchange for this settlement and general release of any and all claims client may have against attorney arising from acts and/or omissions in the handling of clients' action. Client does not believe attorney is at fault, but recognizes that attorney's role in representing client may give rise to liability against attorney giving rise to a claim for damages for client against attorney. Client realizes that review of the case by expert witnesses may reveal acts and/or omissions on attorney's part that may be said to have proximately caused damage to client. None the less, client wishes to accept attorney's offer and settle any claims they have or may identify in the future in exchange for the services of attorney in preparing and causing to be filed a Petition for Certiorari to the U.S. Supreme Court.

Accordingly all claims arising from any and all representation in or concerning the above referenced proceedings, including any obligation of the Attorney, and any potential claim by Client against Attorney arising from said controversies, actions and claims, including but not limited to any and all claims for negligent performance by Attorney, any claim for acts and/or omissions, and any other action, controversy and/or claim able now or hereafter discovered by client are all hereinafter compromised by this settlement and release.

4. **FULL SETTLEMENT:** The parties desire to reach a full and final settlement and resolution of all past, present and future claims, controversies and disputes that clients have or may have against attorney including the claims of clients' predecessors, affiliates, subsidiaries, officers, directors, employees or agents, insurers or attorneys, trustees and representatives, successors, assigns, including but not limited to all claims in the Action, as against attorney an/or his predecessors, affiliates,

subsidiaries, officers, directors, employees or agents, insurers or attorneys, trustees and representatives, successors, assigns.

5.    NO ADMISSIONS: The allegations of the Action are disputed. This settlement and payment, are not to be construed as an admission by either party to the merits or truth, or lack thereof, of any allegations, or denials arising from, or contained in the action, or otherwise asserted by either party.

6.    STANDING AND AUTHORITY: The parties expressly represent and warrant that they have standing to dismiss any and all claims he/she/it has or may have against the other parties. The parties represent that they have all requisite authority to enter into this agreement, including all requisite corporate authority vested in those persons executing this agreement on behalf of a corporation or other entity. This agreement is final and binding. The persons executing hereunder indemnify and hold the others harmless for any breech of this warranty of authority.

7.    CONSIDERATION FOR SETTLEMENT: In consideration of this Agreement, Client agrees to accept as final payment, Attorney's services to prepare the petition, originally estimated to cost $40,000 to $50,000, in exchange for this settlement and general release of any and all claims client may have against attorney arising from acts and/or omissions in the handling of clients' action.

8. DISMISSALS AND OTHER INSTRUMENTS: The parties hereto hereby further covenant to execute all instruments including but not limited to, substitutions, pleadings, releases and/or other documents necessary to effectuate the settlement described herein, and the mutual releases herein. Clients expressly agree to support any motion later brought on behalf of attorney to have this settlement declared a good faith settlement by a court.

9. OWN ATTORNEYS FEES: Each of the parties agree to bear their own costs and attorneys fees and waive any statute, rule of court, provision or legal proposition which might otherwise be relied upon to obtain costs, fees or expenses in connection with the Action released herein, except for the settlement payment specifically described herein.

SETTLEMENT AGREEMENT AND GENERAL RELEASE dated April 10, 2007.

10.   RELEASE: The Clients hereby release and discharge attorney including attorney's present and former officers, directors, employees, attorneys, agents, insurers, parent companies, subsidiaries, predecessors, affiliates, and successors, assigns, trustees and /or representatives from any and all claims, liabilities or obligations of every kind and nature, whether now known or unknown., suspected or unsuspected, which client ever had, now has, or in the future might have, including but not limited to all claims arising out of or in connection with the Action.

11.   WAIVER OF SECTION 1542: The parties acknowledge the language of Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS/HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM/HER MUST HAVE MATERIALLY AFFECTED HIS/HER SETTLEMENT WITH THE CLIENT.

The client expressly waive the protection of Section 1542. The clients understand and agree that claims or facts in addition to or different from those which are now known or believed by them to exist may hereafter be discovered, but it is their intention to settle fully and release all of the claims that client now has against attorney and any of attorney's officers, directors, employees, attorneys, agents, insurers, parent companies, predecessors, affiliates, subsidiaries and successors, insurers assigns, trustees and /or representatives whether known or unknown, suspected or unsuspected.

12.   NO ASSIGNMENT OF CLAIMS: The parties promise that they have not assigned, transferred or conveyed to any person or entity any claim, demand, liability or obligation or cause of action released by this Agreement.

13.   BINDING ON HEIRS AND ASSIGNS: This Agreement shall inure to the benefit of and be binding upon the heirs, representatives, trustees, parents, marital communities, insurers, investors, successors and assigns, and to any party identified above, to the extent applicable, of each of the parties to it.

SETTLEMENT AGREEMENT AND GENERAL RELEASE dated April 10, 2007.

14.   ENFORCEMENT: Notwithstanding California Evidence Code § 1152 and other applicable law, this Agreement may be introduced into evidence to establish and enforce the settlement reached by the parties. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of California. In interpreting the language of this Agreement, both parties to the Agreement shall be treated as having drafted this Agreement after meaningful negotiations. This Agreement may be modified only in writing signed by all parties.

15.   CONFIDENTIAL NATURE OF AGREEMENT AND MUTUAL NON DISPARAGEMENT: This agreement is confidential and may not be disclosed by any party except by agreement of all of the parties, or in response to court ordered disclosure or process, or for purposes of obtaining an order of court dismissing attorney from an action, or approving this settlement as a good faith settlement. This paragraph 15, may be enforced by injunctive relief in addition to all other remedies.

16.   VENUE OF DISPUTE/ SURVIVABILITY: If there is any dispute over the terms or enforcement of or obligations under this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and/or costs incurred to enforce this Agreement. Any dispute over the terms of or obligations under this Agreement shall be resolved by the Superior Court of the State of California in and for the County of Santa Clara. If any provision of this Agreement is held to be invalid, void, or unenforceable, the remaining provisions shall remain in full force and effect.

17.   EXECUTED IN COUNTERPARTS: This Agreement may be executed in counterparts, and has the same force and effect as if all signatures were obtained in one document.

18.   WARRANTY BY PARTIES THAT THEY HAVE READ AGREEMENT: The parties acknowledges that they has read this entire Agreement, that their counsel has explained the Agreement to them, or they have voluntarily proceed without the advise of counsel, and that they understand the Agreement and each of the provisions of the Agreement. The parties acknowledge

SETTLEMENT AGREEMENT AND GENERAL RELEASE dated April 10, 2007.

that their consent to the terms of this Agreement is knowing and voluntary.

Dated: _____
Richard W. Berger

Dated: _____
Brant W. Berger

Dated: 4/10/07 _____
Douglas B. Allen d.b.a. Burnett, Burnett & Allen

SETTLEMENT AGREEMENT AND GENERAL RELEASE dated April 10, 2007.

6

Date __9/19/07__
Client ID __Berger 001__
Atty. to co __TTB, BUF, CA++, AAB,JMD__
Calender __C4__

## BURNETT, BURNETT, & ALLEN

### Trial Attorneys and Counselors at Law

DOUGLAS B. ALLEN

DAVID M. BURNETT (1870-1959)

JOHN M. BURNETT (1903-1981)

Hon. BRUCE F. ALLEN (1916-1986)

333 WEST SAN CARLOS ST., EIGHTH
FLOOR
SAN JOSE, CALIFORNIA 95110

FACSIMILE
(408) 298-0914

TELEPHONE
(408) 298-6540

## FACSIMILE COVER SHEET

### PLEASE DELIVER THIS TRANSMISSION IMMEDIATELY

Please telephone the sender if you do not receive or cannot clearly read any of the transmitted information.

**DATE:** September 19, 2007    **SENDER:** Douglas B. Allen

Telephone (408) 298-6540    Facsimile: (408) 298-0914    **TIME:** _____

**To:** Justin Beck    **Fax #:** 408-938-0790

**Regarding:** Berger v. Seyfarth Shaw et, al. 1-07-CV094074

**Document Title:** ltr to Mr. Justin Beck

**Number of Pages** (including this page): ___12___

| | | | |
|---|---|---|---|
| PER OUR CONVERSATION | _____ | ORIGINAL TO FOLLOW BY MAIL | X |
| REVIEW AND RESPOND | _____ | FOR YOUR INFORMATION | _____ |
| MESSAGE: | | | |

CONFIDENTIALITY NOTE

# EXHIBIT L

# BURNETT, BURNETT, & ALLEN

### Trial Attorneys and Counselors at Law

DOUGLAS B. ALLEN

333 WEST SAN CARLOS, 8TH FLOOR
SAN JOSE, CALIFORNIA 95110

DAVID M. BURNETT (1870-1959)

JOHN M. BURNETT (1903-1981)

Hon. BRUCE F. ALLEN (1916-1986)

TELEPHONE
(408) 298-6540

FACSIMILE
(408) 298-0914

21 September 2007

Richard Berger
2808 Ramada Drive, Unit 202
Paso Robles, CA 93446

Brant Berger
1171 San Andreas Road
La Selva Beach, CA 95076

     Re:    Berger v. Seyfarth Shaw LLP, et, al.; Superior Court Case Number
          1-07-CV094074

Gentlemen:

     Enclosed is a letter from your attorney, Justin Beck, received by my office today. Dick, although you have indicated that you do not want "sue" me, the service of the complaint clearly naming me and my firm name belies those statements. I had desired to forebear from defense of the case to give you time to reconsider the action, however, the letter of September 20, 2007, indicates that absent payment of compensation you are not in agreement to dismiss your claims. Accordingly, absent other direction from you, I intend to proceed with a defense of the action.

     Mr. Beck may be correct that the Supreme Court may act shortly on the pending "cert" petition. Awaiting that action, he is likewise correct that there is no act for me to perform on your behalf. Conducting business as attorney and client while conducting the defense of an action prosecuted by you through other attorneys is an inconsistent position and accordingly, I will assume that our attorney/client relationship has hereby ended in all respects except for the fact that I will continue to remain counsel of record with the Supreme Court until other arrangements are made. I will report to your attention appropriate matters with that court. Consistent with this position, other than to inquire directly about issues involving the Supreme Court, it would appropriate for us both to communicate further regarding any issue involving your case against me through your counsel Mr. Beck.

Letter to Richard Berger and Brant Berger
Re: Berger v. Seyfarth Shaw LLP, et, al.; Superior Court Case Number 1-07-CV094074
Page 2


    I proceed to defend this case with a profound since of sadness.  I would leave you with a request to reconsider the position that you have taken through your counsel.

           Yours truly,


           DOUGLAS B. ALLEN


DBA:erf

cc:   Justin Beck, Esq.