1  KEKER & VAN NEST, LLP
   ELLIOT R. PETERS - #158708
2  DANIEL PURCELL - #191424
   KLAUS HAMM - #224905
3  TRAVIS LEBLANC – *Pro Hac Vice*
   710 Sansome Street
4  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
5  Facsimile:  (415) 397-7188

6  Attorneys for Defendants
   SEYFARTH SHAW LLP and
7  JACK L. SLOBODIN

8

9              IN THE UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13  RICHARD W. BERGER and BRANT W. BERGER, | Case No. C07-05279 JSW |
| 14 | **REPLY IN SUPPORT OF DEFENDANTS** |
|                          Plaintiffs, | **SEYFARTH SHAW LLP AND JACK L.** |
| 15 | **SLOBODIN'S MOTIONS TO DISMISS** |
|      v. | **AND STRIKE PURSUANT TO RULE 12** |
| 16 | |
| 17  SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an | Date:      January 11, 2008 |
|     individual; BURNETT, BURNETT & | Time:     9:00 a.m. |
| 18  ALLEN, a California partnership; DOUGLAS | Place:     Courtroom 2, 17th Floor |
|     B. ALLEN, an individual; and DOES 1-100, | Judge:    Hon. Jeffrey S. White |
| 19  inclusive, | |
| | Date Comp. Filed:       September 12, 2007 |
| 20                       Defendants. | |
| | Trial Date:  None set. |
| 21 | |

22

23

24

25

26

27

28

407006.04

# I.    INTRODUCTION

Plaintiffs' opposition to the motions to dismiss and strike helps identify the myriad deficiencies in their complaint against Defendants Seyfarth Shaw LLP and Jack L. Slobodin (collectively "Seyfarth"). As their complaint details, Plaintiffs Richard and Brant Berger sought for years to bring a patent infringement action against Rossignol Ski Company. They spoke with multiple attorneys about the action. In 2003, they had one conversation with Seyfarth, but no patent action was initiated. Years later, in 2005, apparently unable to locate other counsel, the Bergers retained their real estate attorney to bring the patent action. The complaint alleges that almost immediately after the patent case began that attorney committed malpractice which was fatal to the case. Thereafter, Seyfarth appeared in the action and tried to undo the problem, unsuccessfully it turned out. Plaintiffs now sue Seyfarth claiming that it was responsible for the real estate attorney's alleged malpractice.

The Bergers seek to hold Seyfarth responsible for errors contained in the infringement contentions, which were filed by a different attorney at a time when Seyfarth had not been retained and, more explicitly, bore no legal duty for the quality of pleadings filed in federal court by the Bergers' real estate attorney. Constrained by this obvious legal impediment, the Bergers have failed to plead the basics of an attorney-client relationship with Seyfarth at the time of the alleged malpractice. They should be required to do so -- by alleging the time of the relationship's formation, as well as its nature and its scope. Seyfarth is entitled to know how it can be sued for malpractice based on a document filed by another attorney in a litigation in which it had neither appeared nor been retained.

The deficiencies in the Bergers' fraud allegations are so glaring that we address them first in our Argument section. Despite this Court's heightened pleading requirements for fraud, the Bergers' allegations are not only unspecific, they are nonsensical. Plaintiffs assert that in deciding to retain Seyfarth in either 2003 or 2005 (they apparently do not know when) they relied on Seyfarth's 2006 concealments of certain events. Only in Alice in Wonderland, or Catch-22, would such a "chronology" be possible. Equally absurd, Plaintiffs claim Seyfarth

1

REPLY IN SUPPORT OF DEFENDANTS SEYFARTH SHAW LLP AND JACK L. SLOBODIN'S MOTIONS TO DISMISS
AND STRIKE PURSUANT TO RULE 12
CASE NO. C07-05279 JSW

407006.04

1    defrauded them by concealing from the court Seyfarth's alleged early involvement in the *Berger*

2    *v. Rossignol* case, a purported fact peculiarly known to the plaintiffs, who allegedly attended

3    meetings with Seyfarth and now claim they believed Seyfarth was their counsel in 2003, or 2005.

4    It is simply not possible to defraud by concealment a party who pleads, and thereby concedes,

5    that they were aware of the facts allegedly concealed. Not surprisingly, given the fundamental

6    conceptual problems with their efforts to plead fraud, the Bergers' allegations also fail to satisfy

7    Fed. R. Civ. P. 9(b)'s particularity requirement.

8        Plaintiffs' fraud claim is tortured and nonsensical. It should be dismissed without leave,

9    or with leave conditioned on counsel's strict observance of the stricture of Fed. R. Civ. P. 11 in

10   attempting to replead. Plaintiffs' negligence and breach of duty claims should also be dismissed.

11   Plaintiffs' prayer for punitive damages should be stricken.

12                   **II.     ARGUMENT**

13   **A.     The complaint fails to state claims for fraud and negligent misrepresentation.**

14        **1.     The Bergers have not pled the essential elements of fraud and negligent**

15               **misrepresentation.**

16        "The elements of fraud are: (1) a misrepresentation (false representation, concealment, or

17   nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce

18   reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v.*

19   *Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Negligent misrepresentation is a species of fraud and

20   also requires a misrepresentation, justifiable reliance, and damage (although it does not require a

21   showing of willfulness). *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 n.4

22   (1995). The Bergers' claims for fraud and negligent misrepresentation fail to allege facts

23   sufficient to establish all of these elements. Most glaringly, they fail to plead the element of

24   justifiable reliance.[1]

25        In the opposition, the Bergers allege eight concealments, but they do not allege that

---

26   [1] The Bergers admit that the fraud and negligent misrepresentation claims rest on the same
factual allegations. *See* Opp. at 10. Given that the factual averments and the elements are
27   fundamentally the same for both claims, all the deficiencies in the complaint with respect to
fraud apply equally to negligent misrepresentation.

28

407006.04

1   Seyfarth concealed all these facts from the Bergers or that they justifiably relied upon them. The

2   eight alleged concealments are: (A) that defendants were not competent to represent them in

3   their lawsuit against Rossignol; (B) that the defendants would not communicate with each other;

4   (C) that Seyfarth prepared a claim chart that was incorporated into the infringement contentions;

5   (D-E) that defendants served defective infringement contentions; and (F-H) that defendants

6   "would conceal *from the District Court and Federal Circuit*" Seyfarth's early involvement in the

7   case, its preparation of a defective claim chart, and the reason why there were errors in the

8   infringement contentions. Compl. ¶¶ 57 (A-H), 62 (A-G) (emphasis added); Opp. at 8-9. The

9   Bergers plead that they "reasonably relied" upon these eight concealments "to their detriment. If

10   plaintiffs had known the true facts, plaintiffs *would not have permitted defendants to represent*

11   *them in their lawsuit against Rossignol.*" Compl. ¶¶ 58, 63 (emphasis added).

12          To the extent that the alleged concealments are even comprehensible, it is impossible for

13   the Bergers to have justifiably relied upon them. The Bergers could not have reasonably relied

14   upon these concealments when they supposedly asked Seyfarth to represent them in 2003

15   because the facts underlying the eight alleged concealments all occurred years later. Six of the

16   concealed facts concern the infringement contentions in *Berger v. Rossignol* and the facts

17   supporting the remaining two concealments also occurred after the Rossignol lawsuit was filed.

18   Together, the factual basis for all eight alleged concealments occurred well *after* 2003, the year

19   that the Bergers first allege that they asked Seyfarth to represent them. *See* Compl. ¶¶ 6, 14.

20   Although plaintiffs assert that they "relied" on the alleged concealments, their complaint

21   demonstrates that this is impossible.

22          Recognizing the fallacy with their own allegations, the Bergers attempt to reinvent their

23   reasonable reliance theory. For the first time, the Bergers now assert that they were "unaware"

24   of Seyfarth's concealments and that "had [they] been aware of the true facts they could have

25   terminated their attorney-client relationship with counsel and hired new counsel to represent

26   them." Opp. at 9. Not only is this allegation *not contained in the complaint*, it contradicts the

27   factual allegations that are in the complaint.

28

REPLY IN SUPPORT OF DEFENDANTS SEYFARTH SHAW LLP AND JACK L. SLOBODIN'S MOTIONS TO DISMISS
AND STRIKE PURSUANT TO RULE 12
CASE NO. C07-05279 JSW

407006.04

1    All the alleged concealments relate to Seyfarth's early role in the case up to the time that

2  the infringement contentions were served. This is the same timeframe that the Bergers maintain

3  that they reasonably believed that Seyfarth were their lawyers. Opp. at 5-8. It is inconceivable

4  that the Bergers reasonably believed that Seyfarth were their lawyers and that Seyfarth would

5  supervise Allen, but that they were at the same time "unaware" that Seyfarth had worked on the

6  claim chart, that Seyfarth had worked on the infringement contentions, and that Seyfarth had

7  worked on their case prior to the time the infringement contentions were served. The notion that

8  the Bergers did not know about Seyfarth's alleged work conflicts directly with their claim that

9  they believed any attorney-client relationship existed long before the *Rossignol* case was filed.

10    Furthermore, the Bergers' assertion in their opposition that if they had known the eight

11  concealed facts they would have terminated the attorney-client relationship with Seyfarth is

12  disingenuous. On February 21, 2006, Rossignol moved for summary judgment because the

13  infringement contentions confirmed that it had not infringed both patents. *See* Compl. ¶ 30. On

14  March 27, 2006, the Bergers moved for leave to amend their infringement contentions and they

15  filed an opposition to summary judgment in which they discussed the defects in the infringement

16  contentions. *See id.* ¶¶ 34-35. These defects were also argued at the April 14, 2006 district court

17  hearing on the motions. *See id.* ¶ 36. On April 25, 2006, the district court denied the motion to

18  amend the infringement contentions and granted summary judgment to Rossignol. In both orders,

19  Judge Breyer discussed the errors in the infringement contentions. *See id.* ¶¶ 38-39. As the

20  complaint details, it is quite apparent that throughout the spring of 2006, Judge Breyer and all the

21  attorneys in the case were discussing the errors in the infringement contentions. Yet, the Bergers

22  now contend that they were "unaware" of those errors and had they known about Seyfarth's role

23  in causing them, they would have terminated their attorney-client relationship. *See* Opp. at 9.

24    Not only is this argument inherently incredible, but the Bergers' own allegations spotlight

25  its absurdity. Even after Judge Breyer dismissed their case on noninfringement grounds, the

26  Bergers did not terminate their relationship with Seyfarth. Instead, they authorized Seyfarth to

27  represent them in the appeal. *See* Compl. ¶¶ 41-43. Not only do all the facts alleged by the

28

4

407006.04

1    Bergers indicate their awareness of the defects in the infringement contentions by mid-2006,

2    their own decision to authorize Seyfarth to represent them on appeal demonstrates that they had

3    no intention of terminating their attorney-client relationship with the firm.  Plaintiffs cannot

4    credibly claim that they justifiably relied upon any of the alleged concealments.  Accordingly,

5    the fraud and negligent misrepresentation claims should be dismissed.

6         **2.    The Bergers also have not pled fraud and negligent misrepresentation with
              particularity.**

7         The Bergers' fraud and negligent misrepresentation claims also should be dismissed

8    because they fail to state the circumstances constituting fraud or mistake with particularity.  *See*

9    Fed. R. Civ. P. 9(b).  These claims fail the particularity requirement for two reasons. *First*, the

10   complaint's factual allegations with respect to fraud and negligent misrepresentation fail to

11   differentiate between the various defendants. *See* Mot. to Dismiss at 11-12; Compl. ¶¶ 57-60,

12   62-64. Rule 9(b) "'require[s] plaintiffs to differentiate their allegations when suing more than

13   one defendant . . . and inform each defendant separately of the allegations surrounding his

14   alleged participation in the fraud.'"  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007)

15   (citation omitted).  That the fraud and negligent misrepresentation allegations do not distinguish

16   among the defendants is sufficient by itself to warrant dismissal.

17        *Second*, the complaint does not allege the "time, place, and specific content of the false

18   representations as well as the identities of the parties to the" alleged concealments or

19   misrepresentations. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation

20   omitted).  It is not sufficient for the complaint merely to identify the topic of the alleged

21   concealments. Plaintiffs must also plead facts that are "'evidentiary': time, place, persons,

22   statements made, explanation of why or how such statements are false or misleading." *In re*

23   *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (*en banc*).

24        In the complaint and the opposition, the Bergers merely identify the subject of the alleged

25   concealments. *See* Opp. at 9; Compl. ¶¶ 57, 62.  For example, they first allege that Seyfarth

26   "knowingly and recklessly concealed" that it "did not have the requisite degree of learning, skill,

27   diligence, and judgment to competently represent plaintiffs in their patent infringement lawsuit

28

5

407006.04

1 against Rossignol," and that it "would not maintain prompt, open, honest, and frank

2 communication amongst themselves so as to ensure competent representation of plaintiffs." *Id*. ¶

3 57(A-B).  On its face, these allegations are legal conclusions, not facts.  But assuming that these

4 allegations constitute "facts," these are precisely the kind of conclusory allegations that the

5 heightened pleading requirement for fraud condemns.  Nowhere in the complaint do the Bergers

6 allege the specific manner in which Seyfarth concealed their degree of learning, skill, diligence,

7 or competence in litigating patent cases, nor do they allege when any such concealment was

8 made, or to whom it was made.

9        For the same reasons, the Bergers' allegations that defendants concealed that Seyfarth

10 prepared a claim chart in the *Rossignol* case and that defendants served the alleged defective

11 infringement contentions also fail.  *See* Compl. ¶ 57 (C-E).  These conclusory allegations do not

12 identify any specific misrepresentation or omission.  Again, plaintiffs do not identify the person

13 who concealed from them Seyfarth's role in the preparation and serving of the infringement

14 contentions, by what means he or she concealed these facts, or when these facts were concealed.

15 In short, these concealments fail to indicate how, when, where, to whom, and by what means

16 Seyfarth concealed that it had worked on the claims chart and served the infringement

17 contentions in the *Rossignol* case.

18        Finally, the Bergers allege that defendants concealed that they "would conceal from the

19 District Court and Federal Circuit" Seyfarth's early involvement in the case, its preparation of a

20 defective claim chart, and the reason why there were errors in the infringement contentions.  *See*

21 Compl. ¶ 57 (F-H).  These alleged misrepresentations concern concealments that defendants

22 "*would*" make or "*intended*" to make to *third parties* in connection with *Berger v. Rossignol*.

23 *See, e.g.*, Compl. ¶¶ 57(D-H).  Nowhere in the complaint do the Bergers explain how a

24 concealment to a *third party* amounts to a fraud on *plaintiffs*.  They also do not allege that they

25 were unaware of these concealments.  Nor do the Bergers allege the name of any person who

26 "knowingly or recklessly concealed" that defendants "would conceal" the purported facts; nor do

27 they identify when, to whom, or by what means such representation or concealment was made.

28

REPLY IN SUPPORT OF DEFENDANTS SEYFARTH SHAW LLP AND JACK L. SLOBODIN'S MOTIONS TO DISMISS
AND STRIKE PURSUANT TO RULE 12
CASE NO. C07-05279 JSW

407006.04

On the whole, the complaint simply fails to show how, when, where, to whom, and by what means the alleged material facts were concealed. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). The fraud and misrepresentation claims must therefore fail because all they provide are broad-brush, conclusory allegations that do not meet Rule 9(b)'s particularity requirement.

**B.    The Bergers have not alleged facts sufficient to establish the existence and scope of an implied contract for legal representation.**

The professional negligence, breach of contract, and breach of fiduciary duty claims are all based on the existence and scope of the attorney-client relationship between Seyfarth and the Bergers. These claims should be dismissed for two reasons. *First*, when the factual averments in the complaint are considered together, they fail to establish that the Bergers have cognizable legal claims against Seyfarth for professional negligence, breach of contract, and breach of fiduciary duty. *See* Mot. to Dismiss at 6-7. *Second*, the factual allegations supporting the malpractice and breach claims fail to comply with Rule 8(a)'s requirement that plaintiffs make a plausible showing of their entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (2007); Mot. to Dismiss at 7-8.

The Bergers do not dispute that an attorney-client relationship *must* arise from a contract, nor do they contend that they had an express contract with Seyfarth. The Bergers' entire assertion that they had an attorney-client relationship at the time of the alleged breach is limited to their belief that they had at least one implied-in-fact contract with Seyfarth. *See* Opp. at 5-8. This misses the point. Irrespective of whether the contracts alleged in the complaint are implied or expressed, the Bergers have failed to allege facts which are sufficient to establish the existence *and* the scope of an attorney-client relationship such that it could be determined from the complaint's allegations that Seyfarth committed malpractice, breached any contract with the Bergers, or breached a fiduciary duty that Seyfarth owed them.

It is elementary that for the Bergers to state a malpractice or breach claim against Seyfarth, they must establish that Seyfarth attorneys were their lawyers at the time that the

407006.04

1  malpractice or breach occurred.  It therefore matters whether Seyfarth impliedly led plaintiffs to

2  believe that they would represent them in March 2006 or in 2003.  The complaint does not allege

3  that Seyfarth did any work on the Bergers' case for approximately two years between 2003 and

4  2005.  Was the attorney-client relationship terminated between 2003 and 2005, or had it never

5  actually formed in 2003?  Not only is the complaint vague about when Seyfarth became the

6  Bergers' lawyers, but the opposition furthers that obscurity.  The Bergers now state that the

7  attorney-client relationship "beg[an] as early as 2003, and in any event, beginning no later than

8  November 2005." Opp. at 7.  This is a two-and-a-half-year period!  The Bergers apparently have

9  no idea when the attorney-client relationship began, whether it was continuous, or what the scope

10  of that representation was.  Without this information, it is impossible to determine from the

11  complaint whether Seyfarth actually breached any duty.

12        Moreover, the opposition offers no clarification as to whether the Bergers had one

13  contract with Seyfarth or they had multiple "applicable contracts." Compl. ¶ 54; *see also* Mot. to

14  Dismiss at 7.  Was there one contract in 2003 and another in 2005?  What were the terms of each

15  contract?  Which of those contracts are the Bergers alleging that Seyfarth breached?  It simply is

16  not sufficient for the Bergers to allege that they had multiple contracts with Seyfarth and then for

17  them not to identify the terms of those contracts, which of those contracts was breached, and

18  when those contracts were formed or terminated. Seyfarth cannot reasonably be expected to

19  prepare a breach of contract or breach of fiduciary duty defense when it has no idea what alleged

20  contracts are at issue, what each applicable contract provides, and what Seyfarth allegedly did to

21  breach the provisions of those contracts.

22        In their opposition, the Bergers contend that "[a]pplication of the *Lister [v. State Bar*, 51

23  Cal. 3d 1117 (1990),] factors supports a finding of an 'implied-in-fact' attorney-client

24  relationship between the Bergers and Seyfarth." Opp. at 7.  However, unlike in *Lister*, the

25  Bergers did not ask Seyfarth to file the lawsuit against Rossignol.  Instead, the Bergers retained

26  their real estate attorney "to initiate the patent infringement action against Rossignol." Opp. at 2.

27  Also, unlike in *Lister*, the Bergers have not alleged that they gave Seyfarth all relevant

28

8

407006.04

1   documents, nor have they alleged that they ever understood that Seyfarth would file an action

2   against Rossignol. In fact, the only similarity between this case and *Lister* is that the clients in

3   both cases never actually paid for any legal services that they purportedly received. *Lister* stands

4   only for the proposition that a fee arrangement is not critical to the formation of an attorney-

5   client relationship. *See Lister*, 51 Cal. 3d at 1126. But, here, the Bergers have not only failed to

6   allege any kind of fee arrangement, they have also failed to allege that Seyfarth did anything

7   more than have two conversations with them – that is, until Rossignol sought summary judgment

8   and it became apparent that Allen's infringement contentions were deficient. In sum, the Bergers

9   have not alleged sufficient facts to support a reasonable belief that Seyfarth were their attorneys.

10      In *Bell Atlantic Corp.*, the Supreme Court recently held that for a claim to survive a

11  motion to dismiss, the facts supporting that claim must demonstrate more than the mere

12  possibility that a plaintiff is entitled to relief. *See Bell Atl. Corp.*, 127 S. Ct. at 1965 ("Factual

13  allegations must be enough to raise a right to relief above the speculative level . . . ."). The Court

14  explained that a complaint must have enough factual matter "to raise a *reasonable expectation*

15  that discovery will reveal evidence" that the plaintiff is entitled to relief. *Id.* (emphasis added).

16  That is, the plaintiff's entitlement to relief must be *plausible*. *Id.* at 1965-66. "The need at the

17  pleading stage for allegations plausibly suggesting (not merely consistent with) [plaintiff's right

18  to relief] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess

19  enough heft to 'show that the pleader is entitled to relief.'" *Id.* at 1966.

20      The complaint alleges that in 2003 the Bergers "spoke" with Seyfarth. Compl. ¶ 14.

21  Plaintiffs do not allege that Seyfarth offered to represent them in 2003, that Seyfarth agreed to

22  file a patent infringement case against Rossignol, or that Seyfarth had any further communication

23  with the Bergers in 2003 or 2004. It is telling that the Bergers do not allege that they received

24  even one phone call, letter, or email from Seyfarth in the entire year of 2004, nor do the Bergers

25  allege that Seyfarth had any contact with them or their real estate attorney until late 2005. In

26  2005, just as in 2003, the plaintiffs again had only one conversation with Seyfarth. It is on the

27  basis of two conversations that occurred two and a half years apart that the Bergers conclude that

28

9

407006.04

1   Seyfarth led them "to reasonably believe that they were acting as the Bergers' counsel." Opp. at

2   7. This is not *plausible*. While the factual averments in the complaint may give reason to

3   conclude that Seyfarth *considered* taking on the Bergers' case in 2003 and maybe even again in

4   2005, they simply do not by themselves give rise to a reasonable expectation that the Bergers had

5   an attorney-client relationship with Seyfarth for that entire time period, or at the time of any

6   alleged malpractice or breach in 2006. The malpractice and breach claims must be dismissed.

7   **C.      The Bergers are not entitled to punitive damages.**

8          The Bergers' request for punitive damages should be stricken from the complaint because

9   they have not sufficiently pled facts against Seyfarth showing fraud, malice, or oppression. *See*

10  Mot. to Strike at 2-4. Plaintiffs do not allege any fraudulent conduct in their complaint, nor do

11  they allege *facts* (as opposed to legal conclusions) that Seyfarth's conduct was malicious or

12  oppressive. The only basis that the Bergers assert in the complaint for their entitlement to an

13  award of punitive damages is the bare legal conclusion that Seyfarth's conduct was "fraudulent,

14  malicious, and oppressive." Compl. ¶¶ 60 & 71. Under *Bell Atlantic Corp.*, this naked legal

15  conclusion and "formulaic recitation" of California Civil Code § 3294[2] cannot meet the pleading

16  requirements of Rule 8(a). 127 S. Ct. at 1965.

17         Apart from relying on their general defense of the fraud claims, the only explanation the

18  Bergers offer in the opposition for their entitlement to punitive damages is that Seyfarth "had a

19  duty to zealously advocate the Bergers' interests," but "intentionally chose not to do that." Opp.

20  at 11. At best, this averment demonstrates only that Seyfarth's action was willful, which is not a

21  basis for punitive damages under California Civil Code § 3294. *See* Mot. to Strike at 3.

22         As explained above and in the motion to dismiss, the Bergers have not alleged any

23  fraudulent conduct in their complaint, nor have they alleged conduct from which fraud, malice,

24  or oppression could be plausibly inferred. The Bergers' requests for an award of punitive

25  damages should be stricken from the complaint. *See* Fed. R. Civ. P. 12(f).

26

27  [2] Civil Code § 3294 provides for punitive damages where "the defendant has been guilty of
28  oppression, fraud, or malice."

REPLY IN SUPPORT OF DEFENDANTS SEYFARTH SHAW LLP AND JACK L. SLOBODIN'S MOTIONS TO DISMISS
AND STRIKE PURSUANT TO RULE 12
CASE NO. C07-05279 JSW

407006.04

1

### III.   CONCLUSION

2     For the foregoing reasons, Seyfarth respectfully requests that the Court grant its motions

3     to dismiss and strike.

4

5     Dated:  November 29, 2007                         KEKER & VAN NEST, LLP

6

7

8                                     By: /s/ Elliot R. Peters
                                          ELLIOT R. PETERS
9                                         Attorneys for Defendants
                                          SEYFARTH SHAW LLP AND JACK L.
10                                        SLOBODIN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

407006.04

**CERTIFICATE OF SERVICE**

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On November 29, 2007, I served the following document(s):

**REPLY IN SUPPORT OF DEFENDANTS SEYFARTH SHAW LLP AND JACK L. SLOBODIN'S MOTIONS TO DISMISS AND STRIKE PURSUANT TO RULE 12**

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Attorneys for Plaintiffs RICHARD W. BERGER and BRANT W. BERGER

Justin T. Beck, Esq.
Ron C. Finley, Esq.
Alfredo A. Bismonte, Esq.
Craig Alan Hansen, Esq.
Jeremy M. Duggan, Esq.
Beck, Ross, Bismonte & Finley, LLP
50 W. San Fernando Street, Suite 1300
San Jose, CA 95113
Tel.:    (408) 938-7900
Fax:    (408) 938-0790
Email: jbeck@beckross.com
Email: rfinley@beckross.com
Email: abismonte@beckross.com
Email: chansen@beckross.com
Email: jduggan@beckross.com

Appearing *In Pro Per*

Douglas B. Allen
Burnett, Burnett & Allen
333 West San Carlos Street, 8th Floor
San Jose, CA 95110
Tel.:    (408) 298-6540
Fax.:    (408) 298-0914
burnettburnettallen@yahoo.com

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on November 29, 2007, at San Francisco, California.

_Lauren Hartz-Lewis_
Lauren Hartz-Lewis

i

407006.04