DOUGLAS B. ALLEN, SBN 99239
BURNETT, BURNETT, & ALLEN
333 WEST SAN CARLOS ST.
EIGHTH FLOOR
SAN JOSE, CALIFORNIA 95110
(408) 298-6540

Attorneys for DOUGLAS B. ALLEN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD W. BERGER AND BRANT W. BERGER,<br><br>　　　　　　　　　Plaintiff,<br>vs.<br><br>SEYFARTH SHAW LLP, and Illinois limited liability partnership; JACK L. SLOBODIN, an individual; DOUGLAS B. ALLEN dba BURNETT, BURNETT & ALLEN; and Does 1-100, inclusive;<br>　　　　　　　　　Defendants.<br>_____/ | Case No. C07-05279 JSW<br><br>DEFENDANT DOUGLAS B. ALLEN dba BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)<br><br>Date: January 11, 2007<br>Time: 9:00 a.m.<br>Place: Courtroom 2, 17th Floor<br>Before: The Honorable Judge Jeffrey S. White |

INTRODUCTION AND SUMMARY OF ARGUMENT

　　　Plaintiffs have sued the defendants over the use of a claims chart and memorandum drafted in 2003 by Seyfarth Shaw. This is the claims chart disclosed in the preliminary infringement contentions and the memorandum upon which the undersigned relied in not making claims against the patent known as the 569 patent. Plaintiffs knew or were at least placed on inquiry as to the existence of these memoranda in 2003 when Seyfarth Shaw failed to return the original of the claims chart prepared by Reginald Suyat, their patent prosecutor, and failed to return the offending Rossignol binding both given to Seyfarth Shaw for analysis. These facts are in the face of complaint, paragraphs 15 through 18. In their response to the Rule 12 motion, however, plaintiffs have utterly

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN dba BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)　　1

1  failed to explain why the statute of limitations does not run from this first act, which by the face of
2  the complaint, originally caused injury to plaintiffs.
3         In March of 2005, plaintiffs retained the undersigned to act as counsel of record assuring the
4  undersigned that the case would be funded to allow the participation of Jack Slobodin to assist in the
5  prosecution of the case, the same attorney consulted in 2003 whose firm's opinion plaintiffs now
6  claim was malpractice. Plaintiffs and their investors approached the undersigned in desperation
7  because of the inability to retain counsel who would prosecute the case.
8         The undersigned had been plaintiffs' attorney on numerous matters since 1989. An
9  integrated written memorandum regarding the representation was entered into between plaintiffs and
10 the undersigned on March 9, 2005, which retained the undersigned exclusively for representation in
11 the trial court. When the case was lost in April of 2006, the undersigned continued to assist the
12 plaintiffs in filing a motion pursuant to Rule 60(b). Plaintiffs, however, disregarded the undersign's
13 advice as to disclosures to be made to the trial court regarding plaintiff's history and the claims
14 construction disclosures and instead, knowingly went ahead with the Seyfarth Shaw firms advise.
15 This was the practical end to the work of the undersigned upon the specific matter of the patent
16 litigation.
17        Once the case was complete in the trial court, the undersigned, who is not admitted to the
18 Federal Circuit Court of Appeals, did not participate in the appeal, but only continued to manage the
19 trust funds for plaintiffs. The undersigned entered into a separate agreement for retention into the
20 United States Supreme Court and did perform under that agreement even though plaintiffs reneged
21 on their consideration.
22        The undersigned filed a motion pursuant to Rule 12 pointing out that the complaint does
23 concede that the original malpractice occurred in 2003 and that plaintiffs were notified of at least
24 some of the negligent acts of Seyfarth Shaw and Jack Slobodin and that the face of the complaint
25 does not articulate sufficient facts to determine when plaintiffs' retention of the undersigned ended
26 for purposes of calculating the statute of limitations.
27        In argument, plaintiffs address two facts that gave context to the undersign's Rule 12 motion
28 followed by the statement that,

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)   2

"although these latter facts are not properly taken from the face of the complaint, the face of the complaint indicates itself that representation on appeal was conducted by Jack Slobodin and Seyfarth, not defendant Allen."

Because of this argument, plaintiffs contend that they are entitled to file a cross-motion under Rule 56. Plaintiffs have failed and refused to cooperate in discovery to date even in the trial court. There have been no preliminary disclosures, no depositions, and plaintiffs have all of the case files. Should the Court be inclined to consider a ruling against the undersigned, the undersigned should be entitled to a continuance of the Rule 56 motion to allow the development of additional discovery.

A far more detailed, but very insightful recitation of the facts is contained in the DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S Declaration in Opposition to Rule 56 Cross Motion of Plaintiffs.

### THIS CASE REVOLVES AROUND THE CLAIMS CHART AND A MEMORANDUM WRITTEN BY J. TERRY STRATMAN, A SEYFARTH SHAW ATTORNEY ON OR ABOUT DECEMBER 22, 2003

As set forth in the complaint the primary allegation of malpractice in this case is that the claims chart and memorandum of J. Terry Stratman caused plaintiffs to make no contentions regarding the '569 patent and incorrectly characterized the Rossignol base plate that rotated relative to the snow board (item 4 on the chart), as part of the "lower attachment" instead of being an integral part of the coupling (Complaint paragraphs 25 through 27). These documents, however, were created by Sayfarth in early 2003, when the first prejudicial acts of defendants were alleged to have occurred (paragraph 17 of the complaint). Plaintiffs have utterly failed to address why the statute under California Code of Civil Procedure 340.6 should not commence from this creation of the alleged malpractice.

### THE CLAIMS CHART OF MR. STRATMAN (i.e. SEYFARTH SHAW CLAIMS CHART OF 2003) CORRECTLY DESCRIBED THE RELATIONSHIP OF THE BERGER BINDING WITH THE ROSSIGNOL BINDING

The Berger binding did not patent a rotating snowboard binding, but rather a particular version thereof. The Berger binding had to be distinguished from the prior art, which was dislosed in the patent, in order for the patent to issue. In Rossignol's motion for summary judgment, they disclose several bindings that rotated (Defendant requests that the Court take judicial notice of the

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)   3

underlying case file, specifically the motion for summary judgment).[1]  Those bindings, such as the AITEC, found at page 20 of Rosignol's points and authorities, and the Scott binding, found at page 20 and 21, reveal bindings that rotate.  The Alden binding at page 22 rotates, but with a requirement of loosening the screws, but the Metzger binding rotates with the mere lifting of position pegs.  Each of these designs have an attachment to the boot, and then an intermediate base plate that rotates relative to the board.

The difference between these bindings and the Berger binding is that the Berger binding, as described in the patent itself, incorporated the whole upper attachment into the boot, and with no intermediate base plate, it rotated relative to the lower attachment.  Claim 1 indicates "a binding comprising a boot comprising an upper attachment."  View of the diagram of the Berger binding on the face of the patent and in the diagram at page 3 of the points and authorities of Rosignol, when compared to this prior art, demonstrates that the integrated upper attachment brought something unique to the snowboard industry.  The lower attachment, as described in the patent, is merely a plate that constitutes the "lower attachment connectable to a board".  Because of this design, the boot was able to be mounted flush to the board and the heel and toe providing control for the rider.  There was no intermediate plate or device that allowed for the rotation.  Instead the integrated coupling itself allowed the rotation.

The Rossignol binding, however, had such an intermediate plate.  The view of the Rossignol binding reveals, that like the AITEC, the Scott, and the Medsker, that the boot had to be clamped down on an upper plate that rotated relative to the disk attached to the board.  It was because of this elimination of the requirement of an intermediate step that the Berger patent was able to be approved by the U.S. Patent office.  It was not because it was unique to the principle of rotation, but because Berger had been able to eliminate the base plate, which by its nature, made the Berger binding a narrowly designed patent.  If the Berger patent had been more broadly written, it would have been invalid due to the existence of prior art.

---

1. The document "*Rossignol's Motion for Summary Judgment of Unenforceability (Due to Equitable Estoppel), Noninfringement and/or Invalidity*" filed in case number 3:05-CV-02523-CRB, is docket #31.

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)    4

It is this intermediate plate which became the bone of contention in the case below. The intermediate plate was properly disclosed in the Seyfarth Shaw claim chart as part of the lower attachment indicating Item 4 was part of the lower attachment (all the infringement contentions identified the intermediate base plate of the Rossignol binding as item 4) . This of course placed the Rossignol binding into the class with a prior art, not in a class with the Berger binding and thus precluded infringement. It nonetheless was an honest interpretation of the Rossignol binding.

Mr. Slobodin attempted to recharacterize this intermediate component as part of the coupler and coupling mount. This was a necessary characterization in order to get by the motion for summary judgment, but it was not sincere. As obviously demonstrated by the photograph of the Rossignol binding, the coupler and coupling mount on the Rossignol binding is the rod 6a and 6b, which are connectable to the clamps at 7a and 7b. Item 4 is surperfolous to the coupling and only serves to facilitate rotation. Each of the prior art also had a coupling mechanism to secure the boot, but that was on top of a base plate that facilitated rotation. In order to achieve rotation, the Rossignol binding incorporated the intermediate step that all of the prior art had incorporated but was eliminated in the Berger binding. Thus, it was not truly error to have referred to the base of the Rossignol binding as part of the lower attachment, but was rather an honest statement of the components of the Rossignol binding. It is undoubtably for this reason that the Court indicated that it appeared that the disclosure of that plate as part of the lower attachment was an intentional act, not a negligent one. The deception attempted to be made to the Court was the artful and very creative argument developed by Mr. Slobodin and Mr. Suyat that the base plate on the Rossignol binding was an integral part of the coupler and coupling mount, and necessary to that was the claim that it was a mistake, not intention that led to the alternate characterization in the initial disclosure.

This analysis focuses the issue of this entire case as well as the underlying case on the characterization of the Rossignol base plate. That characterization was done in December of 2003. If the Bergers considered that characterization to be improper, then bringing an action against Seyfarth Shaw for the improper characterization within a year of the creation of the claims chart and memo would have resolved the issue. At the same time the memo was created, Seyfarth Shaw failed or refused to return the Rossignol binding provided by Reg Suyat. The complaint reiterates these

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)    5

facts and indicates that it materially prejudiced the plaintiffs. Plaintiffs were placed on notice at that time to take action with regard to Seyfarth Shaw's analysis of the case and knew that they had an issue with regard to the develop of a claims chart of infringement contentions regarding the Rossignol binding.

Had plaintiffs inquired more thoroughly into the Sayfarth Shaw opinions developed in 2003, they would have discovered that either they needed to change counsel, cause Sayfarth to change its opinion, or refrain from suing Rossignol. In any event, being diligent in resolving the failures of 2003 would have prevented the so called malpractice in 2006. These facts are evident from the face of the complaint and judicial notice of the record in *Berger v. Rossignol Ski Company, Inc*, Case no. 3:05-CV-02523-CRB.

### THE STATUTE OF LIMITATIONS HAS RUN SUBSEQUENT TO THE ENTRY OF JUDGMENT

The complaint does not articulate well when the undersigned was still representing the plaintiffs regarding the specific subject matter in which the alleged wrongful act or omission occurred (California Code of Civil Procedure 340.6 [a][2]). Plaintiffs and defendants have an integrated agreement that cannot be contradicted as a matter of law by extrinsic evidence (Code of Civil Procedure section 1856; *Brawthen v. H & R Block, Inc*. (1972) 28 C. A. 3d 131). That integrated agreement indicates the representation ends at the entry of judgment. Plaintiffs never entered into another fee contract with the undersigned, and although the undersigned provided complementary services while still before the trial court on the Rule 60(b) motion, the undersigned did not handle the appeal. There is no evidence that the undersigned, in fact, undertook the appeal or any part thereof.

The undersigned did continue to hold the trust funds for the plaintiffs and communicated with plaintiffs on those and other extraneous issues, including a family law issue of Brant Berger and the holding of trust funds from Mr. Branton and his investors. The letters describing the latter relationship with Mr. Berger and Brant Berger, as opposed to John Branton, are clearly addressing the issue of holding the money, not the handling the substantive issues on the patent litigation. Withdrawal from representation does not require a formal withdrawal, but may be based upon acts

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)   6

1  inconsistent, such as retaining new counsel [see: *Hensley v. Caietti* (1993) 13 Cal. App. 4th 1165;
2  *Shapero v. Fliegel* (1987) 191 Cal. App. 3rd 842]. Infrequent communication does not constitute a
3  continuing representation sufficient to toll the malpractice claim, but rather there is a requirement of
4  "clear indicia of an ongoing, continuous, developing and dependent relationship between the client
5  and the attorney" (*Shapero v. Fliegel* at pg 848). For instance in *Gailing v. Rose Klein and Marias*
6  (1996) 43 Cal. App. 4th 1570, continuous representation involving the same set of facts but with a
7  technical change in the client was not sufficient to toll the statute of limitations.

8      Review of all of the billing statements included by the plaintiffs in the declaration of Mr.
9  Berger indicate that even extending the attorney/client relationship to the last entry on the billing
10 statements, that entry was more than a year and a month prior to the filing of the complaint. The
11 subsequent entry into a new attorney/client relationship to handle the Supreme Court action is
12 evidence that there wasn't and interim relationship as opposed to the contrary.

13     The statutory language of California Code of Civil Procedure 340.6 [a][2] is plain and clear
14 when it states that the requirement for tolling is that "the attorney continues to represent the plaintiff
15 regarding the **specific subject matter** in which the wrongful act or omission occurred" (emphasis
16 added). The handling of trust funds is not the specific subject matter of litigating the patent claim.
17 Nor is the handling of domestic issues between Mr. Berger and his wife, between Brant Berger and
18 his ex-wife, or a plethora or other issues in which the undersigned represented the Begers over many
19 years. The retention on the patent litigation had expired and no additional gratuitous services were
20 performed during the appeal. Thus, the statute of limitations ran.

21     <u>THERE IS NOT FRAUD CAUSE OF ACTION PROPERLY PLEAD</u>

22     The pleading of fraud claims is required to be specific. The fraud alleged in the complaint is
23 claimed to be misleading statements to the Court, not to the plaintiffs. The litany of vague
24 allegations set forth in the complaint do not articulate when such representations were allegedly
25 made by the defendants, under what circumstances, and why reliance on such representation would
26 be reasonable. For instance, the complaint indicates that the undersigned had never handled patent
27 litigation before but was real estate attorney. Yet plaintiffs, inconsistently claim that the undersigned
28 made representations regarding handing the patent litigation and conversing with the attorney that

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)  7

plaintiffs promised to timely hire.  A state law claim for fraud must be specifically plead and the general pleading requirements of noticed pleading do not apply [see: *Scafidi v. Western Loan and Building Company* (1946) 72 Cal. App. 2nd 550, 558; *Tarmann v. State Farm Mutual Auto Insurance Company* (1991) 2 Cal. App. 4th 153, 157; *Doldrich v. Natural Y Surgical Specialties* (1994) 25 Cal. App. 4th 772, 782].  Proper specific factual allegations are required, even in circumstances of fiduciary relationships [see: *Tyler v. Children's Homes Society* (1994) 29 Cal. App. 4th 511, 548].  Clearly, the plaintiffs were utilizing the undersigned to handle their action cheaply and to initiate an action in hopes of obtaining representation by Mr. Slobodin's firm.  The undersigned relied exclusively on Mr. Slobodin in the disclosures.  If plaintiffs claim that the undersigned made specific misrepresentations, then they should be required to state when they were made, in exactly what context, and why there was reasonable reliance on their part.

## THE COURT SHOULD NOT GRANT PLAINTIFFS' RULE 56 MOTION WITHOUT FIRST GRANTING DEFENDANT'S MOTION UNDER RULE 56 (f)

There has been no discovery whatsoever in this case.  Plaintiffs have made no initial disclosures.  Plaintiffs have resisted defendants deposition notices in the state court and continue to resist setting depositions in the federal court claiming that the notices and subpoenas are premature due to the failure to have a Rule 26(f) conference.  Because of an illusion in argument as opposed to the presentation of a factual case, the plaintiffs seek to summarily adjudicate without proper notice by cross-motion the undersign's competent defense of statute of limitations.  The Court should not consider granting the cross-motion without first affording defendant the opportunity for reasonable discovery.

DATED: November 29, 2007                    RESPECTFULLY SUBMITTED,

/S/ DOUGLAS B. ALLEN

DOUGLAS B. ALLEN
Attorney for Defendant

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DISMISS UNDER RULE 12 AND, OPPOSITION TO PLAINTIFFS CROSS-MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT ALLEN REGARDING STATUTE OF LIMITATIONS, MOTION PURSUANT TO RULE 56(F)       8