1  DOUGLAS B. ALLEN, SBN 99239
   BURNETT, BURNETT, & ALLEN
2  333 WEST SAN CARLOS ST.
   EIGHTH FLOOR
3  SAN JOSE, CALIFORNIA 95110
   (408) 298-6540

4

5  Attorneys for DOUGLAS B. ALLEN

6

7

8                    UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

9

10 RICHARD W. BERGER AND BRANT W.          Case No. C07-05279 JSW
   BERGER,

11
                        Plaintiff,          DEFENDANT DOUGLAS B. ALLEN dba
12                                          BURNETT, BURNETT & ALLEN'S DECLARATION
   vs.                                      IN OPPOSITION TO RULE 56 CROSS MOTION
13                                          OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S
   SEYFARTH SHAW LLP, and Illinois limited  RULE 56 (f) MOTION
14 liability partnership; JACK L. SLOBODIN, an
   individual; DOUGLAS B. ALLEN dba         Date: January 11, 2007
15 BURNETT, BURNETT & ALLEN; and Does       Time: 9:00 a.m.
   1-100, inclusive;                        Place: Courtroom 2, 17th Floor
16                      Defendants.          Before: The Honorable Judge Jeffrey S. White
   _____/

17

18         I, Douglas B. Allen, declare as follows:

19         1. I am an attorney licenced to practice law in the state of California, with my offices located

20 at the above address. I am the defendant herein, and am competent to testify to the following of my

21 own knowledge.

22         2. All of the hard copy client files in the underlying case were turned over to plaintiffs' agent

23 John Branton at plaintiffs' request prior to the filing of this action originally in state court. Exhibits

24 attached hereto are from "soft" copy, i.e. electronically stored information from the firm's computers

25 and in the case of pleadings from the related case out of which the malpractice action arose, *Berger

26 v.Rossignol Ski Company Inc*. Case No. 3:05-CV-o2523-CRB, from the Pacer docket record. Each of

27 the copies attached hereto are true and correct copies of the original. There has been no discovery

28 whatsoever in this case.  Plaintiffs have made no initial disclosures.  Plaintiffs have resisted

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF
PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

1

1  defendants deposition notices in the state court and continue to resist setting depositions in the

2  federal court claiming that the notices and subpoenas are premature due to the failure to have a Rule

3  26(f) conference.

4      3. Attached as exhibit A is a true and correct copy of the "Engagement Memorandum

5  (Litigation)" dated March 9, 2005. The original memorandum was executed by the parties on the

6  signature page, page 5, at or about the date of the memorandum.

7      4. Attached as exhibit B is a true and correct copy of the "Engagement Memorandum

8  (Regarding cost contributions)" dated May 31, 2005. This memorandum was never executed.

9      5. Attached as exhibit C is a true and correct copy of my letter to John Branton, dated 8

10  August 2005.

11      6. Attached as exhibit D is a true and correct copy of my letter to plaintiffs dated 14

12  September 2005.

13      7. Attached as exhibit E is a true and correct copy of my letter to Plaintiffs, John Branton,

14  and his counsel Fred DeKlotz, dated 21 September 2005.

15      8. Attached as exhibit F is a true and correct copy of my letter to plaintiffs dated 4 November

16  2005.

17      9. Attached as exhibit G is a true and correct copy of my letter to plaintiff and John Branton

18  dated 7 November 2005.

19      10. Attached as exhibit H is a true and correct copy of my letter to plaintiff and John Branton

20  dated 22 November 2005.

21      11. Attached as exhibit I is a true and correct copy of my letter to Jack Slobodin, copied to

22  plaintiffs and the patent prosecutor, Reginald Suyat, dated 16 December 2005.

23      12. Attached as exhibit J is a true and correct copy of my letter to Jack Slobodin, copied to

24  plaintiffs, dated 5 June 2006.

25      13. Defendant requests that this Court take judicial notice of "*Rossignol's Motion for

26  *Summary Judgment of Unenforceability (Due to Equitable Estoppel), Noninfringement and/or*

27  *Invalidity*" filed in case number 3:05-CV-02523-CRB. Attached thereto as Exhibit 1, is the Berger

28

BURNETT, BURNETT & ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

2

1   Patent "530", and as exhibit 2, is the "*Supplemental Initial Disclosure Pursuant to Local Patent Rule*

2   *3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions*."

3        14. The undesigned represented Richard Berger and then later Brant Berger on a number of

4   issues since 1989. Originally the undersigned was consulted about a real estate development of

5   Richard Berger in the City of Morgan Hill near Railroad and Dunn Avenues. A development

6   agreement that was breached and a surreptitiously installed sewer line together led to the demise of

7   Mr. Berger's development. Following retention by the undersigned to take over from previous

8   counsel, the undersigned agreed to take the case on a contingency and obtained a jury verdict for

9   approximately 6.9 million dollars. The case went to appeal where the 6th District Court of Appeal

10  reversed the verdict without a retrial. Against the undersigns advice, Mr. Berger turned down an

11  offer to settle for 4.5 million dollars.

12       15. Mr. Berger was not novice to business or litigation. He had previously owned

13  restaurants, formed companies, obtained patents, and had been involved in substantial partnership

14  litigation before my late father, Judge Bruce F. Allen, represented by different counsel before 1989.

15       16. Mr. Berger and I had become friends through the course of the case and I encouraged

16  him to pursue additional economic ventures following the debacle of the loss of the jury verdict. Mr.

17  Berger's son, Brant Beger, and he developed a snowboard binding idea based upon Brant's original

18  experience in attempting to snowboard.  I and my partner took on forming a company and the and

19  represented Mr. Berger and the company in drafting a license and advising him as to the

20  development of his startup company, and meeting with other prospective investors and licensors.

21  The patent prosecution for a rotating snow board binding was handled by Reginald Suyat of Fish and

22  Richardson. Until Rossignol, the Berger binding appeared to be the only rotating snow board

23  binding introduced into the market.  I was told, and erroneously believed that the plaintiffs had

24  patented "rotation" as opposed to the narrow design of the Berger binding.

25       17. After several years, the company failed, in part, due to Rossignol's capture of the rental

26  market and substantially due to the failure of Mr. Berger to obtain funding for the company due to

27  his reluctance to give up control of the company to new investors.

28

DEFENDANT DOUGLAS B. ALLEN dba BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF
PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

18. Following that, I worked for Mr. Berger on a project for a card club gambling casino in Paso Robles, a sports related software company, again located in Santa Cruz, and a number of miscellaneous minor representations, including family law questions for both Brant and Dick Berger. As to each material representation, it was my practice, as with all clients, to develop a separate fee arrangement. Over all the years of representation, however, the undersigned believes that the Bergers never paid more than $5,000.00 total fees to me or my firm.

19. I had long since withdrawn all representation of the Bergers except for some consultation with Brant Berger about family law issues and other prospective businesses, when I was approached by John Branton, a former investor and accountant for Mr. Berger, about the patent case against Rossignol. I was aware that Mr. Berger had consulted a number of patent litigators attempting to obtain counsel to handle the case on a contingency but to no avail. Included in those attorneys was Jack Slobodin and Seyfarth, Shaw. Mr. Berger represented to me that the claims against Rossignol were all laid out in a claims chart and that Jack Slobodin had agreed to assist me, handling all of the unique patent issues, if I would only get the case started.  I was promised that Mr. Branton would provide funding to the case to pay for Mr. Slobodin's consultations, as well as consultation from Mr. Suyat, the patent prosecutor, and to hire competent experts to assist in the preparation of the case.

20. An integrated fee agreement was executed on March 9, 2005 (Exhibit A).

21. Following a two hour meeting with the Bergers and John Branton, a separate fee agreement was developed for execution and was prepared on May 31, 2005, to represent the terms of the participation by Mr. Branton and his investors in the litigation (Exhibit B).  In reliance on the assurance that funding was imminent and that the agreement would be executed, the undersigned proceeded to file the case against Rossignol on June 21, 2005. The second memorandum was not executed, however, and the funding was not provided.

22. By August 8, 2005, the funding issue had still been unresolved. The letter of August 8, 2005 was sent to the plaintiffs as well as John Branton enclosing correspondence of Fred DeKlotz, counsel for John Branton, who was to provide the funding.

**BURNETT, BURNETT & ALLEN**
333 West San Carlos St.
8th Floor
San Jose, Ca.  95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

4

1    23. Although the undersigned had briefly contacted Jack Slobodin, there were no funds to

2    retain Mr. Slobodin for advice or consult. In the letter of August 8, 2005, the undersigned stated,

3    "this controversy needs to be resolved or I will be unable to proceed with the case."

4    24. A month later the issue had still been unresolved notwithstanding the fact that the case

5    proceeded.  By letter of September 14, 2005 (Exhibit D), sent to the plaintiff and copied to Mr.

6    Branton and Mr. DeKlotz, the letter concludes with the statement, "...it is imperative that at least the

7    initial financing arrangements be consummated, as costs will begin to rise shortly."

8    25. On September 21, 2005 (see letter exhibit E), still with no financing, a meeting was

9    attempted to be set up. In addition to the letters there were numerous telephone calls, most of which

10   were not recorded in the billing records.

11   26. On November 4, 2005, interrogatories were received and sent on to Mr. Berger as

12   evidence by the letter of November 4, 2005 (Exhibit F).  By this time, the undersigned still had no

13   infringement contentions, no claims charts, no documents with which to respond to discovery and no

14   funding for the case to pay for either Mr. SLOBODIN, Mr. Suyat or any expert witnesses.

15   27. On November 7, 2005, the undersigned gave parties an ultimatum in a letter addressed to

16   Richard Berger and John Branton (Exhibit G). The letter points out "I cannot set about to conduct

17   these activities because there are no funds in which to pay the experts, nor Mr. Slobodin or Mr.

18   Suyat." The letter goes on to state, "absent immediate resolution of this circumstance, I will be

19   forced to withdraw as counsel or request that you negotiate a dismissal of the action."

20   28. On November 14, 2005, the defense, counsel representing Rossignol, submitted a

21   detailed letter with attachments indicating why the Berger patent did not infringe. The materials

22   submitted were very persuasive, including substantial prior art that rotated.  Until receipt of that

23   letter, it had been my understanding that "rotation" of a snowboard binding was patented by Mr.

24   Berger.  To the contrary, following receipt of that letter, it was made apparent by the letter itself and

25   by followup discussions with Mr. Berger that it was not "rotation" that was patented, but rather the

26   specific description contained in the Berger patent narrowly drafted to exclude substantial amounts

27   of prior art that constituted rotating snowboard bindings.

28

**BURNETT, BURNETT**
**& ALLEN**
333 West San Carlos St.
8th Floor
San Jose, Ca.  95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

5

29. On November 22, 2005, by letter, the undersigned confirmed to Richard Berger that Mr. Branton had delivered $25,000.00, not $75,000.00 (Exhibit H). This was insufficient funds to retain an expert, and in addition pay Mr. SLOBODIN to meaningfully enter the case at his hourly rate of $690 per hour. No agreement had been executed regarding the trust funds, thus I set forth the terms of my retention to hold those funds in trust in my letter of November 22, 2005 (Exhibit H). In the second page of that letter, I wrote "my initial disclosures are overdue, and Mr. Berger has in his possession a substantial number of interrogatories. These things must be attended to in the very near future. Finally, the Court has set the claims construction hearing for June 22, 2006."

30. The letter goes on to again reiterate that issue regarding funding and cost in the case had still not been resolved. Notwithstanding an initial meeting with Reg Suyat ant Jack Slobodin held after the first case management conference to discuss Rossignol's counsel's letter regarding the prior art, which discussion was almost exclusively devoted to the most difficult defense of equitable estoppel, the undersigned did not posses a claims chart of any kind, did not have complete funding for the case, had not been able to retain Mr. Slobodin as promised by Mr. Berger, and was overdue on required disclosures including the preliminary infringement contentions. It was never my intention nor was it told to me that I would be placed in a position of drafting infringement contentions, or claims charts. I was assured that those issues were already handled and would be refined by the participation of Mr. SLOBODIN. In the middle of all this, the undersigned was having difficulty understanding why it was that the Berger patent was valid at all regarding rotation or how it was infringed upon by the Rossignol binding which appeared very similar to much of the prior art submitted by counsel for Rossignol.

31. As of December 16, 2005, I still did not have a claims chart nor any assistance from any outside counsel or from the plaintiffs themselves with regard to their allegations of infringement. The plaintiffs indicated to me that they did not have the claim chart and that I should turn to Mr. Suyat or Mr. Slobodin to find the claims chart. Accordingly, following up on several telephone calls on December 16, 2005, still searching for a claims chart with which to prepare any preliminary infringement contentions, the undersigned wrote to both Mr. Slobodin and Mr. Suyat and copied to

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

6

1    the clients (Exhibit I).

2        32. In addition to the lack of a claims chart, additional documents were required to comply

3    with Rossignol's request for discovery as well as unfulfilled obligations under the initial disclosures.

4    Mr. Berger indicated that he had some additional boxes of publications in storage in Santa Cruz. He

5    refused to come to San Jose without compensation for his trip from Santa Maria and as indicated by

6    the billing statements found in "Exhibit G" to Mr. Berger's declaration on the statement date of

7    December 31, 2005, Invoice #40, I met with Mr. Berger regarding this additional discovery for three

8    hours on December 12, 2005, and paid him for 700 miles driving from the trust account. At that

9    time we still did not have a claims chart nor any information on how to describe the preliminary

10   infringement contentions. Mr. Berger could not articulate how to distinguish the prior art submitted

11   by Rossignol other than to suggest that it had been considered and disclosed in the patent

12   application.

13       33. Faced with dangerously over due preliminary infringement contentions, and without the

14   aid of Mr. Slobodin, Mr. Suyat, or any claims charts, and without the aid of any ability of plaintiff to

15   articulate infringement contentions nor to hire experts, I reviewed the file, including boxes of snow

16   sports magazines given to me by Mr. Berger, and finally found pieces of copies of the Suyat's claims

17   chart on or about the evening of December 28, 2005 (this date is reflected in the billing attached to

18   the Declaration of Mr. Berger filed herein). Even at that time, I did not have a complete claims chart

19   from Mr. Suyat, and what I had was written upon appearing to be a draft.

20       34. On or about January 3, 2006, Mr. Slobodin's office faxed to my office the December 22,

21   2003, J. Terry Stratman, "Seyfarth Shaw," claims chart and memoranda. The memoranda

22   articulately indicated that problems in the prosecution of the '569 patent would lead to sanctions if it

23   was asserted against Rossignol. In light of the existing difficulties exposed regarding the patents,

24   such an opinion from an experienced patent litigator was quite persuasive. There was a claims chart

25   in a clean version as to the '530 patent. With the promised to opposing counsel final belated date of

26   disclosure required on the next day and having received the memos after hours, I was unable to

27   contact Mr. Slobodin to ask for advice. Accordingly, I contacted the Mr. Berger and discussed what

28

BURNETT, BURNETT
& ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF
PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

7

1  infringement contentions to assert. Mr. Berger indicated that the undersigned should refrain from

2  listing the '569 patent and directed me to include Mr. Slobodin's chart as to the '530 patent. In the

3  discussion at the time, it was not understood that there was a difference between the claims chart on

4  the '530 patent of Mr. Stratman with that of Mr. Suyat.

5      35. Defendants moved for summary judgment and Mr. Berger convinced Mr. Slobodin to

6  have his firm formally enter the case as counsel. Mr. Slobodin, upon review of the contentions of

7  Rossignol, indicated that the claims chart needed to be modified in order to achieve success.

8      36. On April 25, 2006, Judge Breyer granted the summary judgment. I continued to assist

9  Seyfarth Shaw in preparing a motion under Rule 60(b). As part of that assistance, I discussed at

10  length with plaintiff, Dick Berger, my recommendation to pursue the Rule 60(b) motion with a more

11  thorough discussion of the circumstances leading up to the disclosure, including the impact of the

12  loss of his business in the face of the Rossignol competition and the contribution of the lack of

13  money made to the issues with the preliminary disclosures. Accordingly, I sent proposed points and

14  authorities to Mr. Berger in draft form. I also wrote a letter to Mr. Slobodin copied to plaintiffs on

15  June 5, 2006 (Exhibit J), wherein I stated,

16      "...it is my recommendation that full story of the Berger interface with Rossignol be told in
17      the Rule 60(b) motion....painting the picture as I tried to do in my version of the Rule 60(b)
        motion of Rossignol's abuse of Berger, explains many things, including in the delay in
18      brining the action and the original mistake in identifying the lower attachment in the
        preliminary claims."

19

20      37. Mr. Slobodin disagreed intending instead to focus upon the more terse version of the

21  background including how the Seyfarth Shaw claims chart was first disclosed in the infringement

22  contentions. The foundation for this strategy based upon my beliefs arising from discussions with

23  Mr. Slobodin was the fact that the chart had been originally developed as long ago as 2003, and

24  was a reasonable opinion as to how to correctly characterize the components of the Rossignol

25  binding, and would reinforce Judge Breyer's belief that the original infringement contentions were

26  drafted that way intentionally. Mr. Slobodin preferred to not open "Pandora's Box" regarding the

27  history and focus instead upon the technical aspects of the law and claims of infringement.

28      38. Following a lengthy and well considered discussion with Mr. Berger, Mr. Berger advised

BURNETT, BURNETT
& ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca. 95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

8

1   me that he was going with Mr. Slobodin's decision on the issue and rejecting mine since Mr.

2   Slobodin was experienced in patent litigation. At this point it was apparent that I was to have little

3   to do with any further contribution to the case.

4       39. The Court denied the motion. Following that, the undersigned relied exclusively on

5   Seyfarth Shaw to conduct the appeal. The undersigned was not admitted to the Federal Circuit and

6   had no continuing fee agreement with Mr. Berger to render services. Although I received copies of

7   the briefs, and the decision, I did not contribute to the drafting, nor was I consulted by Mr. Berger for

8   advise on the appeal.

9       40. Although, I continued to hold trust funds for Mr. Berger and John Branton, which itself

10  developed into a separate dispute over payment of expenses directly to Mr. Berger, I was not

11  performing legal services with regard to the appeal. I was giving occasional unpaid advise to Brant

12  Berger on a family law issue. The letters attached to Mr. Berger's declaration referred to a general

13  ongoing relationship to give advise on various matters, not the patent case, and specifically was to

14  assure him, as set forth in the letter, that I had no separate agreement with John Branton. Mr. Berger

15  wanted me to just pay him without Mr. Branton's permission which I refused to do, since I had never

16  had the agreement regarding the trust funds executed.

17      41. When the appeal was lost, the undersigned inquired of Seyfarth Shaw if they intended to

18  move for an En Banc hearing or petition the Supreme Court. Mr. Berger at that time indicated that he

19  wanted to consult with counsel regarding a malpractice case and I refused to participate telling Mr.

20  Berger he would have to consult with alternate counsel. I told Mr. Berger that there was a high

21  likelihood that were he to sue Mr. Slobodin and Seyfarth Shaw, that those parties would cross

22  complaint against me. Mr. Berger assured me that he had no intention of suing me and found no fault

23  in my actions.

24      42. It was because of Mr. Berger's expressed intent not to have me sued, combined with the

25  fact that Mr. Branton was refusing to pursue the case to United States Supreme Court that I proposed

26  to Mr. Berger that he enter into a good faith settlement in consideration of which I would prepare and

27  file with the United Supreme Court. That agreement was reached orally, but belatedly, and therefore

28

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

1  had to be confirmed in a written letter to Mr. Berger. After the undersigned spent the entire weekend

2  working on the case, and timely filing a "Petition for Certiorari", Mr. Berger indicated that he would

3  not execute the release nor grant the consideration for the work in filing the Petition for Certiorari.

4  Contrary to Mr. Berger's assertion in his declaration, the undersigned knew that Mr. Berger was

5  consulting with other counsel regarding the malpractice action, and in fact, put in the letter

6  confirming the memoranda a reiteration of his suggestion that he should consult with alternate

7  counsel if he felt a need. Mr. Berger constantly indicated that he had no intention of suing the

8  undersigned due to the undersigns lack of culpability.

12    I declare under the penalty of perjury, under the laws of the State of California, the foregoing

13  to be true and correct. Executed this 29th day of November 2007, at San Jose, California.

/S/ DOUGLAS B. ALLEN
_____
Douglas B.Allen

BURNETT, BURNETT
& ALLEN
333 West San Carlos St.
8th Floor
San Jose, Ca.  95110

DEFENDANT DOUGLAS B. ALLEN DBA BURNETT, BURNETT & ALLEN'S DECLARATION IN OPPOSITION TO RULE 56 CROSS MOTION OF PLAINTIFFS AND IN SUPPORT OF DEFENDANT'S RULE 56 (f) MOTION

10