Justin T. Beck, Esq. (Cal. Bar No. 53138)
Ron C. Finley, Esq. (Cal. Bar No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
Jeremy M. Duggan, Esq. (Cal. Bar No. 229854)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: jbeck@beckross.com
      rfinley@beckross.com
      abismonte@beckross.com
      chansen@beckross.com
      jduggan@beckross.com

Attorneys for Plaintiffs
Richard W. Berger and Brant W. Berger

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD W. BERGER and BRANT W. BERGER,<br><br>               Plaintiffs,<br><br>   v.<br><br>SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an individual; BURNETT, BURNETT, & ALLEN, a California partnership; DOUGLAS B. ALLEN, an individual; and DOES 1-100, inclusive;<br><br>               Defendants.<br><br>AND RELATED COUNTERCLAIMS | **Case No. C 07-05279 JSW**<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS FILED BY DEFENDANTS SEYFARTH SHAW LLP AND JACK L. SLOBODIN**<br><br>**Date:** June 20, 2008<br>**Time:** 9:00 a.m.<br>**Place:** Courtroom 2, 17th Floor<br>**Judge:** Hon. Jeffrey S. White |

## Introduction

Seyfarth ignores the express language and reasoning of recent Federal Circuit and United States Supreme Court authorities in a fruitless endeavor to force a round peg into a square hole.

Seyfarth insists that issues of "validity, enforceability, and infringement" are identical in actions for *patent infringement* and *legal malpractice*. But as the Federal Circuit recently noted in

*Air Measurement Technolgies v. Akin Gump,*[1] that such issues are only "hypothetically" adjudicated in a legal malpractice claim based on an underlying patent infringement action. And the United States Supreme Court ruled last year in *Medimmune, Inc. v. Genetech, Inc.* that a declaratory relief action under 11 U.S.C. § 2201 may not be premised "upon a hypothetical state of facts." Seyfarth's efforts to blur the basic distinction between "actual" and "hypothetical" controversies are unavailing and should be rejected.

Plaintiffs stressed the importance of that distinction by noting that a declaratory judgment of "non-infringement" in this case would contradict this court's April 25, 2006 finding of "infringement" in the *Rossignol* action.[2] Such conflicting judgments are not permissible under the doctrine of collateral estoppel.[3] Seyfarth offers <u>no solution</u> for that glaring defect, and only makes the meager argument that "[i]f the Bergers were concerned about 'inconsistent judgments,' they would not have filed a malpractice claim that depends on a finding of patent infringement, since any such finding would conflict with the previous judgment of non-infringement."[4] But because any adjudication of either infringement, validity, or enforceability in this *legal malpractice* action would be purely *hypothetical*, there is no risk of that such a ruling would conflict with that *actual* rulings made by the court in plaintiffs' earlier *patent infringement* action against Rossignol. It is only when that distinction is ignored—as Seyfarth has done—that a potential conflict arises.

Seyfarth also ignores the significant differences between patent infringement and malpractice defendants. Unlike an attorney charged with legal malpractice, a party charged with patent infringement faces the coercive choice of either ceasing their business operations or facing potentially extensive liability for patent infringement—absent a declaratory judgment of the parties' respective rights and obligations. "The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is a dilemma that it

---

[1] 504 F.3d 1262, 1269 (Fed. Cir. 2007)("Because the underlying suit here is a patent infringement action against SCBA defendants, the district court will have to adjudicate, <u>hypothetically</u>, the merits of the infringement action.")(emphasis added).

[2] *Berger v. Rossignol Ski Company, Inc.*, Case No. C 05-02523 CRB. April 25, 2006 Memorandum and Order and Judgment (finding the '530 patent not infringed and dismissing claims as to the '569 patent based on lack of contentions re infringement).

[3] *Greive v. Tamerin*, 269 F.3d 149, 153 (2nd Cir. 2001).

[4] (Seyfarth Opp. at 4).

was the very purpose of the Declaratory Judgment Act to ameliorate."[5] And that dilemma often persists even after a ruling of noninfringement because a "company once charged with infringement must remain concerned about the risk of similar charges if it develops and markets similar products in the future."[6] An attorney charged with malpractice, on the other hand, faces no such dilemma. If an attorney is found not liable for malpractice, they have no need to persist with a counterclaim to invalidate their former client's patent—because they don't compete with their former client and have not been accused of patent infringement.

**Argument**

**I.    Seyfarth Has Failed to Meet its Burden to Show a "Case of Actual Controversy"**

Seyfarth bears the ultimate burden of demonstrating that its counterclaims for declaratory relief on the issues of "non-infringement, invalidity, or unenforceability" satisfy the "actual controversy" requirement of 28 USC § 2201. "In the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy." Seyfarth has not—and cannot—satisfy that burden because it wasn't sued for (or even accused of) patent infringement; it was sued for legal malpractice.

As the Federal Circuit noted in *Air Measurement,* any adjudication of the merits of plaintiffs' underlying infringement claims against Rossignol in this case are purely "hypothetical":

> Because the underlying suit here is a patent infringement action against SCBA defendants, the district court will have to adjudicate, <u>hypothetically</u>, the merits of the infringement claim.[7]

And an action for declaratory relief under 28 USC § 2201 may not seek "an opinion advising what the law would be <u>upon a hypothetical state of facts</u>."[8]

Seyfarth erroneously argues that *Air Measurement* supports a finding of declaratory jurisdiction in this case because "[t]here, as here, the governing state law required the legal-malpractice plaintiff to prove it <u>would have</u> won the underlying patent case."[9] But Seyfarth's

---

[5] *Meddimune* at 773.
[6] Cardinal Chemical Company, Etc. v. Morton International, Inc., 508 U.S. 83, 100 (1993). Grieve v. Tamerin, 269 F.ed 149, 153 (2nd Cir. 2001).
[7] Air Measurement Technologies, Inc. v. Akin Gump Straus Hauer & Feld, LLP, 504 F.3d 1262, 1269 (Fed. Cir. 2007)(emphasis added).
[8] *Medimmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007)(emphasis added).
[9] (Seyfarth Opp. at 3)(emphasis added).

argument only suggests that both *this court* and the *Air Measurement* court must adjudicate the *hypothetical* issue of how the prior court "would have" ruled absent the alleged malpractice. *Air Measurement* did not hold that such a hypothetical adjudication invokes jurisdiction under § 2201.

Ignoring the above authorities, Seyfarth incorrectly argues:

> In this case, there is a definite, concrete, real, substantial, and immediate dispute between adverse parties about the validity, enforceability, and infringement of the Bergers' patents.[10]

But Seyfarth's use of multiple synonyms does not make its false statement true. For how could there be a "definite, concrete, real, substantial, and immediate" dispute about whether Rossignol "infringed" the Berger patents when this court already ruled on April 25, 2006 that Rossignol does *not* infringe the Berger patents?[11]

Seyfarth makes the absurd argument that:

> If the Bergers were concerned about "inconsistent judgments," they would not have filed a malpractice claim that depends on a finding of patent infringement, since any such finding would conflict with the previous judgment of non-infringement. Clearly the Bergers do not consider themselves bound by that judgment, even though they were parties to the underlying case. If the judgment does not limit them, it cannot limit Seyfarth, who were not parties to the Rossignol case.[12]

But an adjudication of how the *Rossignol* court would have *hypothetically* ruled absent the alleged infringement—e.g., that the *Rossignol* court would have found infringement if Seyfarth had not provided Allen with a defective claim chart and later lied about it—would not "conflict" with the court's *actual* ruling in *Rossignol* that there was no infringement. Seyfarth is trying to overlap two alternate and inconsistent realities: a *hypothetical* one in which the malpractice did not happen and the *actual* one in which it did. Once that distinction is recognized, a favorable ruling on plaintiffs' malpractice claim is easily squared with the adverse ruling in *Rossignol*.

**II.    Seyfarth's Counterclaims Bring Nothing of Value to These Proceedings**

Seyfarth's counterclaims ask this Court to enter "declaratory judgment" on hypothetical

---

[10] (Seyfarth Opp. at 3).
[11] *Berger v. Rossignol Ski Company, Inc.*, Case No. C 05-02523 CRB. April 25, 2006 Memorandum and Order and Judgment (finding the '530 patent not infringed and dismissing claims as to the '569 patent based on lack of contentions re infringement).
[12] (Seyfarth Opp. at 4).

issues that are already raised by the Bergers' complaint and Seyfarth's answer. Accordingly, the Court should exercise its discretion under Section 2201 not to entertain the counterclaims because they do not "serve a useful purpose in clarifying and settling the legal relations in issue" and will not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."[13]

Seyfarth makes the following flawed argument in an effort to demonstrate that the court should not exercise its discretion under Section 2201:

> Suppose this Court rules that the Bergers' patents are invalid, declines to decide infringement or enforceability issues, and the Federal Circuit reverses, holding the patents valid. In that circumstance, the appellate court would have to remand so that this Court could hold further proceedings to address the other issues. If, on the other hand, Seyfarth has pending claims for declaratory relief, this Court will be encouraged to decide all the contested issues in a single proceeding, which in turn will enable a single appeal that can address all issues and avoid the need for a time-consuming remand.[14]

But such an outcome would not promote judicial economy—it would subvert it. If the court were to rule on one dispositive issue, decline to rule on subsidiary issues as moot, and that ruling was affirmed on appeal, then there would bee no need to ever rule on the subsidiary issues. That would be the most judicially efficient route. Seyfarth's proposed scenario—under which the court *always* rules on every issue presented—forecloses that possibility. Indeed, under Seyfarth's scenario the court could never resolve this case by way of a summary judgment ruling on a dispositive issue—something that Seyfarth itself concededly hopes to achieve.[15]

As anticipated, Seyfarth compares itself to patent infringement defendants who (according to Seyfarth) nearly always "assert counterclaims for non-infringement, invalidity, and unenforceability, while at the same time also asserting related affirmative defenses." But established case law from the United States Supreme Court and Federal Circuit illustrates the stark contrast between a party charged with *patent infringement* and one charged with *legal malpractice.*

In 1993, the United States Supreme Court in *Cardinal Chemical Company, v. Morton*

---

[13] Eureka Federal Savings and Loan Assoc. v. American Casualty Company, 873 F.2d 229 (9th Cir. 1989).
[14] (Seyfarth Opp. at 5).
[15] Seyfarth plans to seek summary judgment that there was no attorney-client relationship between Seyfarth and the Bergers during the relevant time periods. By Seyfarth's reasoning, the court should still rule on Seyfarth's counterclaims for non-infringement, invalidity, and unenforceability even if that motion was granted. *See* Joint Case Management Statement at 4:14-18 (Docket No. 71).

*International, Inc.*[16] held that "a party has <u>actually been charged with infringement</u> of [a] patent" could bring an action for declaratory relief challenging the patent's validity.[17]  In reaching that decision, the Supreme Court noted the following purpose of the Declaratory Judgment Act:

> [T]he sad and saddening scenario that led to enactment of the Declaratory Judgment Act (Act), 28 U.S.C. § 2201.  In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword . . . . Before the Act, <u>competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the net-tle and sue</u>.  After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.[18]

Last year, the Federal Circuit in *Sandisk Corporation v. STMicroelectronics, Inc.*[19] held that Article III jurisdiction may exist under the following circumstances:

> We hold only that <u>where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license</u>, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.[20]

Here, the Bergers have not charged Seyfarth with "infringement of a patent."  Nor have the Bergers asserted rights under a patent based on "certain ongoing or planned activity" of Seyfarth, and Seyfarth does not "contend that it has the right to engage in the accused activity."  In short, Seyfarth has not established any of the requisite elements of Article III jurisdiction over its declaratory relief action or that it stands in the same position as a patent infringement defendant.

And Seyfarth has not demonstrated that it would have any real interest in pursuing its counterclaims for "invalidity" or "unenforceability" if the court were to find "noninfringement."  Unlike a party accused of infringement, Seyfarth has no reason to "remain concerned about the risk of similar charges if it develops and markets similar products in the future"[21] because Seyfarth does not make or sell snowboard bindings.

---

[16] 508 U.S. 83 (1993)
[17] *Id*. at 96 (emphasis added).
[18] Id. at 95-96.  Quoting, Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.3d 731, 734-735.
[19] 480 F.3d 1372 (Fed. Cir. 2007).
[20] *Id*. at 1381 (emphasis added).
[21] Cardinal Chemical Company, Etc. v. Morton International, Inc., 508 U.S. 83, 100 (1993).

Seyfarth argues that it should be treated the same as a patent infringement defendant because "[b]oth cases present the same substantive patent-law issues, and the threat of piecemeal litigation is present in both circumstances."[22] But as discussed above, both cases do not involve the same "substantive patent-law issues" and "piecemeal litigation" is not the concern faced by a patent infringement defendant or addressed by the cited authorities. Rather, it is "the desire to avoid the threat of a 'scarecrow' patent"[23]—something that Seyfarth is not threatened with.

Finally, it is important to note that Seyfarth's flawed arguments could be asserted in *any* malpractice action as a basis for asserting a counterclaim for "declaratory relief." For example, by Seyfarth's reasoning, an attorney sued for negligently handling a property transaction seek a "declaratory judgment" that their former client was not the lawful owner of the disputed property. Or an attorney sued for botching a marital dissolution could counterclaim for a "declaratory judgment" that their former client was an adulterer and not entitled to alimony. Or an attorney charged with mishandling a medical malpractice lawsuit could demand a "declaratory judgment" that their former client's doctor had not fallen below the standard of care. Those situations make no sense because Seyfarth's arguments (along with its counterclaims) make no sense.

### Conclusion

Attorneys sued for legal malpractice may defend themselves by disputing and disproving the contentions made against them. But attorneys may not obtain a "declaratory judgment" on hypothetical issues that might have been decided by an earlier court under a different set of circumstances. That is not how declaratory judgments work and Seyfarth has not cited a single case to suggest otherwise. Because Seyfarth has not satisfied its burden to demonstrate an "actual case or controversy" under 28 USC § 2201 and its counterclaims bring nothing of value to these proceedings, plaintiffs' motion to dismiss should be granted.

Dated: May 2, 2008                                        Beck, Ross, Bismonte & Finley, LLP

By:  /s/
Craig Alan Hansen
Attorneys for the Plaintiffs and Counterdefendants
Richard Berger and Brant Berger

---

[22] (Opp. at 6).
[23] Cardinal Chemical Company, Etc. v. Morton International, Inc., 508 U.S. 83, 100 (1993).