Justin T. Beck, Esq. (Cal. Bar No. 53138)
Ron C. Finley, Esq. (Cal. Bar No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
Jeremy M. Duggan, Esq. (Cal. Bar No. 229854)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: jbeck@beckross.com
       rfinley@beckross.com
       abismonte@beckross.com
       chansen@beckross.com
       jduggan@beckross.com

Attorneys for Plaintiffs
Richard W. Berger and Brant W. Berger

KEKER & VAN NEST LLP
RECEIVED / CALENDARED BY: _____

DATE(S) CALENDARED:

JUN 3 0 2008

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD W. BERGER and BRANT W. BERGER,<br><br>Plaintiffs,<br><br>v.<br><br>SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an individual; BURNETT, BURNETT, & ALLEN, a California partnership; DOUGLAS B. ALLEN, an individual; and DOES 1-100, inclusive;<br><br>Defendants. | Case No. C07-05279 JSW<br><br>**RICHARD W. BERGER SUPPLEMENTAL RESPONSES TO DEFENDANT SEYFARTH SHAW FIRST SET OF INTERROGATORIES** |

Defendant Richard W. Berger ("Responding Party"), by and through his attorneys, hereby

responds to Defendant Seyfarth Shaw, LLP ("Seyfarth") Interrogatories, Set No. One, pursuant to

Rule 33 of the Federal Rules of Civil Procedure as follows:

## GENERAL STATEMENTS AND OBJECTIONS

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1.    Responding Party has not completed discovery, investigation of the facts, witnesses, or documents, analysis of available information, or preparation for trial in this case. Responding Party reserves the right to supplement or amend these responses in the event that any facts, documents, or other evidence may be subsequently discovered.

2.    These responses are made without prejudice to Responding Party's right to introduce facts, documents, testimony, witnesses, or other evidence that may be subsequently discovered.

3.    These responses are made without prejudice to Responding Party's right to supplement or amend these responses in the event that any information previously available to Responding Party may have been omitted by oversight, inadvertence, or good faith error or mistake.

4.    Except for the facts explicitly stated herein, no incidental or implied admissions are intended.

5.    All responses are made without waiver and with preservation of:

    5.1.    all questions or objections as to competency, relevancy, materiality, privilege, probative value and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action (including the trial of this action) and in any other action or matter;

    5.2.    the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action (including the trial or arbitration of this action) and in any other action or matter;

    5.3.    the right to object on any ground at any time to a demand or interrogatory for further responses to these or any other discovery requests or proceedings involved or related to the subject matter of the information/documents provided or the discovery to which these responses are provided; and

    5.4.    the right at any time, up to and including trial, to review, correct, add to, supplement or clarify any of the responses contained herein.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    5.5    all objections as to vagueness, ambiguity, unintelligibility, and overbreadth.

2    6.    Nothing herein shall be construed as an admission by Responding Party regarding

3    the admissibility or relevance of any fact or document or of the truth or accuracy of any

4    characterization contained in Seyfarth's discovery requests.

5    7.    These responses are signed by counsel only as to the objections set forth in the

6    responses.  Responding Party specifically asserts the attorney-client privilege and the work product

7    doctrine as to each and every response set forth herein.

8    8.    Responding Party objects to these interrogatories to the extent they seek the

9    disclosure of information or material protected by the attorney-client privilege, work product

10    doctrine, or any other applicable privilege, immunity, or similar protection.  Responding Party

11    does not intend to produce such privileged or protected information, documents, or other material;

12    and the inadvertent or unintentional disclosure of such shall not be deemed a waiver of any such

13    privilege or protection.  Responding Party expressly reserves the right to object to the introduction

14    at trial or in any other proceeding or any other use of such information or material that may be

15    inadvertently or unintentionally disclosed.

16    9.    Responding Party objects to these interrogatories to the extent they seek

17    information not relevant to any claim or defense of any party in this litigation, not reasonably

18    calculated to lead to the discovery of admissible evidence, or that it falls outside the scope of

19    discoverable information under the Federal Rules of Civil Procedure, the local rules of this Court,

20    and any Orders entered in this action.

21    10.    Responding Party objects on the ground of undue burden the production of any

22    information previously provided to Seyfarth or that may be derived or ascertained from

23    information, documents, or other material produced or disclosed by Responding Party or from

24    examination of such information, documents, or other material and for which the burden of

25    deriving or ascertaining the information is substantially the same for Seyfarth as it is for

26    Responding Party.

27    11.    Responding Party generally objects to Seyfarth's interrogatories on the ground that

28    they lack any reasonable limitation on the time period for which responsive information is sought;

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1  and are therefore burdensome, oppressive, overly broad, and not reasonably calculated to lead to

2  the discovery of admissible evidence.

3      12.    Responding Party objects to producing any trade secret or confidential information

4  belonging to Responding Party or any trade secret or confidential information belonging to other

5  persons or entities.

6      13.    The fact that part or all of any discovery request has been responded to, in whole or

7  in part, should not be construed to be a waiver of any objection to any discovery request.

8      14.    To the extent that specific objections are cited herein in response to specific

9  requests or demands, those specific objections are provided out of an abundance of caution and

10  because they are believed to be particularly applicable to such request or demand.  Such specific

11  objections shall not constitute a waiver of any of the General Objections.

12              **OBJECTIONS TO INSTRUCTIONS**

13      15.    Responding Party objects to each instruction served with Seyfarth's Interrogatories

14  to the extent that each instruction purports to impose, either expressly or by implication, any

15  obligations on Responding Party beyond those required by the Federal Rules of Civil Procedure.

16      16.    Responding Party objects to each instruction served with Seyfarth's Interrogatories

17  to the extent that each instruction could be interpreted to require Responding Party to obtain,

18  disclose, or produce information, documents, witnesses, or other material not within its possession,

19  custody, or control.

20          **SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

21      Responding Party responds to each and every discovery request subject to the foregoing

22  statements and objections, each of which is incorporated by reference into each of the following

23  responses, as though fully set forth therein.  Responding Party's specific objections to any

24  interrogatory shall not be construed to preclude, override, or withdraw any of the foregoing

25  objections.

26  INTERROGATORY NO. 2:

27      Please IDENTIFY ALL facts available to YOU supporting YOUR contention about the

28  time period during which SEYFARTH represented YOU in the UNDERLYING LITIGATION,

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1  including, but not limited to, when and how SEYFARTH *became* YOUR Attorney, when and how

2  SEYFARTH *ceased* to be YOUR attorney, and ALL DOCUMENTS supporting this contention.

3  RESPONSE TO INTERROGATORY NO. 2:

4      Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and

5  unduly burdensome in that it requests identification of "all facts" concerning events that took place

6  over a period of 3.5 year period.  Without waiver of those objections, responding party responds as

7  follows:

8      The Bergers initially met with Seyfarth attorney, Jack Slobodin, on August 5, 2003.  Prior

9  to that meeting, the Berger's patent attorney, Reginald Suyat, sent Slobodin a copy of U.S. Patent

10  No. 5,913,530 (the '530 patent) on June 6, 2003 and a copy of U.S. Patent No. 6,196,569 B1 (the

11  '569 patent) on June 11, 2003.

12      During the August 5, 2003 meeting, the Bergers shared their confidential case strategy and

13  evaluation of their prospective case against Rossignol.  The Bergers also sought and obtained

14  Slobodin's advice about when and how to proceed with their action against Rossignol, including

15  when to file that action in light of issues pertaining to the statute of limitations and a possible

16  laches defense by Rossignol.  During and following that meeting, the Bergers reasonably believed

17  that they were consulting with Slobodin in his professional capacity as a Seyfarth attorney.

18      On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with

19  multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's

20  infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers'

21  infringement claim against Rossignol, their estimation of recoverable damages, and their general

22  strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of

23  the attachments to be confidential."

24      On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the

25  Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings

26  do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement,

27  we [Seyfarth] can make a relatively large fee without putting too much into the case."

28      On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1   for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat

2   claim chart).

3        On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding

4   he had used to produce the Suyat Claim Charts.

5        On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a

6   memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that

7   Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the

8   claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

9        In preparing to file their patent infringement action against Rossignol, plaintiffs also

10  retained defendants Douglas B. Allen and Burnett, Burnett, & Allen (collectively "Allen").  Allen

11  had no prior experience in handling patent infringement actions, but had represented plaintiffs in

12  real estate matters.  Accordingly, Slobodin and Seyfarth agreed to collaborate with Allen and

13  provide the requisite advice and assistance to Allen in handling the patent infringement action

14  against Rossignol.

15       Shortly after the Berger's initial discussions with Slobodin, Slobodin was injured in a

16  skiing accident.  As a result, the Bergers waited to file their patent infringement against Rossignol

17  until after Slobodin had recovered from his injuries.

18       On June 2005, plaintiffs (through defendant Allen) filed their patent infringement action

19  against Rossignol alleging infringement of the '530 patent and the '569 patent in the United States

20  District Court for the Northern District of California, styled Berger v. Rossignol Ski Company,

21  Inc., Case No. 3:05-CV-02523-CRB.

22       The District Court held the initial Case Management Conference in Berger v. Rossignol on

23  November 18, 2005.  On or about the same day, Allen met with Slobodin and Suyat to discuss and

24  strategize concerning plaintiffs' pending action against Rossignol.  During that meeting

25  confidential attorney-client and attorney-work-product information was exchanged with Slobodin

26  and his legal opinions concerning the Berger v. Rossignol case were requested and obtained.  After

27  that meeting, Slobodin assured plaintiffs that he would advise and supervise Allen to make sure all

28  procedures were followed and all deadlines were met and would file a formal appearance in that

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1   litigation shortly. He also advised plaintiffs that the case was in an inactive state and that there

2   was nothing for them to worry about.

3       On or about December 16, 2005, Allen wrote to Slobodin, with a copy to Suyat, asking for

4   the "Claim Chart" to serve with plaintiffs' infringement contentions. Allen also indicated that he

5   had left "a couple of voicemail messages" with Slobodin concerning that matter.

6       On or about January 3, 2006, Slobodin provided Allen with the claim chart prepared by J.

7   Terry Stratman of Seyfarth Shaw. Slobodin also forwarded a Seyfarth Shaw memorandum

8   concerning the '569 patent, but without explaining the appropriate legal steps that Allen should

9   take in light of that memorandum.

10      The following day, on January 4, 2006, Allen served on Rossignol "Supplemental Initial

11  Disclosure Pursuant to Patent Local Rule 3-1 Disclosure of Asserted Claims and Preliminary

12  Infringement Contentions" (the Defective Infringement Contentions). This included and was

13  based upon the Seyfarth Shaw Claim Chart for the '530 patent that Slobodin had just sent.

14      On February 21, 2006, Rossignol filed a motion for summary judgment based on the

15  defects contained in the Seyfarth claim chart.

16      On March 6, 2006, the Bergers signed a formal engagement letter with Seyfarth.

17      On March 14, 2006, Seyfarth filed its formal appearance in the Berger v. Rossignol patent

18  litigation.

19      Thereafter, Seyfarth acted as the Bergers' counsel of record in the *Berger v. Rossignol*

20  matter through the remaining proceedings before the United States District Court and the Federal

21  Circuit.

22  SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:

23      During and after the August 5, 2003 meeting, the parties discussed, and it was understood

24  between them, that Jack Slobodin and Seyfarth Shaw would act as lead counsel for the Bergers if

25  and when they ultimately pursued a patent infringement action against Rossignol. Slobodin

26  advised the Bergers at that meeting that the action needed to be filed within six years in order to

27  avoid a statute of limitations or laches defense by Rossignol. Richard Berger later relayed that

28  information to Doug Allen.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    When the *Berger v. Rossignol* action was later filed by Douglas Allen, it was done with the

2    understanding that Slobodin and Seyfarth would advise and supervise Allen and would be filing

3    their formal appearance shortly.  Slobodin and Seyfarth were advised of the filing of the litigation,

4    copied on pertinent correspondence, and regularly apprised of recent developments prior to their

5    formal appearance on March 14, 2006.

6    On November 18, 2005, Slobodin met with Allen and Suyat in his capacity as plaintiffs'

7    counsel.  During that meeting confidential attorney-client and attorney-work-product information

8    was exchanged with Slodobin and his legal opinions concerning the *Berger v. Rossignol* case were

9    requested and obtained.  Slobodin apparently advised Allen that he would provide Allen with

10   pertinent documents, including the claim charts and physical exemplars from his office in Chicago

11   and also assist in obtaining the file wrapper from the United States Patent Office.

12   During a telephone call between Slobodin and Richard Berger that took place shortly after

13   that meeting, Slobodin assured plaintiffs that he would continue to advise and supervise Allen to

14   make sure all procedures were followed and all deadlines were met and would file a formal

15   appearance in that litigation shortly.  He also advised plaintiffs that the case was in an inactive

16   state and that there was nothing for them to worry about.

17

18   <u>INTERROGATORY NO. 9:</u>

19   Please IDENTIFY ALL facts available to YOU supporting YOUR contention that

20   SEYFARTH defrauded YOU, including identification of each false representations made by

21   SEYFARTH and/or each fact concealed by SEYFARTH and, for each such misrepresentation or

22   concealment, (a) when that misrepresentation or concealment took place (b) all facts that

23   demonstrate YOUR reliance on the misrepresentation or concealment; (c) all facts that

24   demonstrate that such reliance was justifiable, and (d) all facts that demonstrate that YOU suffered

25   damages as a result of that reliance.

26   <u>RESPONSE TO INTERROGATORY NO. 9:</u>

27   Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and

28   unduly burdensome in that it requests identification of "all facts" concerning events that took place

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

over a period of 3.5 year period.  Without waiver of those objections, responding party responds as follows:

Seyfarth defrauded plaintiffs by making false statements as well as actively concealing material information.

**False Statements**

Seyfarth made the following false statements to plaintiffs:

- Falsely representing to plaintiffs during a March 19, 2006 meeting (and thereafter) that the defective Seyfarth claim chart was in fact prepared by plaintiffs' patent attorney, Reginald Suyat;

- Falsely representing to plaintiffs on April 28, 2006 via an e-mail from David Newman that Seyfarth would file on plaintiffs' behalf a "motion under Rule 60 focusing on the mistake that Doug made by submitting the preliminary draft claim chart including an error (with respect to identifying the lower attachment as item 4, the base plate) without reviewing the chart or having another patent attorney review the chart before it was filed";

**Material Omissions**

Seyfarth failed to disclose the following material facts to plaintiffs:

- That Seyfarth would not provide promised supervision, direction, and support to Allen before and during the *Berger v. Rossignol* litigation;

- That Seyfarth prepared a defective claim chart and legal memorandum concerning the '530 and '569 patents and transmitted them to Allen for use in plaintiffs' preliminary infringement contentions;

- That the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that Seyfarth had been involved in the *Berger v. Rossignol* matter for years before it made its official appearance on March 14, 2006;

- That Seyfarth would falsely represent to the District Court that Seyfarth had no significant involvement in the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the District Court that Seyfarth had billed no time to the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the Federal Circuit that Seyfarth did not know why plaintiffs' Preliminary Infringement Contentions included no claims as to the '569 patent; and

- That Seyfarth would fail to maintain prompt, open, honest, and frank communication so as to ensure competent representation of plaintiffs.

The Bergers relied on the above misrepresentations and concealments by:

- Permitting Seyfarth to represent them (and continue to represent them) in the *Berger v. Rosignol* litigation;

- Not preventing Allen from serving defective infringement contentions based on the faulty Seyfarth claim chart and Stratman memorandum;

- Not sending the Seyfarth claim chart to their patent attorney, Reginald Suyat, to inquire as to its correctness;

- Not advising the District Court or the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions in fact resulted from faulty legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served.

The Bergers' reliance was reasonable because they had no reason to believe that their attorneys would lie to them, conceal material information from them, cheat them, and put their

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    own interests before those of the Bergers.

2        The Bergers were damaged by Seyfarth's misrepresentations and concealments because:

3        &bull;  The District Court denied plaintiffs' motion to amend their preliminary

4          infringement contentions which was based on false pretenses;

5        &bull;  The District Court granted Rossignol's motion for summary judgment as plaintiffs'

6          opposition was based on false pretenses;

7        &bull;  The District Court denied plaintiffs' Rule 60 motion which was based on false

8          pretenses;

9        &bull;  The Federal Circuit affirmed the District Court rulings because plaintiffs' moving

10         papers, oppositions papers, and arguments of counsel were all based on false

11         pretenses.

12   <u>SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9:</u>

13       During the April 14, 2006 hearing on Rossignol's Motion for Summary Judgment and

14   plaintiffs' Motion for Leave to Amend their Preliminary Infringement Contentions, Slobodin and

15   Seyfarth falsely represented to the court that Slobodin did not bill time on the *Berger v. Rossignol*

16   matter until "late February" or "early March" "after [Rossignol] served their summary judgment

17   motion."

18       Plaintiffs believe that defendants failed to maintain prompt, open, honest, and frank

19   communication amongst themselves so as to ensure competent representation of plaintiffs because:

20       1.  During the November 18, 2005 meeting, Slobodin apparently advised Allen that he

21         would get him "the claim chart";

22       2.  Allen sent Slobodin a letter on December 16, 2005 stating that he had left Slobodin

23         "a couple of voicemail messages" and needed "the 'Claims Chart' in the above

24         matter as soon as possible";

25       3.  Slobodin finally provided a claim chart to Allen on January 3, 2006, but apparently

26         did not tell Allen that Seyfarth had modified the Suyat claims chart so as to include

27         the coupler base (or rotatable base) (Item 4) as part of the lower attachment—

28         thereby rendering it fatally defective—and apparently did not explain the meaning

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

of the Stratman memorandum concerning the '569 patent or what, if anything, Allen should do about it; and

4. On January 4, 2006, Allen served plaintiffs' preliminary infringement contentions incorporating the defective Seyfarth claim chart for the '530 patent and without asserting any claims as to the '569 patent.

Richard Berger received a January 3, 2006 e-mail transmitting the Stratman memorandum and an incomplete copy of the Seyfarth claim chart which did not contain any of the corresponding photographs. That e-mail did not explain, and Seyfarth did not clarify, that Seyfarth had modified the Suyat claims chart so as to include the coupler base (or rotatable base) (Item 4) as part of the lower attachment—thereby rendering it fatally defective. Indeed, the attached Stratman memorandum indicated that Seyfarth "agreed" with Reg Suyat's infringement analysis, leading plaintiffs to believe that no material changes to the Suyat claims charts had been made. Later, during a March 17, 2006 meeting between Richard Berger, Brant Berger, and Jack Slobodin—after Rossignol filed in summary judgment motion—Slobodin falsely advised the Bergers that the claim chart used in plaintiffs' Preliminary Infringement Contentions was prepared by Reg Suyat. Defendants continued to actively conceal their mistake from the Bergers and the court throughout the course of the *Berger v. Rossignol* litigation.

<u>INTERROGATORY NO. 10:</u>

Please IDENTIFY ALL facts available to YOU supporting YOUR contention that SEYFARTH made negligent misrepresentations to YOU, including identification of each misrepresentations made by SEYFARTH and, for each such misrepresentation, (a) when that misrepresentation took place, (b) all facts that demonstrate YOUR reliance on the misrepresentation, (c) all facts that demonstrate that such reliance was justifiable, and (d) all facts that demonstrate that YOU suffered damages as a result of that reliance.

<u>RESPONSE TO INTERROGATORY NO. 10:</u>

Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and unduly burdensome in that it requests identification of "all facts" concerning events that took place

Beck, Ross, Bismonte & Finley, LLP
Fairmont Plaza
50 W. San Fernando St., 1300
San Jose, California 95113
Telephone (408) 938-7900

over a period of 3.5 year period. Without waiver of those objections, responding party responds as follows:

Seyfarth committed negligent misrepresentation by making false statements as well as actively concealing material information.

**False Statements**

Seyfarth made the following false statements to plaintiffs:

- Falsely representing to plaintiffs during a March 19, 2006 meeting (and thereafter) that the defective Seyfarth claim chart was in fact prepared by plaintiffs' patent attorney, Reginald Suyat;

- Falsely representing to plaintiffs on April 28, 2006 via an e-mail from David Newman that Seyfarth would file on plaintiffs' behalf a "motion under Rule 60 focusing on the mistake that Doug made by submitting the preliminary draft claim chart including an error (with respect to identifying the lower attachment as item 4, the base plate) without reviewing the chart or having another patent attorney review the chart before it was filed";

**Material Omissions**

Seyfarth failed to disclose the following material facts to plaintiffs:

- That Seyfarth would not provide promised supervision, direction, and support to Allen before and during the *Berger v. Rossignol* litigation;

- That Seyfarth prepared a defective claim chart and legal memorandum concerning the '530 and '569 patents and transmitted them to Allen for use in plaintiffs' preliminary infringement contentions;

- That the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were

served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that Seyfarth had been involved in the *Berger v. Rossignol* matter for years before it made its official appearance on March 14, 2006;

- That Seyfarth would falsely represent to the District Court that Seyfarth had no significant involvement in the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the District Court that Seyfarth had billed no time to the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the Federal Circuit that Seyfarth did not know why plaintiffs' Preliminary Infringement Contentions included no claims as to the '569 patent; and

- That Seyfarth would fail to maintain prompt, open, honest, and frank communication so as to ensure competent representation of plaintiffs.

The Bergers relied on the above misrepresentations and concealments by:

- Permitting Seyfarth to represent them (and continue to represent them) in the *Berger v. Rosignol* litigation;

- Not preventing Allen from serving defective infringement contentions based on the faulty Seyfarth claim chart and Stratman memorandum;

- Not sending the Seyfarth claim chart to their patent attorney, Reginald Suyat, to inquire as to its correctness;

- Not advising the District Court or the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions in fact resulted from faulty legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served.

The Bergers' reliance was reasonable because they had no reason to believe that their attorneys would lie to them, conceal material information from them, cheat them, and put their

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

own interests before those of the Bergers.

The Bergers were damaged by Seyfarth's misrepresentations and concealments because:

- The District Court denied plaintiffs' motion to amend their preliminary infringement contentions which was based on false pretenses;

- The District Court granted Rossignol's motion for summary judgment as plaintiffs' opposition was based on false pretenses;

- The District Court denied plaintiffs' Rule 60 motion which was based on false pretenses;

- The Federal Circuit affirmed the District Court rulings because plaintiffs' moving papers, oppositions papers, and arguments of counsel were all based on false pretenses.

SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10:

During the April 14, 2006 hearing on Rossignol's Motion for Summary Judgment and plaintiffs' Motion for Leave to Amend their Preliminary Infringement Contentions, Slobodin and Seyfarth falsely represented to the court that Slobodin did not bill time on the *Berger v. Rossignol* matter until "late February" or "early March" "after [Rossignol] served their summary judgment motion."

Plaintiffs believe that defendants failed to maintain prompt, open, honest, and frank communication amongst themselves so as to ensure competent representation of plaintiffs because:

1. During the November 18, 2005 meeting, Slobodin apparently advised Allen that he would get him "the claim chart";

2. Allen sent Slobodin a letter on December 16, 2005 stating that he had left Slobodin "a couple of voicemail messages" and needed "the 'Claims Chart' in the above matter as soon as possible";

3. Slobodin finally provided a claim chart to Allen on January 3, 2006, but apparently did not tell Allen that Seyfarth had modified the Suyat claims chart so as to include the coupler base (or rotatable base) (Item 4) as part of the lower attachment— thereby rendering it fatally defective—and apparently did not explain the meaning

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    of the Stratman memorandum concerning the '569 patent or what, if anything,

2    Allen should do about it; and

3        4.   On January 4, 2006, Allen served plaintiffs' preliminary infringement contentions

4    incorporating the defective Seyfarth claim chart for the '530 patent and without

5    asserting any claims as to the '569 patent.

6    Richard Berger received a January 3, 2006 e-mail transmitting the Stratman memorandum

7    and an incomplete copy of the Seyfarth claim chart which did not contain any of the corresponding

8    photographs. That e-mail did not explain, and Seyfarth did not clarify, that Seyfarth had modified

9    the Suyat claims chart so as to include the coupler base (or rotatable base) (Item 4) as part of the

10    lower attachment—thereby rendering it fatally defective. Indeed, the attached Stratman

11    memorandum indicated that Seyfarth "agreed" with Reg Suyat's infringement analysis, leading

12    plaintiffs to believe that no material changes to the Suyat claims charts had been made. Later,

13    during a March 17, 2006 meeting between Richard Berger, Brant Berger, and Jack Slobodin—after

14    Rossignol filed in summary judgment motion—Slobodin falsely advised the Bergers that the claim

15    chart used in plaintiffs' Preliminary Infringement Contentions was prepared by Reg Suyat.

16    Defendants continued to actively conceal their mistake from the Bergers and the court throughout

17    the course of the *Berger v. Rossignol* litigation.

18

19    NO. 22:  REQUEST FOR ADMISSION NO. 19

20    "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH had prepared a

21    memorandum, dated December 22, 2003, titled 'Berger v. Rossignol Infringement of Berger

22    Patents.'"

23    **Facts**

24    Plaintiffs do recall learning about the December 22, 2003 memorandum prior to February

25    21, 2006.

26    **Documents**

27    Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

28    regard. However, the January 3, 2006 e-mail from Seyfarth to Allen transmitting the December

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1   22, 2003 memorandum was not copied to responding party.

2   SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22:

3       Richard Berger received a January 3, 2006 e-mail transmitting the Stratman memorandum

4   and an incomplete copy of the Seyfarth claim chart which did not contain any of the corresponding

5   photographs. That e-mail did not explain, and Seyfarth did not clarify, that Seyfarth had modified

6   the Suyat claims chart so as to include the coupler base (or rotatable base) (Item 4) as part of the

7   lower attachment—thereby rendering it fatally defective. Indeed, the attached Stratman

8   memorandum indicated that Seyfarth "agreed" with Reg Suyat's infringement analysis, leading

9   plaintiffs to believe that no material changes to the Suyat claims charts had been made. Later,

10  during a March 17, 2006 meeting between Richard Berger, Brant Berger, and Jack Slobodin—after

11  Rossignol filed in summary judgment motion—Slobodin falsely advised the Bergers that the claim

12  chart used in plaintiffs' Preliminary Infringement Contentions was prepared by Reg Suyat.

13  Defendants continued to actively conceal their mistake from the Bergers and the court throughout

14  the course of the *Berger v. Rossignol* litigation.

15

16  NO. 23:  REQUEST FOR ADMISSION NO. 20

17      "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH had prepared in

18  2003 a claim chart regarding Rossignol's alleged infringement of the '530 PATENT."

19      **Facts**

20      Plaintiffs did not learn that Seyfarth had prepared its own claim chart until after receiving

21  their files from Allen some time after the Federal Circuit affirmed the District Court rulings in the

22  *Berger v. Rossignol* action.

23      **Documents**

24      Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

25  regard.

26  SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 23:

27      Richard Berger received a January 3, 2006 e-mail transmitting the Stratman memorandum

28  and an incomplete copy of the Seyfarth claim chart which did not contain any of the corresponding

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1  photographs.  That e-mail did not explain, and Seyfarth did not clarify, that Seyfarth had modified

2  the Suyat claims chart so as to include the coupler base (or rotatable base) (Item 4) as part of the

3  lower attachment—thereby rendering it fatally defective.  Indeed, the attached Stratman

4  memorandum indicated that Seyfarth "agreed" with Reg Suyat's infringement analysis, leading

5  plaintiffs to believe that no material changes to the Suyat claims charts had been made.  Later,

6  during a March 17, 2006 meeting between Richard Berger, Brant Berger, and Jack Slobodin—after

7  Rossignol filed in summary judgment motion—Slobodin falsely advised the Bergers that the claim

8  chart used in plaintiffs' Preliminary Infringement Contentions was prepared by Reg Suyat.

9  Defendants continued to actively conceal their mistake from the Bergers and the court throughout

10  the course of the *Berger v. Rossignol* litigation.

11

12  NO. 24:  REQUEST FOR ADMISSION NO. 21

13      "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH had prepared in

14  2003 a claim chart regarding Rossignol's alleged infringement of the '569 PATENT."

15      **Facts**

16      Plaintiffs had no such knowledge as of that time.

17      **Documents**

18      Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

19  regard.

20  SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 24:

21      Richard Berger received a January 3, 2006 e-mail transmitting the Stratman memorandum

22  and an incomplete copy of the Seyfarth claim chart which did not contain any of the corresponding

23  photographs.  That e-mail did not explain, and Seyfarth did not clarify, that Seyfarth had modified

24  the Suyat claims chart so as to include the coupler base (or rotatable base) (Item 4) as part of the

25  lower attachment—thereby rendering it fatally defective.  Indeed, the attached Stratman

26  memorandum indicated that Seyfarth "agreed" with Reg Suyat's infringement analysis, leading

27  plaintiffs to believe that no material changes to the Suyat claims charts had been made.  Later,

28  during a March 17, 2006 meeting between Richard Berger, Brant Berger, and Jack Slobodin—after

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1  Rossignol filed in summary judgment motion—Slobodin falsely advised the Bergers that the claim

2  chart used in plaintiffs' Preliminary Infringement Contentions was prepared by Reg Suyat.

3  Defendants continued to actively conceal their mistake from the Bergers and the court throughout

4  the course of the *Berger v. Rossignol* litigation.

5

6  NO. 25:  REQUEST FOR ADMISSION NO. 22

7      "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH emailed to Douglas

8  B. Allen on January 3, 2006 a memorandum titled 'Berger v. Rossignol Infringement of Berger's

9  Patents' and dated December 22, 2003."

10     **Facts**

11     Plaintiffs had no such knowledge as of that time.

12     **Documents**

13     Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

14  regard.

15  SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 25:

16     Richard Berger received a January 3, 2006 e-mail transmitting the Stratman memorandum

17  and an incomplete copy of the Seyfarth claim chart which did not contain any of the corresponding

18  photographs.  That e-mail did not explain, and Seyfarth did not clarify, that Seyfarth had modified

19  the Suyat claims chart so as to include the coupler base (or rotatable base) (Item 4) as part of the

20  lower attachment—thereby rendering it fatally defective.  Indeed, the attached Stratman

21  memorandum indicated that Seyfarth "agreed" with Reg Suyat's infringement analysis, leading

22  plaintiffs to believe that no material changes to the Suyat claims charts had been made.  Later,

23  during a March 17, 2006 meeting between Richard Berger, Brant Berger, and Jack Slobodin—after

24  Rossignol filed in summary judgment motion—Slobodin falsely advised the Bergers that the claim

25  chart used in plaintiffs' Preliminary Infringement Contentions was prepared by Reg Suyat.

26  Defendants continued to actively conceal their mistake from the Bergers and the court throughout

27  the course of the *Berger v. Rossignol* litigation.

28

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1

2

3    Dated: June 27, 2008                    Beck, Ross, Bismonte & Finley, LLP

4

5                                    By: _____

6                                        Craig Alan Hansen
                                         Attorneys for the Plaintiffs
7                                        Richard W. Berger and Brant W. Berger

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1

## **VERIFICATION**

2

3      I, Richard Berger, the plaintiff in the above-entitled action, have read the foregoing

4  Supplemental Responses to Interrogatories and know the contents thereof, and the same is true of

5  my own knowledge, except as to matters which are therein alleged on information and belief, and

6  as to those matters I believe them to be true.

7      I declare under penalty of perjury under the laws of the United States of America that the

8  foregoing is true and correct.  Executed on June 27, 2008 at Paso Robles, California.

9

10

11  _____
    Richard Berger

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 900
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

**PROOF OF SERVICE**

I am a citizen of the United States. My business address is Fairmont Plaza, 50 W. San Fernando St., 1300, San Jose, California 95113. I am employed in the County of Santa Clara where this service occurs. I am over the age of 18 years and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served the following document(s):

**RICHARD W. BERGER SUPPLEMENTAL RESPONSES TO DEFENDANT SEYFARTH SHAW FIRST SET OF INTERROGATORIES**

by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Eliot Peters
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111

Douglas B. Allen
BURNETT, BURNETT & ALLEN
333 W. San Carlos St., 8th Floor
San Jose, CA 95110

☒  (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Jose, California.

☐  (BY FAX) I caused such document(s) to be transmitted by facsimile on this date to the offices of the addressee(s).

☐  (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

☐  (BY OVERNIGHT DELIVERY) I caused such envelope(s) with postage thereon fully prepared to be delivered to a U.P.S. overnight pickup at San Jose, California.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on June 27, 2008.

JOSEFANIE J. GRACIANO

BECK, ROSS, BISMONTE & HNLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900