1  Justin T. Beck, Esq. (Cal. Bar No. 53138)
2  Ron C. Finley, Esq. (Cal. Bar No. 200549)
   Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
3  Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
   Jeremy M. Duggan, Esq. (Cal. Bar No. 229854)
   Beck, Ross, Bismonte & Finley, LLP
4  50 West San Fernando Street, Suite 1300
   San Jose, CA 95113
5  Tel: (408) 938-7900
   Fax: (408) 938-0790
6  Email: jbeck@beckross.com
7         rfinley@beckross.com
          abismonte@beckross.com
8         chansen@beckross.com
          jduggan@beckross.com
9
   Attorneys for Plaintiffs
10 Richard W. Berger and Brant W. Berger

11

12            **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15

16 RICHARD W. BERGER and BRANT W.          **Case No. C07-05279 JSW**
   BERGER,
17                                          **BRANT BERGER RESPONSES TO**
              Plaintiffs,                   **DEFENDANT SEYFARTH SHAW FIRST**
18                                          **SET OF INTERROGATORIES**
          v.
19
   SEYFARTH SHAW LLP, an Illinois limited
20 liability partnership; JACK L. SLOBODIN,
   an individual; BURNETT, BURNETT, &
21 ALLEN, a California partnership;
   DOUGLAS B. ALLEN, an individual;
22 and DOES 1-100, inclusive;

23            Defendants.

24

25        Defendant Brant Berger ("Responding Party"), by and through his attorneys, hereby

26 responds to Defendant Seyfarth Shaw, LLP ("Seyfarth") Interrogatories, Set No. One, pursuant to

27 Rule 33 of the Federal Rules of Civil Procedure as follows:

28            **GENERAL STATEMENTS AND OBJECTIONS**

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1.    Responding Party has not completed discovery, investigation of the facts, witnesses, or documents, analysis of available information, or preparation for trial in this case. Responding Party reserves the right to supplement or amend these responses in the event that any facts, documents, or other evidence may be subsequently discovered.

2.    These responses are made without prejudice to Responding Party's right to introduce facts, documents, testimony, witnesses, or other evidence that may be subsequently discovered.

3.    These responses are made without prejudice to Responding Party's right to supplement or amend these responses in the event that any information previously available to Responding Party may have been omitted by oversight, inadvertence, or good faith error or mistake.

4.    Except for the facts explicitly stated herein, no incidental or implied admissions are intended.

5.    All responses are made without waiver and with preservation of:

5.1.    all questions or objections as to competency, relevancy, materiality, privilege, probative value and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action (including the trial of this action) and in any other action or matter;

5.2.    the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action (including the trial or arbitration of this action) and in any other action or matter;

5.3.    the right to object on any ground at any time to a demand or interrogatory for further responses to these or any other discovery requests or proceedings involved or related to the subject matter of the information/documents provided or the discovery to which these responses are provided; and

5.4.    the right at any time, up to and including trial, to review, correct, add to, supplement or clarify any of the responses contained herein.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

5.5     all objections as to vagueness, ambiguity, unintelligibility, and overbreadth.

6.     Nothing herein shall be construed as an admission by Responding Party regarding the admissibility or relevance of any fact or document or of the truth or accuracy of any characterization contained in Seyfarth's discovery requests.

7.     These responses are signed by counsel only as to the objections set forth in the responses. Responding Party specifically asserts the attorney-client privilege and the work product doctrine as to each and every response set forth herein.

8.     Responding Party objects to these interrogatories to the extent they seek the disclosure of information or material protected by the attorney-client privilege, work product doctrine, or any other applicable privilege, immunity, or similar protection. Responding Party does not intend to produce such privileged or protected information, documents, or other material; and the inadvertent or unintentional disclosure of such shall not be deemed a waiver of any such privilege or protection. Responding Party expressly reserves the right to object to the introduction at trial or in any other proceeding or any other use of such information or material that may be inadvertently or unintentionally disclosed.

9.     Responding Party objects to these interrogatories to the extent they seek information not relevant to any claim or defense of any party in this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or that it falls outside the scope of discoverable information under the Federal Rules of Civil Procedure, the local rules of this Court, and any Orders entered in this action.

10.     Responding Party objects on the ground of undue burden the production of any information previously provided to Seyfarth or that may be derived or ascertained from information, documents, or other material produced or disclosed by Responding Party or from examination of such information, documents, or other material and for which the burden of deriving or ascertaining the information is substantially the same for Seyfarth as it is for Responding Party.

11.     Responding Party generally objects to Seyfarth's interrogatories on the ground that they lack any reasonable limitation on the time period for which responsive information is sought;

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1   and are therefore burdensome, oppressive, overly broad, and not reasonably calculated to lead to

2   the discovery of admissible evidence.

3       12.    Responding Party objects to producing any trade secret or confidential information

4   belonging to Responding Party or any trade secret or confidential information belonging to other

5   persons or entities.

6       13.    The fact that part or all of any discovery request has been responded to, in whole or

7   in part, should not be construed to be a waiver of any objection to any discovery request.

8       14.    To the extent that specific objections are cited herein in response to specific

9   requests or demands, those specific objections are provided out of an abundance of caution and

10  because they are believed to be particularly applicable to such request or demand.  Such specific

11  objections shall not constitute a waiver of any of the General Objections.

**OBJECTIONS TO INSTRUCTIONS**

13      15.    Responding Party objects to each instruction served with Seyfarth's Interrogatories

14  to the extent that each instruction purports to impose, either expressly or by implication, any

15  obligations on Responding Party beyond those required by the Federal Rules of Civil Procedure.

16      16.    Responding Party objects to each instruction served with Seyfarth's Interrogatories

17  to the extent that each instruction could be interpreted to require Responding Party to obtain,

18  disclose, or produce information, documents, witnesses, or other material not within its possession,

19  custody, or control.

**RESPONSES TO INTERROGATORIES**

21      Responding Party responds to each and every discovery request subject to the foregoing

22  statements and objections, each of which is incorporated by reference into each of the following

23  responses, as though fully set forth therein.  Responding Party's specific objections to any

24  interrogatory shall not be construed to preclude, override, or withdraw any of the foregoing

25  objections.

26  <u>INTERROGATORY NO. 1:</u>

27      Please IDENTIFY with as much precision as possible the time period during which YOU

28  contend SEYFARTH represented YOU in the UNDERLYING LITIGATION.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

RESPONSE TO INTERROGATORY NO. 1:

Seyfarth represented plaintiffs Richard Berger and Brant Berger (the Bergers) from August 5, 2003 through the final handling of the Federal Circuit appeal in the *Berger v. Rossignol* action on or about January 16, 2007.

INTERROGATORY NO. 2:

Please IDENTIFY ALL facts available to YOU supporting YOUR contention about the time period during which SEYFARTH represented YOU in the UNDERLYING LITIGATION, including, but not limited to, when and how SEYFARTH *became* YOUR Attorney, when and how SEYFARTH *ceased* to be YOUR attorney, and ALL DOCUMENTS supporting this contention.

RESPONSE TO INTERROGATORY NO. 2:

Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and unduly burdensome in that it requests identification of "all facts" concerning events that took place over a period of 3.5 year period. Without waiver of those objections, responding party responds as follows:

The Bergers initially met with Seyfarth attorney, Jack Slobodin, on August 5, 2003. Prior to that meeting, the Berger's patent attorney, Reginald Suyat, sent Slobodin a copy of U.S. Patent No. 5,913,530 (the '530 patent) on June 6, 2003 and a copy of U.S. Patent No. 6,196,569 B1 (the '569 patent) on June 11, 2003.

During the August 5, 2003 meeting, the Bergers shared their confidential case strategy and evaluation of their prospective case against Rossignol. The Bergers also sought and obtained Slobodin's advice about when and how to proceed with their action against Rossignol, including when to file that action in light of issues pertaining to the statute of limitations and a possible laches defense by Rossignol. During and following that meeting, the Bergers reasonably believed that they were consulting with Slobodin in his professional capacity as a Seyfarth attorney.

On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers'

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1   infringement claim against Rossignol, their estimation of recoverable damages, and their general

2   strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of

3   the attachments to be confidential."

4           On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the

5   Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings

6   do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement,

7   we [Seyfarth] can make a relatively large fee without putting too much into the case."

8           On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

9   for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat

10  claim chart).

11          On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding

12  he had used to produce the Suyat Claim Charts.

13          On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a

14  memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that

15  Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the

16  claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

17          In preparing to file their patent infringement action against Rossignol, plaintiffs also

18  retained defendants Douglas B. Allen and Burnett, Burnett, & Allen (collectively "Allen").  Allen

19  had no prior experience in handling patent infringement actions, but had represented plaintiffs in

20  real estate matters.  Accordingly, Slobodin and Seyfarth agreed to collaborate with Allen and

21  provide the requisite advice and assistance to Allen in handling the patent infringement action

22  against Rossignol.

23          Shortly after the Berger's initial discussions with Slobodin, Slobodin was injured in a

24  skiing accident.  As a result, the Bergers waited to file their patent infringement against Rossignol

25  until after Slobodin had recovered from his injuries.

26          On June 2005, plaintiffs (through defendant Allen) filed their patent infringement action

27  against Rossignol alleging infringement of the '530 patent and the '569 patent in the United States

28  District Court for the Northern District of California, styled Berger v. Rossignol Ski Company,

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1  Inc., Case No. 3:05-CV-02523-CRB.

2      The District Court held the initial Case Management Conference in Berger v. Rossignol on

3  November 18, 2005.  On or about the same day, Allen met with Slobodin and Suyat to discuss and

4  strategize concerning plaintiffs' pending action against Rossignol.  During that meeting

5  confidential attorney-client and attorney-work-product information was exchanged with Slodobin

6  and his legal opinions concerning the *Berger v. Rossignol* case were requested and obtained.  After

7  that meeting, Slobodin assured plaintiffs that he would advise and supervise Allen to make sure all

8  procedures were followed and all deadlines were met and would file a formal appearance in that

9  litigation shortly.  He also advised plaintiffs that the case was in an inactive state and that there

10  was nothing for them to worry about.

11      On or about December 16, 2005, Allen wrote to Slobodin, with a copy to Suyat, asking for

12  the "Claim Chart" to serve with plaintiffs' infringement contentions.  Allen also indicated that he

13  had left "a couple of voicemail messages" with Slobodin concerning that matter.

14      On or about January 3, 2006, Slobodin provided Allen with the claim chart prepared by J.

15  Terry Stratman of Seyfarth Shaw.  Slobodin also forwarded a Seyfarth Shaw memorandum

16  concerning the '569 patent, but without explaining the appropriate legal steps that Allen should

17  take in light of that memorandum.

18      The following day, on January 4, 2006, Allen served on Rossignol "Supplemental Initial

19  Disclosure Pursuant to Patent Local Rule 3-1 Disclosure of Asserted Claims and Preliminary

20  Infringement Contentions" (the Defective Infringement Contentions).  This included and was

21  based upon the Seyfarth Shaw Claim Chart for the '530 patent that Slobodin had just sent.

22      On February 21, 2006, Rossignol filed a motion for summary judgment based on the

23  defects contained in the Seyfarth claim chart.

24      On March 6, 2006, the Bergers signed a formal engagement letter with Seyfarth.

25      On March 14, 2006, Seyfarth filed its formal appearance in the Berger v. Rossignol patent

26  litigation.

27      Thereafter, Seyfarth acted as the Bergers' counsel of record in the *Berger v. Rossignol*

28  matter through the remaining proceedings before the United States District Court and the Federal

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    Circuit.

2

3    INTERROGATORY NO. 3:

4         Please describe the scope of the attorney-client relationship that YOU contend existed

5    between YOU and SEYFARTH, including ANY changes to the scope of that relationship that

6    YOU may contend took place during the course of that relationship and the dates on which those

7    changes occurred.

8    RESPONSE TO INTERROGATORY NO. 3:

9         From August 5, 2003 through January 16, 2007, Seyfarth acted as the Bergers' attorney on

10   all matters pertaining to the Bergers' claims against Rossignol for patent infringement.

11

12   INTERROGATORY NO. 4:

13        Please IDENTIFY with as much precision as possible the time period during which YOU

14   contend Jack L. Slobodin represented YOU in the UNDERLYING LITIGATION.

15   RESPONSE TO INTERROGATORY NO. 4:

16        Plaintiffs draw no distinction between their representation by Seyfarth and their

17   representation by Slobodin.  At all times from August 5, 2003 through January 16, 2007, Slobodin

18   was acting in his capacity as a Seyfarth attorney.  Accordingly, please see response to

19   Interrogatory No. 1.

20

21   INTERROGATORY NO. 5:

22        Please IDENTIFY ALL Facts available to YOU supporting YOUR contention about the

23   time period during which Jack L. Slobodin represented YOU in the UNDERLYING

24   LITIGATION, including but not limited to when and how Slobodin *became* YOUR attorney, when

25   and how Slobodin *ceased* to be YOUR attorney, and ALL DOCUMENTS supporting this

26   contention.

27   RESPONSE TO INTERROGATORY NO. 5:

28        Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1 unduly burdensome in that it requests identification of "all facts" concerning events that took place

2 over a period of 3.5 year period.  Without waiver of those objections, responding party responds as

3 follows:

4     Plaintiffs draw no distinction between their representation by Seyfarth and their

5 representation by Slobodin.  At all times from August 5, 2003 through January 16, 2007, Slobodin

6 was acting in his capacity as a Seyfarth attorney.  Accordingly, please see response to

7 Interrogatory No. 2.

8

9 **INTERROGATORY NO. 6:**

10     Please describe the scope of the attorney-client relationship that related in any way to the

11 UNDERLYING LITIGATION that YOU contend existed between YOU and Jack L. Slobodin,

12 including ANY Changes to the scope of that relationship that YOU may contend took place during

13 the course of that relationship and the dates on which those changes occurred.

14 **RESPONSE TO INTERROGATORY NO. 6:**

15     Plaintiffs draw no distinction between their representation by Seyfarth and their

16 representation by Slobodin.  At all times from August 5, 2003 through January 16, 2007, Slobodin

17 was acting in his capacity as a Seyfarth attorney.  Accordingly, please see response to

18 Interrogatory No. 3.

19

20 **INTERROGATORY NO. 7:**

21     Please IDENTIFY ALL facts available to YOU supporting YOUR contention that

22 SEYFARTH breached any contract with YOU, including identification of the contract(s), their

23 operative dates, the acts constituting breaches, the materiality of those breaches, and ALL

24 DOCUMENTS supporting this contention.

25 **RESPONSE TO INTERROGATORY NO. 7:**

26     Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and

27 unduly burdensome in that it requests identification of "all facts" concerning events that took place

28 over a period of 3.5 year period.  Without waiver of those objections, responding party responds as

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

follows:

From August 5, 2003 through March 13, 2006, plaintiffs and Seyfarth had an implied-in-fact attorney-client agreement and relationship. On March 14, 2006, the parties signed a formal written agreement.

Seyfarth and Slobodin breached its agreement with the Bergers by:

- Failing to provide promised supervision, direction, and support to Allen before and during the *Berger v. Rossignol* litigation;

- Preparing a defective claim chart and legal memorandum concerning the '530 and '569 patents and transmitting them to Allen for use in plaintiffs' preliminary infringement contentions;

- Falsely representing to plaintiffs during a March 19, 2006 meeting (and thereafter) that the defective Seyfarth claim chart was in fact prepared by plaintiffs' patent attorney, Reginald Suyat;

- Falsely representing to plaintiffs on April 28, 2006 via an e-mail from David Newman that Seyfarth would file on plaintiffs' behalf a "motion under Rule 60 focusing on the mistake that Doug made by submitting the preliminary draft claim chart including an error (with respect to identifying the lower attachment as item 4, the base plate) without reviewing the chart or having another patent attorney review the chart before it was filed";

- Willfully and actively concealing from plaintiffs, the District Court, and the Federal Circuit, that the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- Willfully and actively concealing from plaintiffs, the District Court, and the Federal Circuit, that Seyfarth had been involved in the *Berger v. Rossignol* matter for years before it made its official appearance on March 14, 2006;

- Falsely representing to the District Court that Seyfarth had no significant involvement in the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- Falsely representing to the District Court that Seyfarth had billed no time to the *Berger v.*

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    *Rossignol* matter before Rossignol filed its motion for summary judgment;

2    • Falsely representing to the Federal Circuit that Seyfarth did not know why plaintiffs'

3    Preliminary Infringement Contentions included no claims as to the '569 patent; and

4    • Failing to maintain prompt, open, honest, and frank communication so as to ensure

5    competent representation of plaintiffs.

6

7    INTERROGATORY NO. 8:

8    Please IDENTIFY ALL facts available to YOU supporting YOUR contention that

9    SEYFARTH breached any fiduciary duty owed to YOU, including identification of how the duty

10   arose, when it began and ended, the acts constituting breaches, and the materiality of those

11   breaches.

12   RESPONSE TO INTERROGATORY NO. 8:

13   Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and

14   unduly burdensome in that it requests identification of "all facts" concerning events that took place

15   over a period of 3.5 year period. Without waiver of those objections, responding party responds as

16   follows:

17   At all times from August 5, 2003 through January 16, 2007, Seyfarth and Slobodin owed

18   plaintiffs fiduciary duties by virtue of their attorney client relationship.

19   Seyfarth and Slobodin breached those duties owed to the Bergers by:

20   • Failing to provide promised supervision, direction, and support to Allen before and during

21   the *Berger v. Rossignol* litigation;

22   • Preparing a defective claim chart and legal memorandum concerning the '530 and '569

23   patents and transmitting them to Allen for use in plaintiffs' preliminary infringement

24   contentions;

25   • Falsely representing to plaintiffs during a March 19, 2006 meeting (and thereafter) that the

26   defective Seyfarth claim chart was in fact prepared by plaintiffs' patent attorney, Reginald

27   Suyat;

28   • Falsely representing to plaintiffs on April 28, 2006 via an e-mail from David Newman that

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

Seyfarth would file on plaintiffs' behalf a "motion under Rule 60 focusing on the mistake that Doug made by submitting the preliminary draft claim chart including an error (with respect to identifying the lower attachment as item 4, the base plate) without reviewing the chart or having another patent attorney review the chart before it was filed";

- Willfully and actively concealing from plaintiffs, the District Court, and the Federal Circuit, that the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- Willfully and actively concealing from plaintiffs, the District Court, and the Federal Circuit, that Seyfarth had been involved in the *Berger v. Rossignol* matter for years before it made its official appearance on March 14, 2006;

- Falsely representing to the District Court that Seyfarth had no significant involvement in the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- Falsely representing to the District Court that Seyfarth had billed no time to the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- Falsely representing to the Federal Circuit that Seyfarth did not know why plaintiffs' Preliminary Infringement Contentions included no claims as to the '569 patent; and

- Failing to maintain prompt, open, honest, and frank communication so as to ensure competent representation of plaintiffs.


<u>INTERROGATORY NO. 9:</u>

Please IDENTIFY ALL facts available to YOU supporting YOUR contention that SEYFARTH defrauded YOU, including identification of each false representations made by SEYFARTH and/or each fact concealed by SEYFARTH and, for each such misrepresentation or concealment, (a) when that misrepresentation or concealment took place (b) all facts that demonstrate YOUR reliance on the misrepresentation or concealment; (c) all facts that demonstrate that such reliance was justifiable, and (d) all facts that demonstrate that YOU suffered damages as a result of that reliance.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

## RESPONSE TO INTERROGATORY NO. 9:

Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and unduly burdensome in that it requests identification of "all facts" concerning events that took place over a period of 3.5 year period. Without waiver of those objections, responding party responds as follows:

Seyfarth defrauded plaintiffs by making false statements as well as actively concealing material information.

**False Statements**

Seyfarth made the following false statements to plaintiffs:

- Falsely representing to plaintiffs during a March 19, 2006 meeting (and thereafter) that the defective Seyfarth claim chart was in fact prepared by plaintiffs' patent attorney, Reginald Suyat;
- Falsely representing to plaintiffs on April 28, 2006 via an e-mail from David Newman that Seyfarth would file on plaintiffs' behalf a "motion under Rule 60 focusing on the mistake that Doug made by submitting the preliminary draft claim chart including an error (with respect to identifying the lower attachment as item 4, the base plate) without reviewing the chart or having another patent attorney review the chart before it was filed";

**Material Omissions**

Seyfarth failed to disclose the following material facts to plaintiffs:

- That Seyfarth would not provide promised supervision, direction, and support to Allen before and during the *Berger v. Rossignol* litigation;
- That Seyfarth prepared a defective claim chart and legal memorandum concerning the '530 and '569 patents and transmitted them to Allen for use in plaintiffs' preliminary infringement contentions;
- That the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that Seyfarth had been involved in the *Berger v. Rossignol* matter for years before it made its official appearance on March 14, 2006;

- That Seyfarth would falsely represent to the District Court that Seyfarth had no significant involvement in the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the District Court that Seyfarth had billed no time to the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the Federal Circuit that Seyfarth did not know why plaintiffs' Preliminary Infringement Contentions included no claims as to the '569 patent; and

- That Seyfarth would fail to maintain prompt, open, honest, and frank communication so as to ensure competent representation of plaintiffs.

The Bergers relied on the above misrepresentations and concealments by:

- Permitting Seyfarth to represent them (and continue to represent them) in the *Berger v. Rossignol* litigation;

- Not preventing Allen from serving defective infringement contentions based on the faulty Seyfarth claim chart and Stratman memorandum;

- Not sending the Seyfarth claim chart to their patent attorney, Reginald Suyat, to inquire as to its correctness;

- Not advising the District Court or the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions in fact resulted from faulty legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

served.

The Bergers' reliance was reasonable because they had no reason to believe that their attorneys would lie to them, conceal material information from them, cheat them, and put their own interests before those of the Bergers.

The Bergers were damaged by Seyfarth's misrepresentations and concealments because:

- The District Court denied plaintiffs' motion to amend their preliminary infringement contentions which was based on false pretenses;

- The District Court granted Rossignol's motion for summary judgment as plaintiffs' opposition was based on false pretenses;

- The District Court denied plaintiffs' Rule 60 motion which was based on false pretenses;

- The Federal Circuit affirmed the District Court rulings because plaintiffs' moving papers, oppositions papers, and arguments of counsel were all based on false pretenses.

INTERROGATORY NO. 10:

Please IDENTIFY ALL facts available to YOU supporting YOUR contention that SEYFARTH made negligent misrepresentations to YOU, including identification of each misrepresentations made by SEYFARTH and, for each such misrepresentation, (a) when that misrepresentation took place, (b) all facts that demonstrate YOUR reliance on the misrepresentation, (c) all facts that demonstrate that such reliance was justifiable, and (d) all facts that demonstrate that YOU suffered damages as a result of that reliance.

RESPONSE TO INTERROGATORY NO. 10:

Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and unduly burdensome in that it requests identification of "all facts" concerning events that took place over a period of 3.5 year period. Without waiver of those objections, responding party responds as follows:

Seyfarth committed negligent misrepresentation by making false statements as well as

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

actively concealing material information.

**False Statements**

Seyfarth made the following false statements to plaintiffs:

- Falsely representing to plaintiffs during a March 19, 2006 meeting (and thereafter) that the defective Seyfarth claim chart was in fact prepared by plaintiffs' patent attorney, Reginald Suyat;

- Falsely representing to plaintiffs on April 28, 2006 via an e-mail from David Newman that Seyfarth would file on plaintiffs' behalf a "motion under Rule 60 focusing on the mistake that Doug made by submitting the preliminary draft claim chart including an error (with respect to identifying the lower attachment as item 4, the base plate) without reviewing the chart or having another patent attorney review the chart before it was filed";

**Material Omissions**

Seyfarth failed to disclose the following material facts to plaintiffs:

- That Seyfarth would not provide promised supervision, direction, and support to Allen before and during the *Berger v. Rossignol* litigation;

- That Seyfarth prepared a defective claim chart and legal memorandum concerning the '530 and '569 patents and transmitted them to Allen for use in plaintiffs' preliminary infringement contentions;

- That the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions resulted from legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served;

- That Seyfarth would conceal from the District Court and the Federal Circuit that Seyfarth had been involved in the *Berger v. Rossignol* matter for years before it made

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

its official appearance on March 14, 2006;

- That Seyfarth would falsely represent to the District Court that Seyfarth had no significant involvement in the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the District Court that Seyfarth had billed no time to the *Berger v. Rossignol* matter before Rossignol filed its motion for summary judgment;

- That Seyfarth would falsely represent to the Federal Circuit that Seyfarth did not know why plaintiffs' Preliminary Infringement Contentions included no claims as to the '569 patent; and

- That Seyfarth would fail to maintain prompt, open, honest, and frank communication so as to ensure competent representation of plaintiffs.

The Bergers relied on the above misrepresentations and concealments by:

- Permitting Seyfarth to represent them (and continue to represent them) in the *Berger v. Rosignol* litigation;

- Not preventing Allen from serving defective infringement contentions based on the faulty Seyfarth claim chart and Stratman memorandum;

- Not sending the Seyfarth claim chart to their patent attorney, Reginald Suyat, to inquire as to its correctness;

- Not advising the District Court or the Federal Circuit that the errors in plaintiffs' preliminary infringement contentions in fact resulted from faulty legal work done by Seyfarth and transmitted to Allen the day before the infringement contentions were served.

The Bergers' reliance was reasonable because they had no reason to believe that their attorneys would lie to them, conceal material information from them, cheat them, and put their own interests before those of the Bergers.

The Bergers were damaged by Seyfarth's misrepresentations and concealments because:

- The District Court denied plaintiffs' motion to amend their preliminary

infringement contentions which was based on false pretenses;

- The District Court granted Rossignol's motion for summary judgment as plaintiffs' opposition was based on false pretenses;

- The District Court denied plaintiffs' Rule 60 motion which was based on false pretenses;

- The Federal Circuit affirmed the District Court rulings because plaintiffs' moving papers, oppositions papers, and arguments of counsel were all based on false pretenses.

INTERROGATORY NO. 11

For each of YOUR responses to SEYFARTHS's First Set of Requests for Admissions that is not an unqualified admission, IDENTIFY ALL facts and DOCUMENTS supporting YOUR response.

RESPONSE TO INTERROGATORY NO. 11:

Pursuant to Civil Local Rule 33-2 and the authority of *Yee v. Ventus Captial Services*[1] and *Wolk v. Green,*[2] this interrogatory will be treated as a separate interrogatory for each corresponding request for admission until the 25-interrogatory limit under Federal Rule of Civil Procedure 33 is exhausted.

Further, responding party objects to this interrogatory as being ambiguous, overbroad, and unduly burdensome in that it requests "all facts and documents" concerning events which occurred years ago and over a significant time-frame.

NO. 11:  REQUEST FOR ADMISSION NO. 2

"Admit that YOU did not have any contact with SEYFARTH prior to August 2003."

**Facts**

Plaintiffs contacted Seyfarth prior to August 2003 through their patent attorney, Reginald

---

[1] 2006 U.S. Dist. LEXIS 89822 (N.D. Cal. 2006).
[2] 2007 U.S. Dist. LEXIS 83148 (N.D. Cal. 2007).

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

Suyat.

**Documents**

The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

NO. 12:   REQUEST FOR ADMISSION NO. 3

"Admit that SEYFARTH was not YOUR attorney when in October 2003 Reginald Suyat sent Jack Slobodin claim charts regarding the '530 PATENT and the '560 PATENT."

**Facts**

By that time, plaintiffs had met with Slobodin on August 5, 2003, during which they shared their confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers also sought and obtained Slobodin's advice about when and how to proceed with their action against Rossignol, including when to file that action in light issues pertaining to the statute of limitations and a possible laches defense by Rossignol.  During and following that meeting, the Bergers reasonably believed that they were consulting with Slobodin in his professional capacity as a Seyfarth attorney.

On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers' infringement claim against Rossignol, their estimation of recoverable damages, and their general strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of the attachments to be confidential."

On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement, we [Seyfarth] can make a relatively large fee without putting too much into the case."

**Documents**

The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

The August 15, 2003 letter from Richard Berger to Slobodin.

The September 9, 2003 memorandum from Slobodin to Unikel.

## NO. 13:  REQUEST FOR ADMISSION NO. 4

"Admit that SEYFARTH was not YOUR attorney when J. Terry Stratman prepared a memo titled 'Berger v. Rossignol Infringement of Berger's Patents,' dated December 22, 2003."

**Facts**

By that time, plaintiffs had met with Slobodin on August 5, 2003, during which they shared their confidential case strategy and evaluation of their prospective case against Rossignol. The Bergers also sought and obtained Slobodin's advice about when and how to proceed with their action against Rossignol, including when to file that action in light issues pertaining to the statute of limitations and a possible laches defense by Rossignol. During and following that meeting, the Bergers reasonably believed that they were consulting with Slobodin in his professional capacity as a Seyfarth attorney.

On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers' infringement claim against Rossignol, their estimation of recoverable damages, and their general strategy for the *Rossignol* action. That letter closes with: "Please consider this document and all of the attachments to be confidential."

On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement, we [Seyfarth] can make a relatively large fee without putting too much into the case."

On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat claim chart).

**Documents**

The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

The August 15, 2003 letter from Richard Berger to Slobodin.

The September 9, 2003 memorandum from Slobodin to Unikel.

The October 13, 2003 fax from Suyat to Slobodin.


NO. 14:  REQUEST FOR ADMISSION NO. 6

"Admit that SEYFARTH was not YOUR attorney at any time in 2003."

**Facts**

Plaintiffs had met with Slobodin on August 5, 2003, during which they shared their confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers also sought and obtained Slobodin's advice about when and how to proceed with their action against Rossignol, including when to file that action in light issues pertaining to the statute of limitations and a possible laches defense by Rossignol.  During and following that meeting, the Bergers reasonably believed that they were consulting with Slobodin in his professional capacity as a Seyfarth attorney.

On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers' infringement claim against Rossignol, their estimation of recoverable damages, and their general strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of the attachments to be confidential."

On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement, we [Seyfarth] can make a relatively large fee without putting too much into the case."

On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat claim chart).

On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding he had used to produce the Suyat Claim Charts.

On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

**Documents**

The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

The August 15, 2003 letter from Richard Berger to Slobodin.

The September 9, 2003 memorandum from Slobodin to Unikel.

The October 13, 2003 fax from Suyat to Slobodin.

The December 15, 2003 correspondence from Suyat to Unikel.

The December 22, 2003 Stratman memorandum.

NO. 15:  REQUEST FOR ADMISSION NO. 7

"Admit that in 2004 SEYFARTH agreed to represent YOU in contemplated litigation against Rossignol only if YOU provided a $200,000 retainer."

**Facts**

By that time, Seyfarth and plaintiffs had entered into an implied-in-fact attorney-client relationship.  Plaintiffs had met with Slobodin on August 5, 2003, during which they shared their confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers also sought and obtained Slobodin's advice about when and how to proceed with their action against Rossignol, including when to file that action in light issues pertaining to the statute of limitations and a possible laches defense by Rossignol.  During and following that meeting, the Bergers reasonably believed that they were consulting with Slobodin in his professional capacity

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    as a Seyfarth attorney.

2        On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with

3 multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's

4 infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers'

5 infringement claim against Rossignol, their estimation of recoverable damages, and their general

6 strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of

7 the attachments to be confidential."

8        On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the

9 Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings

10 do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement,

11 we [Seyfarth] can make a relatively large fee without putting too much into the case."

12        On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

13 for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat

14 claim chart).

15        On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding

16 he had used to produce the Suyat Claim Charts.

17        On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a

18 memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that

19 Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the

20 claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

21    **Documents**

22       The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

23       The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

24       The August 15, 2003 letter from Richard Berger to Slobodin.

25       The September 9, 2003 memorandum from Slobodin to Unikel.

26       The October 13, 2003 fax from Suyat to Slobodin.

27       The December 15, 2003 correspondence from Suyat to Unikel.

28       The December 22, 2003 Stratman memorandum.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1

2    NO. 16:  REQUEST FOR ADMISSION NO. 10

3        "Admit that SEYFARTH was not YOUR attorney at any time in 2004."

4        **Facts**

5        By that time, Seyfarth and plaintiffs had entered into an implied-in-fact attorney-client

6    relationship.  Plaintiffs had met with Slobodin on August 5, 2003, during which they shared their

7    confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers

8    also sought and obtained Slobodin's advice about when and how to proceed with their action

9    against Rossignol, including when to file that action in light issues pertaining to the statute of

10   limitations and a possible laches defense by Rossignol.  During and following that meeting, the

11   Bergers reasonably believed that they were consulting with Slobodin in his professional capacity

12   as a Seyfarth attorney.

13        On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with

14   multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's

15   infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers'

16   infringement claim against Rossignol, their estimation of recoverable damages, and their general

17   strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of

18   the attachments to be confidential."

19        On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the

20   Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings

21   do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement,

22   we [Seyfarth] can make a relatively large fee without putting too much into the case."

23        On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

24   for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat

25   claim chart).

26        On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding

27   he had used to produce the Suyat Claim Charts.

28        On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a

memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

**Documents**

The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

The August 15, 2003 letter from Richard Berger to Slobodin.

The September 9, 2003 memorandum from Slobodin to Unikel.

The October 13, 2003 fax from Suyat to Slobodin.

The December 15, 2003 correspondence from Suyat to Unikel.

The December 22, 2003 Stratman memorandum.

NO. 17:  REQUEST FOR ADMISSION NO. 11

"Admit that Jack L. Slobodin informed YOU prior to June 21, 2005 that SEYFARTH could not represent YOU in contemplated litigation against Rossignol."

**Facts**

Slobodin made no such statement.  In fact, Slobodin did represent the Bergers in contemplated litigation against Rossignol.

**Documents**

Responding party is not aware of any documents demonstrating the absence of a statement by Slobodin.

NO. 18:  REQUEST FOR ADMISSION NO. 13

"Admit that SEYFARTH was not YOUR attorney on June 21, 2005."

**Facts**

By that time, Seyfarth and plaintiffs had entered into an implied-in-fact attorney-client relationship.  Plaintiffs had met with Slobodin on August 5, 2003, during which they shared their confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

also sought and obtained Slobodin's advice about when and how to proceed with their action against Rossignol, including when to file that action in light issues pertaining to the statute of limitations and a possible laches defense by Rossignol. During and following that meeting, the Bergers reasonably believed that they were consulting with Slobodin in his professional capacity as a Seyfarth attorney.

On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers' infringement claim against Rossignol, their estimation of recoverable damages, and their general strategy for the *Rossignol* action. That letter closes with: "Please consider this document and all of the attachments to be confidential."

On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement, we [Seyfarth] can make a relatively large fee without putting too much into the case."

On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat claim chart).

On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding he had used to produce the Suyat Claim Charts.

On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

**Documents**

The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

The August 15, 2003 letter from Richard Berger to Slobodin.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    The September 9, 2003 memorandum from Slobodin to Unikel.

2    The October 13, 2003 fax from Suyat to Slobodin.

3    The December 15, 2003 correspondence from Suyat to Unikel.

4    The December 22, 2003 Stratman memorandum.

6    NO. 19:  REQUEST FOR ADMISSION NO. 14

7    "Admit that SEYFARTH was not YOUR attorney on September 28, 2005."

8    **Facts**

9    By that time, Seyfarth and plaintiffs had entered into an implied-in-fact attorney-client

10   relationship.  Plaintiffs had met with Slobodin on August 5, 2003, during which they shared their

11   confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers

12   also sought and obtained Slobodin's advice about when and how to proceed with their action

13   against Rossignol, including when to file that action in light issues pertaining to the statute of

14   limitations and a possible laches defense by Rossignol.  During and following that meeting, the

15   Bergers reasonably believed that they were consulting with Slobodin in his professional capacity

16   as a Seyfarth attorney.

17   On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with

18   multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's

19   infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers'

20   infringement claim against Rossignol, their estimation of recoverable damages, and their general

21   strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of

22   the attachments to be confidential."

23   On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the

24   Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings

25   do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement,

26   we [Seyfarth] can make a relatively large fee without putting too much into the case."

27   On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

28   for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1  claim chart).

2      On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding

3  he had used to produce the Suyat Claim Charts.

4      On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a

5  memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that

6  Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the

7  claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

8  **Documents**

9      The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

10      The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

11      The August 15, 2003 letter from Richard Berger to Slobodin.

12      The September 9, 2003 memorandum from Slobodin to Unikel.

13      The October 13, 2003 fax from Suyat to Slobodin.

14      The December 15, 2003 correspondence from Suyat to Unikel.

15      The December 22, 2003 Stratman memorandum.

16

17

18  NO. 20:  REQUEST FOR ADMISSION NO. 15

19      "Admit that SEYFARTH was not YOUR attorney when Douglas B. Allen met with Jack L.

20  Slobodin and Reginald Suyat on November 18, 2005, after the case management conference in the

21  UNDERLYING LITIGATION."

22  **Facts**

23      By that time, Seyfarth and plaintiffs had entered into an implied-in-fact attorney-client

24  relationship.  Plaintiffs had met with Slobodin on August 5, 2003, during which they shared their

25  confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers

26  also sought and obtained Slobodin's advice about when and how to proceed with their action

27  against Rossignol, including when to file that action in light issues pertaining to the statute of

28  limitations and a possible laches defense by Rossignol.  During and following that meeting, the

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    Bergers reasonably believed that they were consulting with Slobodin in his professional capacity

2    as a Seyfarth attorney.

3      On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with

4    multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's

5    infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers'

6    infringement claim against Rossignol, their estimation of recoverable damages, and their general

7    strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of

8    the attachments to be confidential."

9      On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the

10   Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings

11   do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement,

12   we [Seyfarth] can make a relatively large fee without putting too much into the case."

13     On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

14   for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat

15   claim chart).

16     On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding

17   he had used to produce the Suyat Claim Charts.

18     On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a

19   memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that

20   Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the

21   claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

22     On November 18, 2005, Slobodin met with Allen and Suyat in his capacity as plaintiffs'

23   counsel.  During that meeting confidential attorney-client and attorney-work-product information

24   was exchanged with Slodobin and his legal opinions concerning the *Berger v. Rossignol* case were

25   requested and obtained.  After that meeting, Slobodin assured plaintiffs that he would advise and

26   supervise Allen to make sure all procedures were followed and all deadlines were met and would

27   file a formal appearance in that litigation shortly.  He also advised plaintiffs that the case was in an

28   inactive state and that there was nothing for them to worry about.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

**Documents**

The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

The August 15, 2003 letter from Richard Berger to Slobodin.

The September 9, 2003 memorandum from Slobodin to Unikel.

The October 13, 2003 fax from Suyat to Slobodin.

The December 15, 2003 correspondence from Suyat to Unikel.

The December 22, 2003 Stratman memorandum.

Seyfarth Shaw's billing records.

NO. 21:  REQUEST FOR ADMISSION NO. 16

"Admit that SEYFARTH was not YOUR attorney on January 4, 2006 when Douglas B. Allen served preliminary infringement contentions in the UNDERLYING LITIGATION."

**Facts**

Responding party objects to this interrogatory as being vague, ambiguous, overbroad, and unduly burdensome in that it requests identification of "all facts" concerning events that took place over a period of 3.5 year period.  Without waiver of those objections, responding party responds as follows:

The Bergers initially met with Seyfarth attorney, Jack Slobodin, on August 5, 2003.  Prior to that meeting, the Berger's patent attorney, Reginald Suyat, sent Slobodin a copy of U.S. Patent No. 5,913,530 (the '530 patent) on June 6, 2003 and a copy of U.S. Patent No. 6,196,569 B1 (the '569 patent) on June 11, 2003.

During the August 5, 2003 meeting, the Bergers shared their confidential case strategy and evaluation of their prospective case against Rossignol.  The Bergers also sought and obtained Slobodin's advice about when and how to proceed with their action against Rossignol, including when to file that action in light issues pertaining to the statute of limitations and a possible laches defense by Rossignol.  During and following that meeting, the Bergers reasonably believed that they were consulting with Slobodin in his professional capacity as a Seyfarth attorney.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    On August 15, 2003, the Bergers sent Slobodin a confidential three-page letter with

2  multiple attachments (which Slobodin had requested) detailing the prior history of Rossignol's

3  infringing activities and failed negotiations with the Bergers, explaining the basis for the Bergers'

4  infringement claim against Rossignol, their estimation of recoverable damages, and their general

5  strategy for the *Rossignol* action.  That letter closes with: "Please consider this document and all of

6  the attachments to be confidential."

7    On September 9, 2003, Slobodin wrote a memorandum to Alan L. Unikel, Chair of the

8  Intellectual Property Group at Seyfarth Shaw, expressing his opinion that the "Rossignol bindings

9  do seem to infringe" the Berger patents and stating that "If Rossignol is interested in settlement,

10  we [Seyfarth] can make a relatively large fee without putting too much into the case."

11    On October 13, 2003, Suyat sent Slobodin a copy of a claim chart that Suyat had prepared

12  for the Bergers explaining how Rossignol infringed the '530 patent and the '569 patent (the Suyat

13  claim chart).

14    On or about December 15, 2003 Suyat sent Unikel the mock-up of the Rossignol binding

15  he had used to produce the Suyat Claim Charts.

16    On or about December 22, 2003, J. Terry Stratman, a Seyfarth attorney, sent a

17  memorandum to Slodobin and Unikel stating that he agreed with Suyat's conclusions that

18  Rossignol's binding infringed the '530 and '569 patents and attached a "modified form of the

19  claim chart prepared by [Suyat]" (the Seyfarth Shaw Claim Charts).

20    In preparing to file their patent infringement action against Rossignol, plaintiffs also

21  retained defendants Douglas B. Allen and Burnett, Burnett, & Allen (collectively "Allen").  Allen

22  had no prior experience in handling patent infringement actions, but had represented plaintiffs in

23  real estate matters.  Accordingly, Slobodin and Seyfarth agreed to collaborate with Allen and

24  provide the requisite advice and assistance to Allen in handling the patent infringement action

25  against Rossignol.

26    Shortly after the Berger's initial discussions with Slobodin, Slobodin was injured in a

27  skiing accident.  As a result, the Bergers waited to file their patent infringement against Rossignol

28  until after Slobodin had recovered from his injuries.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    On June 2005, plaintiffs (through defendant Allen) filed their patent infringement action

2    against Rossignol alleging infringement of the '530 patent and the '569 patent in the United States

3    District Court for the Northern District of California, styled Berger v. Rossignol Ski Company,

4    Inc., Case No. 3:05-CV-02523-CRB.

5        The District Court held the initial Case Management Conference in Berger v. Rossignol on

6    November 18, 2005. On or about the same day, Allen met with Slobodin and Suyat to discuss and

7    strategize concerning plaintiffs' pending action against Rossignol. During that meeting

8    confidential attorney-client and attorney-work-product information was exchanged with Slodobin

9    and his legal opinions concerning the *Berger v. Rossignol* case were requested and obtained. After

10   that meeting, Slobodin assured plaintiffs that he would advise and supervise Allen to make sure all

11   procedures were followed and all deadlines were met and would file a formal appearance in that

12   litigation shortly. He also advised plaintiffs that the case was in an inactive state and that there

13   was nothing for them to worry about.

14       On or about December 16, 2005, Allen wrote to Slobodin, with a copy to Suyat, asking for

15   the "Claim Chart" to serve with plaintiffs' infringement contentions. Allen also indicated that he

16   had left "a couple of voicemail messages" with Slobodin concerning that matter.

17       On or about January 3, 2006, Slobodin provided Allen with the claim chart prepared by J.

18   Terry Stratman of Seyfarth Shaw. Slobodin also forwarded a Seyfarth Shaw memorandum

19   concerning the '569 patent, but without explaining the appropriate legal steps that Allen should

20   take in light of that memorandum.

21       The following day, on January 4, 2006, Allen served on Rossignol "Supplemental Initial

22   Disclosure Pursuant to Patent Local Rule 3-1 Disclosure of Asserted Claims and Preliminary

23   Infringement Contentions" (the Defective Infringement Contentions), including and based upon

24   the Seyfarth Shaw Claim Chart for the '530 patent that Slobodin had just sent.

25   **Documents**

26   The June 6, 2003 fax from Suyat to Slobodin attaching the '530 patent.

27   The June 11, 2003 fax from Suyat to Slobodin attaching the '569 patent.

28   The August 15, 2003 letter from Richard Berger to Slobodin.

1    The September 9, 2003 memorandum from Slobodin to Unikel.

2    The October 13, 2003 fax from Suyat to Slobodin.

3    The December 15, 2003 correspondence from Suyat to Unikel.

4    The December 22, 2003 Stratman memorandum.

5    The December 16, 2005 letter from Allen to Slobodin.

6    The January 3, 2006 e-mail from Seyfarth to Allen.

7    The January 4, 2006 preliminary infringement contentions.

8    Seyfarth Shaw's billing records.

9

10   NO. 22:  REQUEST FOR ADMISSION NO. 19

11       "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH had prepared a

12   memorandum, dated December 22, 2003, titled 'Berger v. Rossignol Infringement of Berger

13   Patents.'"

14       **Facts**

15       Plaintiffs do recall learning about the December 22, 2003 memorandum prior to February

16   21, 2006.

17       **Documents**

18       Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

19   regard.  However, the January 3, 2006 e-mail from Seyfarth to Allen transmitting the December

20   22, 2003 memorandum was not copied to responding party.

21

22   NO. 23:  REQUEST FOR ADMISSION NO. 20

23       "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH had prepared in

24   2003 a claim chart regarding Rossignol's alleged infringement of the '530 PATENT."

25       **Facts**

26       Plaintiffs did not learn that Seyfarth had prepared its own claim chart until after receiving

27   their files from Allen some time after the Federal Circuit affirmed the District Court rulings in the

28   *Berger v. Rossignol* action.

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1  **Documents**

2      Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

3  regard.

4

5  NO. 24:  REQUEST FOR ADMISSION NO. 21

6      "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH had prepared in

7  2003 a claim chart regarding Rossignol's alleged infringement of the '569 PATENT."

8      **Facts**

9      Plaintiffs had no such knowledge as of that time.

10      **Documents**

11      Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

12  regard.

13

14  NO. 25:  REQUEST FOR ADMISSION NO. 22

15      "Admit that, prior to February 21, 2006, YOU knew that SEYFARTH emailed to Douglas

16  B. Allen on January 3, 2006 a memorandum titled 'Berger v. Rossignol Infringement of Berger's

17  Patents' and dated December 22, 2003."

18      **Facts**

19      Plaintiffs had no such knowledge as of that time.

20      **Documents**

21      Plaintiffs are not aware of any documents demonstrating their absence of knowledge in this

22  regard.

23

24  PURPORTED INTERROGATORY NO. 12

25      Please IDENTIFY ALL individuals whom you communicated with at ANY time for the

26  purpose of obtaining legal counsel, advice, or representation in YOUR patent infringement action

27  against Rossignol.

28  RESPONSE TO PURPORTED INTERROGATORY NO. 11:

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

1    Responding party objects to this request as being overbroad, unduly burdensome,

2  oppressive, harassing, and calling for information that is protected by the attorney-client privilege,

3  attorney-work-product doctrine, is not relevant to the subject matter or reasonably calculated to

4  lead to the discovery of admissible evidence, and falls outside the parties' stipulated scope of

5  discovery under the Joint Case Management Conference Statement.

6    Responding party further objects to this interrogatory as exceeding the 25-interrogatory

7  limit under FRCP 33.  *See* Civil Local Rule 33-2 and *Yee v. Ventus Captial Services*[3] and *Wolk v.*

8  *Green.* [4]

9

10  Dated: April 30, 2008                    Beck, Ross, Bismonte & Finley, LLP

11

12                    By: _____

13                        Craig Alan Hansen
                          Attorneys for the Plaintiffs
14                        Richard W. Berger and Brant W. Berger

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
[3] 2006 U.S. Dist. LEXIS 89822 (N.D. Cal. 2006).
[4] 2007 U.S. Dist. LEXIS 83148 (N.D. Cal. 2007).

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

## VERIFICATION

    I, Brant Berger, the plaintiff in the above-entitled action, have read the foregoing Responses to Interrogatories and know the contents thereof, and the same is true of my own knowledge, except as to matters which are therein alleged on information and belief, and as to those matters I believe them to be true.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 29, 2008 at Morro Bay, California.


Brant Berger

DEAN ROSS, JANSON & FINLEY, LLP
FAIRMONT PLAZA
50 W. San Fernando St., 1300
San Jose, California 95113
Telephone (408) 938-7900

## PROOF OF SERVICE

I am a citizen of the United States. My business address is Fairmont Plaza, 50 W. San Fernando St., 1300, San Jose, California 95113. I am employed in the County of Santa Clara where this service occurs. I am over the age of 18 years and not a party to the within cause. I am readily familiar with my employer's normal business practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and that practice is that correspondence is deposited with the U.S. Postal Service the same day as the day of collection in the ordinary course of business.

On the date set forth below, following ordinary business practice, I served the following document(s):

BRANT BERGER RESPONSES TO DEFENDANT SEYFARTH SHAW FIRST SET OF INTERROGATORIES

by placing a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

Eliot Peters                          Douglas B. Allen
KEKER & VAN NEST, LLP                 BURNETT, BURNETT & ALLEN
710 Sansome Street                    333 W. San Carlos St., 8th Floor
San Francisco, CA 94111               San Jose, CA 95110

☒ (BY MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at San Jose, California.

☐ (BY FAX) I caused such document(s) to be transmitted by facsimile on this date to the offices of the addressee(s).

☐ (BY PERSONAL SERVICE) I caused such envelope(s) to be delivered by hand this date to the offices of the addressee(s).

☐ (BY OVERNIGHT DELIVERY) I caused such envelope(s) with postage thereon fully prepared to be delivered to a U.P.S. overnight pickup at San Jose, California.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on April 30, 2008.

_____
JOSEFANIE J. GRACIANO

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900