# EXHIBIT A

LAW OFFICES
# KEKER & VAN NEST
LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

DANIEL PURCELL
DPURCELL@KVN.COM

July 9, 2008

VIA E-FILING

The Honorable Jeffrey S. White
United States District Court for the Northern District of California
450 Golden Gate Avenue
Courtroom 2, 17th Floor
San Francisco, California 94102

  Re: **Berger, et al. v. Seyfarth Shaw LLP, et al.**, Case No. C07-05279 JSW

Your Honor:

Counsel for plaintiffs Richard and Brant Berger and defendants Jack Slobodin and Seyfarth Shaw LLP (collectively "Seyfarth") respectfully submit this joint letter summarizing the discovery issues in dispute and the parties' respective positions on them. Counsel for the parties met in person on June 11, 2008 to discuss issues identified by defendants in a letter of May 30, 2008. For the Court's convenience, we have attached excerpts from the transcripts of the depositions of Richard and Brant Berger as Exhibits A and B, plaintiffs' responses to Seyfarth's first set of interrogatories as Exhibit C, and Seyfarth's privilege log as Exhibit D.

## I. **Defendants' Position**

Plaintiffs have committed three kinds of discovery violations. First, their deposition conduct has repeatedly violated both this Court's Standing Order and Federal Rule of Civil Procedure 30(c)(2), through improper instructions not to answer, speaking objections, and witness coaching. Second, they have failed to provide complete responses to defendants' interrogatories. Third, they have used their interrogatory responses to extend the allegations of their Complaint.

First, during the recent depositions of the plaintiffs, counsel improperly instructed the plaintiffs not to answer numerous questions. *See* Ex. A (R. Berger) at 16:23-19:5, 20:6-15, 44:20-46:7, 46:9-12, 46:14-17, 46:19-48:22, 48:24-49:11, 78:3-79:6, 203:3-25, 204:1-8, 207:5-13, 210:1-211:17, 211:19-24; Ex. B (B. Berger) at 7:21-8:15, 28:21-30:14. A party may instruct a witness not to answer only when necessary to preserve a privilege or enforce a limitation ordered by the Court, neither of which grounds apply, or when immediately followed by a motion for protective order, which plaintiffs did not file. Plaintiffs' counsel repeatedly ignored these limitations. In particular, counsel instructed Richard Berger not to answer questions about whether John Branton, a key witness and future deponent, has any financial interest in this litigation. This unprivileged information is relevant to plaintiffs' ownership of their asserted malpractice claims,

The Honorable Jeffrey S. White
July 9, 2008
Page 2

their standing to sue under California law, and Mr. Branton's bias. The parties have agreed to divide discovery into a first phase for legal-malpractice issues and a second phase for the patent case-within-a-case. Plaintiffs argue that the questions about Mr. Branton are not within the first phase, but those issues relate to the Bergers' malpractice claims, not patent issues. Finally, counsel allowed Brant Berger (who had no knowledge of the issue) to answer the same questions they prevented Richard Berger from answering. Ex. B (B. Berger) at 223:20-226:4.

Further, on several occasions, the witness and counsel left the deposition room while a question was pending, despite defense counsel's protests. *See* Ex. A (R. Berger) at 103:8-104:13; Ex. B (B. Berger) at 9:19-10:18, 62:17-63:4, 108:19-110:1, 184:15-24. Plaintiffs did not take any of these breaks to determine whether to assert privilege. Plaintiffs now argue that the questions were not technically "pending" because they were asked and answered earlier in the deposition. In reality, the transcript shows that the relevant questions were never answered, but, in any event, that is not a valid reason to break and confer with a witness while a question is pending.

Plaintiffs' counsel also obstructed the depositions by making improper speaking objections, Ex. A (R. Berger) at 90:7-91:1; Ex. B (B. Berger) at 9:19-23, 10:19-11:22, 12:25-14:15, 25:23-27:19, 79:16-80:1, 149:21-151:1, 180:22-181:21, 184:8-13, 199:21-201:4, 219:25-220:24, 238:17-240:1) and coaching the witnesses, Ex. A (R. Berger) at 90:7-91:1; Ex. B (B. Berger) at 10:19-11:22, 12:25-14:15, 25:23-27:19, 74:18-75:10, 96:2-11, 97:2-99:8, 129:5-14, 136:1-9, 149:21-151:1, 175:24-176:2, 180:22-181:21, 192:13-20, 199:21-201:4, 219:25-220:24, 238:17-240:1. This violated the Court's deposition guidelines and Rule 30(c)(2), which requires that objections "be stated concisely in a nonargumentative and nonsuggestive manner." Contrary to plaintiffs' claim, during the June 11 meeting, which lasted over two hours, Seyfarth met and conferred about all of these instances of misconduct. During that meeting, plaintiffs' counsel specifically stated that plaintiffs disputed every instance of deposition misconduct identified by Seyfarth.

Second, plaintiffs' responses to Seyfarth's Interrogatories Nos. 7-8, which ask for identification of all facts supporting their contention that defendants breached a contract or fiduciary duty, were inadequate. Any breach of an alleged agreement, or of a fiduciary duty arising out of such an agreement, must involve a breach of some specific term(s) of the agreement. Plaintiffs have refused to identify the term(s) of any contract(s) that they had with defendants, which is an integral part of the factual basis of their claims. Ex. C at Rogs 7-8.

Third, in responding to Seyfarth's Interrogatories Nos. 9-10, plaintiffs allege misrepresentations and concealments beyond those alleged in their complaint. Specifically, plaintiffs allege that Seyfarth falsely represented that it would file a Rule 60 motion on a particular theory and failed to disclose that it would not supervise plaintiffs' co-counsel. Ex. C at Rogs 9-10. These allegations are nowhere found in plaintiffs' fraud and negligent misrepresentation claims in the complaint. Plaintiffs must plead all fraud allegations with particularity **in their complaint** under Rule 9(b); they may not raise new fraud allegations in discovery responses. They either must remove the new allegations from their responses, or seek leave to file an amended complaint.

As relief for plaintiffs' misconduct, Seyfarth asks for an order requiring plaintiffs to re-produce Richard Berger for deposition on every question he was improperly instructed not to answer, plus reasonable follow-up, and for reasonable monetary sanctions for the improper deposition

420957.01

The Honorable Jeffrey S. White
July 9, 2008
Page 3

conduct of plaintiffs' counsel. Seyfarth also asks this Court to order plaintiffs to provide fuller responses to its Interrogatories 7-8, as described above, and to conform the allegations of fraud and negligent misrepresentation in their complaint and their responses to Interrogatories 9-10.

Finally, plaintiffs failed to adequately meet and confer with Seyfarth about Seyfarth's privilege log. Although plaintiffs raised issues related to the log at the June 11 meeting, they never set forth their specific concerns in writing, as Seyfarth requested. Seyfarth served an amended log on June 27. On June 30, plaintiffs informed Seyfarth that their amended log was deficient and they would raise the issue with the Court. Seyfarth objected. On July 1, plaintiffs finally spelled out their concerns in writing. They have not met and conferred with Seyfarth on those concerns, or given Seyfarth any opportunity to correct any of the specific problems identified on July 1. Seyfarth is prepared to discuss these issues if the Court wishes, but they are not ripe for decision.

## II.    Plaintiffs' Position

<u>Plaintiffs' Depositions</u>: Defendants are indirectly asking this Court to allow them to back out of a binding stipulation governing the scope of discovery during the first phase of this litigation.

At the outset of this litigation, Seyfarth moved to dismiss plaintiffs' action on the basis that it was not plaintiffs' lawyer when the alleged malpractice occurred. During the parties' Rule 26(f) conference, Seyfarth's counsel expressed his confidence that Seyfarth would prevail on that issue—either upon Seyfarth's pending motion to dismiss or on a later motion for summary judgment—and agreed on Seyfarth's behalf to conduct discovery <u>on that one issue</u> until it was resolved by the court. Accordingly, on February 29, 2008, the parties filed a Joint Case Management Conference Statement identifying 21 issues in this case—but limiting discovery during the initial phase to *when* an attorney-client, contractual, or fiduciary relationship first arose between Seyfarth and Plaintiffs.[1]

When Seyfarth later lost its motion to dismiss, it asked the Bergers to also permit discovery on the issues of fraud and negligent misrepresentation. The Bergers agreed and a revised Joint CMC Statement reflecting that minor change was filed on April 11, 2008.[2]

During plaintiffs' May 12 and 14 depositions, Seyfarth's counsel seemed to have forgotten all about the stipulated scope of discovery. Rather than limiting his questions to the formation of the attorney-client relationship, fraud, and negligent misrepresentation, Seyfarths' counsel asked unrelated questions concerning the funding of plaintiffs' business Berger Enterprises, Inc. (BEI), BEI's interest in the outcome of the present malpractice action, and whether plaintiffs' accountant, John Branton, has such an interest. Plaintiffs' counsel properly objected to those questions and instructed plaintiffs not to answer.

During those depositions, plaintiffs also sought to address Seyfarth's improper questioning methods such as: (1) repeatedly asking the same question after it had been answered; (2) refusing to permit witness breaks because an answered question was supposedly still "pending"; (3) asking questions with a raised voice and intimidating demeanor; and (4) asking questions that

---

[1] Docket No. 55, § 4 (agreeing to limit discovery to Issues 1-6; 1-3 pertaining to Seyfarth and 4-6 to Allen).
[2] Docket No. 71, § 4 (adding issues 10 and 11 to the stipulated scope of discovery).

The Honorable Jeffrey S. White
July 9, 2008
Page 4

were confusing and unintelligible. Seyfarth responded to plaintiffs' meet and confer efforts with accusations of "speaking objections" and "coaching the witness." And Seyfarth refused Plaintiffs' offer to "clear up" any purportedly unanswered questions during the deposition. (Ex. B., 226:5-227:12). Seyfarth later refused to meet and confer on each of the purported acts of "deposition misconduct" by plaintiffs' counsel. The record will show that plaintiffs' counsel did nothing improper and only sought to manage Seyfarth's unorthodox deposition tactics.

<u>Plaintiffs' Interrogatory Responses</u>. Seyfarth is trying to re-write its interrogatories. (1) Interrogatory Nos. 7-8 ask about Seyfarth's breach of contract and fiduciary duty—not what the terms of that contract were. Plaintiffs answered the questioned asked. (2) Interrogatory No. 9-10 ask about fraud and concealment. Plaintiffs identified Seyfarth's active concealment of its preparation of the faulty claim chart during the filing of the Rule 60 motion—a fact discovered after the complaint was filed in this case. Seyfarth thinks plaintiffs must amend their complaint to add that fact—but offer no supporting authority. Plaintiffs disagree and note that the court deemed their allegations to be sufficient.

<u>Defendants' Privilege Log</u>. Plaintiffs have three significant concerns about Seyfarth's privilege log. (1) Seyfarth's deliberate concealment of its preparation of the faulty claim chart when filing the Rule 60 motion was directed by Seyfarth Partner, Peter Woodford. That is revealed by Seyfarth's billing records and its internal correspondence. Seyfarth now seeks to withhold communications involving Woodford on the basis of "attorney-client privilege" because Woodford also serves as Seyfarth's general counsel. It may not do so. Seyfarth also seeks to improperly withhold communications with Seyfarth Partner, Lawrence Butler as "attorney-client privileged" without any apparent basis to do so. (2) Seyfarth seeks to "redact" portions of the Reply it filed on the Rule 60 motion as being "non-responsive." All briefs and draft briefs should be produced in unredacted form. And (3) Seyfarth has failed to provide sufficient information for plaintiffs' to assess the basis for Seyfarth's other assertions of the attorney-client privilege. For example, it is unclear why communications between Alan Unikel (head of the Seyfarth IP litigation team) and Matthew Werber (a Seyfarth associate) about "unbilled charges" are protected by the Attorney-Client privilege; why e-mails from Richard Hausman to Regina Wyrick-Berry (both apparently non-attorneys) concerning "Slobodin's files" are protected by the Attorney-Client Privilege/Work Product Doctrine; and who the numerous people appearing in the "from" and "to" columns of Seyfarth's privilege log are. These are just a few examples of numerous items which require clarification.

Seyfarth should produce all communications between Seyfarth attorneys, all briefs in unredacted format, and all information necessary to assess the basis of asserted privileges.

Respectfully submitted,

/s/ Daniel Purcell
DANIEL PURCELL
KEKER & VAN NEST LLP

Attorneys for Defendants
SEYFARTH SHAW LLP and
JACK L. SLOBODIN

/s/ Craig Alan Hansen
CRAIG ALAN HANSEN
BECK, ROSS, BISMONTE & FINLEY, LLP

Attorneys for Plaintiffs
RICHARD W. BERGER and
BRANT W. BERGER

420957.01