LAW OFFICES
# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

TRAVIS LEBLANC
TLEBLANC@KVN.COM

August 21, 2008

VIA E-FILING

Magistrate Judge Maria-Elena James
United States District Court for the Northern District of California
450 Golden Gate Avenue
Courtroom B, 15th Floor
San Francisco, California 94102

   Re: **Berger, et al. v. Seyfarth Shaw LLP, et al.**, Case No. C07-05279 JSW

Your Honor:

Defendants Seyfarth Shaw LLP and Jack L. Slobodin (collectively, "Seyfarth"), plaintiffs Richard Berger and Brant Berger, and non-party John Branton respectfully submit this joint letter summarizing the parties' respective positions on discovery issues in dispute. Seyfarth served Branton with a subpoena for documents and testimony on April 14, 2008. After Branton objected, Seyfarth wrote Branton on May 22, 2008 and June 27, 2008, then met and conferred about disputed issues in person on July 11, 2008 and by telephone on July 21, 2008 and July 24, 2008. For the Court's convenience, we have attached Branton's Second Amended Privilege Log as Exhibit A, a redacted December 12, 2007 email (with attachments) from plaintiff Richard Berger to Branton as Exhibit B, and excerpts from the transcript of the depositions of plaintiffs Brant Berger and Richard Berger as Exhibits C and D.

## I. Defendants' Position

Plaintiffs' claims against Seyfarth arise from Seyfarth's representation of the Bergers in connection with a patent-infringement lawsuit they filed against Rossignol Ski Company, *Berger v. Rossignol Ski Co.*, N.D. Cal. Case No. 05-02523 CRB. Branton was previously Chief Financial Officer of Berger Enterprises, Inc. ("BEI"). Prior to suing Rossignol on two patents related to a snowboard binding, the Bergers formed BEI and assigned BEI all substantial rights to those two patents. Despite this assignment, neither Branton nor BEI was a party to the patent-infringement action. Neither Branton nor BEI has ever been represented by Seyfarth; neither is a party to this legal malpractice case; nor has either ever made any legal claim against Seyfarth.

But despite being a third party, Branton has numerous documents that are highly relevant to this case. Branton, who is not a lawyer himself, has been involved in discussions regarding the financing of both the *Rossignol* case and this lawsuit. First, with respect to the *Rossignol* case, plaintiffs and Branton have produced documents showing Branton provided plaintiffs with the financing necessary to hire counsel to sue Rossignol. In exchange, both in his individual capacity and as a representative of a separate corporate entity called B B Litigation Fund, LLC ("BBLF"), Branton received a financial

423733.01

interest in the Bergers' recovery against Rossignol.

Second, Branton also has produced documents showing he has once again financed the Bergers' litigation costs in this malpractice action against Seyfarth. The redacted documents in Exhibit B show that Branton, in his individual capacity and as a representative of BBLF, again contracted with the Bergers to fund this legal malpractice action in exchange for "1/3 of all of the Bergers **rights, titles, recovery and interest**" in the Seyfarth litigation. Ex. B at BRTN428 (emphasis added). Branton's documents regarding the Bergers' assignment of their malpractice claims to BBLF are especially important to Seyfarth's defense because it is a "well-established proposition that legal malpractice claims are not assignable as a matter of California public policy." *Curtis v. Kellogg & Andelson*, 73 Cal. App. 4th 492, 504 (1999) (citing cases). Indeed, the documents produced by Branton show he, the Bergers, and their respective counsel recognized and discussed the California-law bar on assignments of malpractice claims. *See* Ex. B at BRTN426. The language of the assignment contract shows the assignment was far broader than a provision for "access to proceeds" of the litigation, as the Bergers describe it. Accordingly, it is void.

Seyfarth writes this letter because Branton has wrongly withheld documents relevant to the above issues—not to mention his bias as a potential witness—based on improper assertions of privilege. First, Branton's communications with the Bergers and their attorneys are not themselves privileged. Branton has no attorney-client relationship with the Bergers or their lawyers with respect to this legal-malpractice case. Branton was never Seyfarth's client and could not be a plaintiff in this case. Indeed, with respect to this case, Branton has his own attorney and has engaged in arm's-length negotiations regarding financing issues. Accordingly, the Bergers' and their counsel's voluntary disclosures to Branton waived any privilege in these documents, unless some exception to the waiver rules applies. *See Weil v. Inv., Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *Ins. Co. of N. Am. v. Super. Ct.*, 108 Cal. App. 3d 758, 766 (Ct. App. 1980); *e.g., id.* Docs. 3-5, 13-21.

Second, neither can Branton legitimately argue that the Bergers did not waive privilege by sharing this material with him because of an alleged common interest in the subject matter of this case. In his meet-and-confer discussions with Seyfarth, Branton has never explained the common interest he shares with the Bergers. In his portion of this letter, he is similarly vague, claiming he "serve[s a] function as a strategic advisor and financier." That is not enough. The common-interest doctrine protects privilege only where parties share a **legal**, as opposed to a **business**, interest. *See United States v. Bergonzi*, 216 F.R.D. 487, 495-96 (N.D. Cal. 2003); *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 893 (S.D.N.Y. 1999); *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995); *Oak Inds. v. Zenith Inds.*, No. 86 C 4302, 1988 U.S. Dist. LEXIS 7985, at *12 (N.D. Ill. July 27, 1988).[1] Branton has no legal interest in this case. He is not a party. He has no legal-malpractice claims against Seyfarth; nor could he, because he was never Seyfarth's client. The Bergers' attempted assignment of one-third of their claims is void. Indeed, for that reason, Branton has no enforceable business interest in this case, either. Even if he did, evidence suggests that his business interest would not be aligned with the Bergers'. Not only did Branton negotiate the assignment contract through his separate counsel, but there appears to be a disagreement between him and the Bergers regarding Branton's performance of the contract. *See* Ex. B. Accordingly, he shares

---

[1] In his privilege log, Branton has cited *First Pacific Ntwrks., Inc v. Atl. Mut. Ins. Co.*, 163 F.R.D. 574 (N.D. Cal 1995), but that case supports Seyfarth's position. *First Pacific* holds that the common-interest doctrine does not apply in a case where the insured and the defending insurer had no common interest vis-à-vis coverage or the insured's claims against the non-defending insurer. Like *First Pacific*, Branton's withheld documents are relevant to Seyfarth's defense and he/BBLF share no **legal** interest with the Bergers vis-à-vis Seyfarth. The common-interest doctrine does not apply.

423733.01

no common interest with the Bergers that could be an exception to traditional privilege-waiver rules.

Moreover, if Branton is admitting he is financing this litigation and arguing this could create a common legal interest, he still must produce all evidence demonstrating the existence and terms of his financing. That evidence is not itself privileged; it is the necessary predicate that could support an assertion of privilege. Instead, Branton has produced a partially redacted agreement. Ex. B at BRTN428. But even that is telling. Branton's partial production of the agreement reveals his own attorney's advice regarding the California prohibition on assignment of malpractice claims. *Id.* at BRTN426. If there were any common interest here, it would have protected those communications. By revealing them, Branton has waived any common-interest protection as to this subject matter—or, put another way, he has conclusively shown there was no common interest to begin with. *See Weil*, 647 F.2d at 24. Finally, in his deposition, Brant Berger testified about these very issues—never asserting privilege—and, even though he was copied on the e-mail between his father and Branton attaching the assignment agreement, Ex. B, he denied that Branton had any financial interest in the outcome of this case. Ex. C. Together, this has put Seyfarth in an impossible position. It cannot get to the bottom of this issue, because plaintiffs have alternately wrongly asserted privileges and testified contrary to the record.

This is not the first time Seyfarth has sought the Court's resolution of these issues. Last month, Judge White sanctioned plaintiffs for instructing Richard Berger not to answer questions about plaintiffs' communications and relationship with Branton. Ex. D. Judge White's July 10, 2008 Order rejected plaintiffs' contention that their communications with Branton were protected by any privilege. Yet despite that Order, Branton is now asserting privilege to block discovery into that exact same subject. This shows contempt for this Court. Seyfarth requests that the Court order the production of documents 3-6 and 13-21 listed on Branton's privilege log, along with an unredacted copy of Exhibit B. Given Judge White's prior ruling, Seyfarth also requests that this Court award Seyfarth its fees and costs in pursuing this issue.

## II.     Plaintiffs' Position

Plaintiffs Richard Berger and Brant Berger object to the production of Document Nos. 3-5, 13-21 on the John Branton privilege log because those documents either *are* or *reflect* <u>direct communications between plaintiffs and their current counsel in the instant litigation</u>. Such communications—which include attorney-client e-mails and notes from meetings—go to the very core of the attorney-client relationship, contain highly confidential information exchanged between plaintiffs and their counsel, and reveal the thoughts and mental impressions of the very attorneys who are prosecuting this action against Seyfarth.

Seyfarth does not dispute that Document Nos. 3-5, 13-21 are covered by the attorney-client privilege or attorney-work-product doctrine. Rather, it argues that plaintiffs waived those privileges by sharing those documents with John Branton. Yet as Seyfarth readily concedes, John Branton is plaintiffs' trusted friend, adviser, business associate, financier, and confidant. He "was previously Chief Financial Officer of Berger Enterprises, Inc." as well as a director and shareholder, "was present at the first meeting between Richard Berger and Jack Slobodin in August 2003," was intimately involved in "*decisions related to,* and the *financing of,* both the *Rossignol* case and this lawsuit," and "financed the Bergers' litigation costs in this malpractice action against Seyfarth." Indeed, while defendants represented plaintiffs in their action against Rossignol, defendants Seyfarth and Allen included Branton in confidential attorney-client meetings and sent him confidential correspondence. And even

423733.01

though Seyfarth previously treated Branton as a trusted insider who was privy to confidential attorney-client communications, it now contends that Branton is simply a disinterested third-party with whom plaintiffs cannot communicate without destroying the privilege. Seyfarth's position is flatly inconsistent and contrary to applicable California and federal authorities.

Plaintiffs did not waive the attorney-client or work-product privileges when communicating with Branton for at least two reasons: (1) such communications were made to a "business associate" to "further the interest of the client" and "reasonably necessary for transmission or accomplishment of the purpose of the consultation"[2]; and (2) plaintiffs and Branton share a "common legal interest" in the outcome of this litigation.

Seyfarth cites *Ins. Co. of N. Am. v. Superior Court*, for the proposition that plaintiffs' "disclosures to Branton waived any privilege in these documents." But that case stands for the opposition proposition. Finding no waiver of the privilege, the California Court of Appeal held:

> To sum up, we construe *section 952* to mean that attorney-client communications in the presence of, or disclosed to, clerks, secretaries, interpreters, physicians, spouses, parents, business associates, or joint clients, when made to further the interest of the client or when reasonably necessary for transmission or accomplishment of the purpose of the consultation, remain privileged.[3]

Here, Branton has been plaintiffs' long-term business associate who has consistently provided direction, guidance, and financial assistance in both the *Rossignol* action and, now, the *Seyfarth* action. In order for Branton to serve his function as a strategic adviser and financier, it was "reasonably necessary" for plaintiffs to share with him their confidential case plan and strategy as developed between themselves and their counsel.

Moreover, both California and federal authorities recognize that "communications to nonparties can retain a protective shield if the parties have a common legal interest" in a particular matter.[4] For example, in *Hewlett-Packard Co.*, Judge Brazil found that a prospective defendant in patent litigation had not waived the privilege by sharing a legal opinion letter with a prospective investor because both parties shared a "common legal interest" in opposing a patent infringement lawsuit. And in *In re Regents of U.C.*, the Federal Circuit held that the UC, while pursuing a patent application, could openly share legal advice with its licensee because "[v]alid and enforceable patents on the UC inventions are in the interest of both parties."[5]

Plaintiffs and Branton share a "common legal interest" in both the *Rossignol* action and in the present litigation. In both cases, Branton supplied plaintiffs with financial assistance, support, and guidance to facilitate a common and unified legal strategy in pending litigation. When defendants botched the *Rossignol* action, both plaintiffs and Branton lost their investment and potential recovery. And both share the same interest in successfully prosecuting the instant action against Seyfarth in order to recoup their losses and realize their gains.

The cases cited by defendants do not apply. For example, in *US v. Bergonzi*,[6] a corporation shared

---

[2] *Ins. Co. of N. Am. v. Superior Court*, 108 Cal. App. 3d 758, 771 (1980).
[3] *Id.* (emphasis added).
[4] *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987) (emphasis added).
[5] 101 F.3d 1386, 1390 (Fed. Cir. 1996).
[6] 216 F.R.D. 487 (N.D. Cal. 2003).

privileged information with the SEC during a securities investigation brought against it. Unlike the present case, the parties were strictly adverse. In *Shamis v. Ambassador*, the plaintiffs shared attorney-client communications with a third-party where there was no evidence of (1) "joint prosecution of plaintiff's claims," a (2) "coordinated legal strategy," or (3) that the third-party "contributed to [plaintiff's] legal expenses."[7] Here, there is evidence of all three.

Seyfarth misleadingly suggests that it would be improper for plaintiffs to share the proceeds from their malpractice action with Branton. But Seyfarth fails to recognize the basic distinction between the assignment of a *claim* and the assignment of the *proceeds* of a claim. A contract of the latter type is valid. "It has been clearly established in California that . . . contract provisions . . . providing *only access to the proceeds of settlement or judgment* resulting from the exercise of rights of recovery by the injured person, are valid and enforceable."[8]

Finally, Seyfarth blatantly mischaracterizes Judge White's July 10, 2008 discovery order. Judge White did *not* hold that plaintiffs waived any privileges when communicating with Branton. Rather, the court ruled that plaintiffs could not refuse to answer deposition questions on the basis that such questions sought information outside a stipulated scope of discovery. The privilege issue was not before—or decided by—Judge White.

In short, Seyfarth's efforts to gain "back door" access to plaintiffs' highly confidential attorney-client communications and the work-product mental impressions of its counsel are improper, legal unsupported, and should be rejected.

### III. Branton's Position

Mr. Branton agrees with, and incorporates by this reference Plaintiffs' response above concerning the production of documents 3-5 and 13-21 in Mr. Branton's privilege log. This leaves for discussion number 6 on the privilege log—a confidential, attorney-client privileged communication between Mr. Branton and his personal attorney concerning the agreement attached hereto as Exhibit B. Mr. Branton took that agreement and sent it to his personal attorney along with his own communications. It seems that defense counsel is not content to invade the attorney client relationship involving Plaintiff's attorney and also seeks private communications between Mr. Branton and his own lawyer. This request should be rejected out of hand.

In closing, it should be noted that Mr. Branton has, at no small expense, complied with the subpoena issued to him by producing hundreds of documents and a detailed privilege log. In several instances, Mr. Branton acceded to defense counsel's intractable position of complete disclosure even where Mr. Branton had originally asserted an objection. What remains are a select few documents listed on the privilege log where the attorney-client privilege so clearly applies that Mr. Branton cannot disclose them.

---

[7] 34 F. Supp. 3d 879, 893 (S.D. NY 1999). *Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) and *Oak Inds. v. Zenith Inds.*, No. 86 C 4302, 1988 U.S. Dist. LEXIS 7985, at *12 (N.D. Ill. July 27, 1988) are distinguishable on similar grounds.

[8] *Lee v. State Farm Mut. Auto. Ins. Co.*, 57 Cal.App.3d 458, 465-466 (1976); *Block v. Cal. Physicians' Service*, 244 Cal.App.2d 266, 273 (1966); *Hartford Accident and Indemnity Company v. Gropman*, 163 Cal. App. 3d Supp. 33 (1984); *Cassetta v. Del Frate*, 116 Cal.App. 255, 257 (1931) [attorneys' contingency fee agreement; "assignment is . . . an interest in the proceeds collected"].)

Magistrate Judge Maria-Elena James                                                                PAGE 6
August 21, 2008

Respectfully submitted,

/s/ Travis LeBlanc                                              /s/ John F. Domingue
TRAVIS LEBLANC                                                  JOHN F. DOMINGUE
KEKER & VAN NEST LLP                                            BERLINER COHEN

Attorneys for Defendants                                        Attorneys for Third Party
SEYFARTH SHAW LLP and                                           RICHARD BRANTON
JACK L. SLOBODIN


/s/ Craig Alan Hansen
CRAIG ALAN HANSEN
BECK, ROSS, BISMONTE & FINLEY LLP

Attorneys for Plaintiffs
RICHARD BERGER AND BRANT BERGER

423733.01