Justin T. Beck, Esq. (Cal. Bar No. 53138)
Ron C. Finley, Esq. (Cal. Bar No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
Jeremy M. Duggan, Esq. (Cal. Bar No. 229854)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel:    (408) 938-7900
Fax:    (408) 938-0790
Email: jbeck@beckross.com
         rfinley@beckross.com
         abismonte@beckross.com
         chansen@beckross.com
         jduggan@beckross.com

Attorneys for Plaintiffs
Richard W. Berger and Brant W. Berger

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD W. BERGER and BRANT W. BERGER,<br><br>                              Plaintiffs,<br><br>        v.<br><br>SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an individual; BURNETT, BURNETT & ALLEN, a California partnership; DOUGLAS B. ALLEN, an individual; and DOES 1-100, inclusive,<br><br>                              Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. C07-05279 JSW<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date:        September 5, 2008<br>Time:        1:30 p.m.<br>Dept:        Courtroom 2, 17th Floor<br>Judge:       The Honorable Jeffrey S. White<br><br>Date Comp. Filed:        September 12, 2007<br><br>Trial Date: None set. |

424136.01

1      The parties to this action hereby submit the following Joint Case Management

2 Conference Statement.

3     **1.    Jurisdiction and Service**

4      Plaintiffs Richard Berger and Brant Berger initially filed their complaint against

5 defendants Seyfarth Shaw LLP ("Seyfarth"), Jack L. Slobodin, Burnett, Burnett, & Allen, and

6 Douglas B. Allen in California state court on September 12, 2007.  On October 17, 2007,

7 defendant Allen removed this action asserting exclusive subject matter jurisdiction under 28

8 U.S.C. § 1331 and *Air Measurement Technologies, Inc. v. Akin, Gump, Strauss, Hauer & Feld,*

9 *L.L.P.*[1] and *Immunocept LLC, et al. v. Fulbright & Jaworski, LLP,*[2] because plaintiffs' claims

10 arise from alleged professional negligence in a prior patent infringement action.

11      The parties are not aware of any issues pertaining to personal jurisdiction or venue.

12      All parties named in this lawsuit have been served.

13     **2.    Facts**

14      This action arises from alleged professional negligence, breach of contract, fraud,

15 negligent misrepresentation, and breach of fiduciary duty arising from a prior patent

16 infringement action filed by plaintiffs against Rossignol Ski Company.[3]  In *Rossignol*, plaintiffs

17 alleged that Rossignol infringed two of their patents, United States Patent Nos. 5,913,530 (the

18 '530 patent) and 6,196,569 (the '569 patent), pertaining to a rotatable snowboard binding.

19      In the present action, plaintiffs allege that on January 4, 2006 defendants, while

20 representing plaintiffs in *Rossignol*, submitted defective preliminary infringement contentions

21 ("PICs") which, *inter alia*, (1) mischaracterized a key component of the accused device thereby

22 rendering the device non-infringing under the '530 patent; and (2) failed to assert any

23 contentions as to the '569 patent.  Plaintiffs also allege defendants intentionally concealed

24 Slobodin's and Seyfarth's role in the error when the Bergers sought relief from the error in the

25 prior action.  Plaintiffs contend that relief would have been granted if the true facts had been

26 ───────────────────

27 [1] No. 2007-1035, 2007 WL 2983660 (Fed. Cir. October 15, 2007).

[2] No. 2006-1432, 2007 U.S. App. LEXIS 24095 (Fed. Cir. October 15, 2007).

28 [3] *Berger v. Rossignol*, Case No. C 05-02523.

1    disclosed to the Court.

2        Plaintiffs allege that, as a result of defendants' acts of professional negligence and

3    concealment, the District Court entered judgment in favor of Rossignol on April 25, 2006.

4        Defendants Slobodin and Seyfarth deny they took any actions that could have given rise

5    to an attorney-client relationship with plaintiffs as of January 4, 2006 (*i.e.*, when the PICs were

6    served) or when any other alleged acts of professional negligence took place.  They also deny

7    they had any role in preparing the PICs and contend their representations to the various courts

8    that adjudicated the *Rossignol* case were accurate.

9        Defendants contend that they fulfilled all contractual obligations to plaintiffs, satisfied all

10    fiduciary duties owed to plaintiffs, and did not make any false statements to plaintiffs.

11    Defendants also contend that plaintiffs did not rely on any false statements allegedly made by

12    defendants.

13        Finally, defendants contend that the facts demonstrate that (1) even absent the false

14    statements allegedly made by defendants to the court in the underlying case, that the court would

15    not have granted plaintiffs relief from errors in their PICs; (2) Rossignol's snowboard binding

16    did not infringe the '530 patent or the '569 patent; (3) the patents are not valid or enforceable;

17    and (4) the Bergers would have been estopped and barred by the doctrine of laches from

18    enforcing them against Rossignol.

19        Defendant Allen asserts that the Bergers' lawsuit against him is barred by the one-year

20    malpractice statute of limitations under Cal. Civ. Proc. Code § 340.6 and that plaintiffs allege

21    claims against him fail as being uncertain and ambiguous.

22    **3.    Legal Issues**

23    The parties have identified the following disputed legal issues in this case:

24    (1)    When an attorney-client relationship first came into existence between plaintiffs

25        and defendants Slobodin and Seyfarth;

26    (2)    When a contractual relationship first came into existence between plaintiffs and

27        defendants Slobodin and Seyfarth;

28    (3)    When defendants Slobodin and Seyfarth first came to owe a fiduciary duty to

2

1      plaintiffs;

2      (4)    Whether plaintiffs' claims against Allen are barred by the malpractice statute of

3             limitations under Cal. Civ. Proc. Code § 340.6;

4      (5)    When an attorney-client relationship existed between plaintiffs and defendant

5             Allen;

6      (6)    Whether plaintiffs and defendant Allen entered into a settlement agreement that

7             bars the present claims asserted against defendant Allen;

8      (7)    Whether defendants were negligent in their representation of the plaintiffs in

9             *Rossignol*;

10     (8)    Whether defendants breached a contract with plaintiffs;

11     (9)    Whether defendants breached any fiduciary duties owed to plaintiffs;

12     (10)   Whether defendants committed fraud against plaintiffs;

13     (11)   Whether defendants committed negligent misrepresentation against plaintiffs;

14     (12)   Whether plaintiffs have standing to raise the claims asserted in the operative

15             complaint;

16     (13)   Whether plaintiffs' claims against Allen are uncertain;

17     (14)   Whether, and to what extent, plaintiffs suffered damages as a result of the alleged

18             acts of fraud and concealment;

19     (15)   Whether plaintiffs would have achieved a better result in *Rossignol* absent the

20             alleged acts of professional negligence;

21     (16)   The meaning of the asserted claims of the '530 and '569 patents;

22     (17)   Whether Rossignol infringes either the '530 patent or the '569 patent;

23     (18)   Whether the '530 patent or '569 patent are invalid under 35 §§ 102, 103 or 112;

24     (19)   Whether the '530 patent or the '569 patent are enforceable;

25     (20)   Whether the plaintiffs are estopped or barred by laches from enforcing the '530

26             patent or the '569 patent against Rossignol; and

27     (21)   What damages the plaintiffs would have recovered against Rossignol in *Rossignol*

28             but for the alleged negligence of defendants.

1      **4.     Motions**

2      On March 7, the Court denied (1) Seyfarth's and Slobodin's motion to dismiss; (2)

3 Seyfarth's and Slobodin's motion to strike; (3) Allen's motion to dismiss; and (4) Plaintiffs'

4 conditional cross-motion for summary adjudication against Allen.

5      On June 10, 2008, the Court granted Seyfarth's and Slobodin's motion for the continued

6 deposition of plaintiffs and for sanctions as a result of plaintiffs' counsel's misconduct during

7 plaintiffs' depositions.

8      On June 17, 2008, the Court granted plaintiffs' motions to dismiss the counterclaims filed

9 by Seyfarth and Slobodin and Allen.  Allen filed amended counterclaims on June 26, 2008.

10 Plaintiffs' motion to dismiss Allen's amended counterclaims was denied on August 28, 2008.

11      On August 15, 2008, Seyfarth and Slobodin moved for sanctions based on Seyfarth's and

12 Slobodin's contention that plaintiffs had not complied with the Court's July 10, 2008 order

13 awarding Seyfarth and Slobodin sanctions.  That motion is noticed for hearing on November 7,

14 2008.

15      On August 21, 2008, Seyfarth and Slobodin moved third party John Branton to produce

16 documents withheld on claims of the joint interest privilege and the attorney-client privilege.

17      Plaintiffs anticipate moving to require that Seyfarth and Slobodin produce certain

18 documents identified on a privilege log.

19      <u>Motions for summary judgment and phasing – plaintiffs' position</u>

20      In order to streamline this litigation and to possibly facilitate a prompt resolution of this

21 matter, the parties had originally agreed to initially focus their discovery efforts on issues (1)

22 through (6), (10) and (11) above, which are the preliminary, and potentially dispositive, issues in

23 this case.  The parties then planned to submit those issues to the Court by way of motions for

24 summary judgment to be filed by defendants Slobodin and Seyfarth and by defendant Allen.

25 Under that agreement, it was anticipated that if defendants prevailed on their motions for

26 summary judgment, the parties would proceed accordingly.  Otherwise, the parties will further

27 meet and confer promptly after the Court's ruling to devise a discovery plan for the remaining

28 issues pending in this litigation and to explore the possibility of engaging in settlement

4

424136.01

1   discussions.

2          Plaintiffs have since realized that the idea of phased discovery is simply unworkable.

3   Instead of streamlining discovery, and developing the case in a more cost effective and efficient

4   way, the attempt to bifurcate discovery has proved to be more costly and more burdensome to

5   the parties and has burdened the court with additional motion practice.

6          During the depositions of plaintiffs Richard Berger and Brant Berger, the parties had

7   significant disagreements about whether particular deposition questions related to "first phase"

8   issues or "second phase" issues.  When defendants asked questions during "first phase"

9   depositions on matters that plaintiffs believed were "second phase" issues, plaintiffs objected

10  under the parties' phased discovery agreement and refused to answer.  Defendants then sought

11  and obtained relief from the court on the basis that plaintiffs' refusal to answer was improper and

12  that defendants were not bound by the agreement because it did not constitute an "order of the

13  court."  Plaintiffs interpret the Court's July 10, 2008 discovery order finding "Plaintiffs'

14  counsel's instructions not to answer" to be "improper and without substantial justification" as an

15  implied rejection of bifurcated discovery.

16         Moreover, when the parties had originally agreed to bifurcated discovery, they did not

17  contemplate the problems of third party depositions or whether bifurcation might result in

18  multiple depositions of the same witness.  Given that a bifurcated discovery plan (which

19  contemplates a "phase one" deposition and a second "phase two" deposition) is not binding on

20  third-parties, that plan has proven to be unrealistic and unworkable.

21         Finally, a significant motivation for plaintiffs to enter into the phased discovery

22  agreement in the first place was Seyfarth's position that it would not engage in meaningful

23  settlement discussions until the issue of the attorney client relationship was resolved.  But

24  Seyfarth's discovery on that issue has been completed, with no sign that it intends to now file its

25  promised summary judgment motion.

26         Accordingly, plaintiffs will abide by the July 10, 2008 discovery order and "return for

27  their continued depositions, each not to exceed five hours."  But because the parties' prior

28  phased discovery agreement is void and unworkable, plaintiffs will not agree to submit to further

424136.01

1    depositions for Richard Berger and Brant Berger beyond what has been ordered by the court.

2            <u>Motion for summary judgment and phasing– Seyfarth's and Slobodin's position</u>

3          During the parties' Rule 26(f) conference on February 12, 2008, lead counsel for Seyfarth

4    and Slobodin reached an agreement with lead counsel for plaintiffs that this case should proceed

5    in two phases for discovery and summary-judgment purposes.  The first phase would focus on

6    issues related to defendants' representation of plaintiffs and any alleged malpractice.  If

7    necessary, the second phase would focus on patent issues.  Ever since February 12, Seyfarth and

8    Slobodin have proceeded according to this agreement.  Now, plaintiffs want to back out of that

9    agreement.  Seyfarth and Slobodin ask the Court to approve the original two-phase case-

10    management plan agreed upon by the parties.  That plan promotes judicial efficiency and will

11    conserve resources of the Court, the parties and third parties.

12          This case is ready made for phasing.  As a legal malpractice action, plaintiffs must prove

13    not only that defendants committed malpractice, but also prove the "case within a case"—that,

14    but for the alleged malpractice, they would have won the underlying case.  Perhaps more

15    importantly, here the case within the case is a patent litigation, which is legally complex and

16    turns on technical factual issues requiring expert testimony.  The agreed-upon phasing allows the

17    parties potentially to resolve the entire litigation on summary judgment.  If, for example,

18    Seyfarth and Slobodin can establish on summary judgment that they did not represent plaintiffs

19    at the time the alleged malpractice took place or did not commit malpractice, the parties can

20    avoid reaching the complicated, expensive, and time-consuming underlying patent litigation.  An

21    essential component of this approach is the ability to file multiple summary judgment motions,

22    which this Court typically does not allow.  Seyfarth and Slobodin hereby ask the Court to

23    recognize that, in this type of case, good cause does exist for this sort of two-phase case-

24    management plan, including the filing of two summary-judgment motions, in order potentially to

25    avoid the expense of litigating a full-fledged patent infringement action.

26          Until this month, plaintiffs were on board with this approach.  The parties memorialized

27    their bifurcation agreement and joint request that the court entertain multiple motions for

28    summary judgment in a case management statement on February 29, 2008 (D.I. 55), again when

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
CASE NO. C07-05279 JSW

1    they filed a case management statement on April 11, 2008 (D.I. 71), and yet again when they

2    filed a case management statement on June 13, 2008 (D.I. 80).   Seyfarth and Slobodin have

3    relied on this agreement in conducting discovery, limiting its written discovery requests to

4    plaintiffs and its deposition questions of plaintiffs to phase-one issues.  Seyfarth and Slobodin

5    have not yet taken any third-party depositions, and thus far during six months of discovery

6    plaintiffs have not noticed any depositions.

7          On August 5, 2008, plaintiffs announced in a letter that they no longer wished to proceed

8    according to this agreement.  At the time, plaintiffs claimed that *the Court* had superseded the

9    parties' phased discovery plan when, on July 10, 2008, it sanctioned plaintiffs for their counsel's

10   improper conduct during plaintiffs' depositions.  Now, in this statement, plaintiffs provide

11   additional reasons for renouncing their agreement, arguing that the two-phase plan has become

12   "unworkable" because it has led to discovery disputes and because plaintiffs did not contemplate

13   how the approach would apply to third party discovery or "whether bifurcation might result in

14   multiple depositions of the same witness."  Plaintiffs also assert that phasing will not work

15   because Seyfarth has "completed" discovery on phase one issues "with no sign that it intends to

16   now file its promised summary judgment motion."

17          All of these objections to the agreed case-management plan are unpersuasive:

18          *First*, the Court's July 10, 2008 order did not address, directly or indirectly, the propriety

19   of the parties' phased-discovery agreement.  It merely concluded that plaintiffs had engaged in

20   improper conduct during depositions.

21          *Second*, a discovery dispute related to the two-phase plan arose only because plaintiffs

22   took an unreasonably narrow view regarding the scope of phase-one discovery.  As discussed

23   above, the parties' original agreement was to devote phase one to all non-patent issues, reserving

24   all patent issues for phase two.  But plaintiffs then blocked Seyfarth from taking discovery on

25   certain non-patent issues—primarily, plaintiffs' communications with third parties regarding the

26   financing of this case and whether those third parties have a financial interest in this case.  This

27   discovery is relevant to the credibility and bias of these third parties, including plaintiffs'

28   associate John Branton, who also helped finance the underlying patent case and will be an

---

7

1   important witness in this case.  To justify their objection, plaintiffs alleged, for the first time, that

2   phase-one discovery was limited to specific factual issues enumerated in the initial case-

3   management statement.  But that statement lists legal issues and does not set forth an exhaustive

4   list of factual issues.  Seyfarth believes that the issues that were the subject of the discovery

5   dispute are phase-one issues because they relate to plaintiffs' legal malpractice claim and do not

6   relate to patent issues.

7        *Third*, the parties' phased discovery agreement benefits third parties because they may

8   elect to postpone patent-related discovery until the second phase, which may never take place.

9   For example, during the patent phase of this action, Seyfarth will require extensive discovery

10  from Rossignol Ski Company, the defendant in the underlying patent litigation.  While Rossignol

11  has requested that it wait until the second phase commences before burdening itself with

12  providing that discovery, Seyfarth cannot grant that request unless discovery is phased.  *See*

13  Attachment A.

14       *Fourth*, plaintiffs' claim that the parties did not contemplate "whether bifurcation might

15  result in multiple depositions of the same witness" is untrue.  The parties not only contemplated

16  it, but they agreed that multiple depositions of their own witnesses were permissible.  In the three

17  prior joint case management statements, the parties agreed that phase one depositions "will not

18  count against … the seven-hour limit" under the Federal Rules.  The fact that third parties might

19  not agree to be deposed twice should not inhibit the parties from agreeing to provide party

20  discovery in two phases.

21       *Finally*, plaintiffs' claim that Seyfarth's and Slobodin's discovery into phase-one issues is

22  complete is also untrue.  Seyfarth has never represented to plaintiffs that it has completed this

23  discovery.  To the contrary, in their most recently filed joint CMC statement, the parties agreed

24  that phase one discovery would last until November 20, 2008 and related summary-judgment

25  motions would be due on January 20, 2008.  *See* June 13, 2008 Joint Case Management

26  Statement at 7-8.  Seyfarth currently has outstanding discovery requests on phase-one issues and

27  has not completed the additional five hours the Court awarded in its July 10, 2008 order for

28  phase-one depositions of plaintiffs.  Moreover, because defendant Douglas Allen never got a

1   chance to depose plaintiff Richard Berger in June, that deposition was never concluded.  Neither

2   has Seyfarth taken the already noticed depositions of John Branton and Reginald Suyat, both of

3   whom were present at the initial meeting between Richard Berger and Slobodin and have

4   discoverable information related to the formation of an attorney-client relationship between

5   Seyfarth, Slobodin and plaintiffs.  Seyfarth may need to take additional third-party discovery.

6   Once Seyfarth and Slobodin complete phase-one discovery, they will file a motion for summary

7   judgment.  Finally, one obvious reason Seyfarth and Slobodin have not yet filed a summary-

8   judgment motion on malpractice issues is the absence of a case-management order by this Court.

9   Without such an order, Seyfarth could not know whether it is entitled to file one or two such

10  motions during this case.

11          Motion for summary judgment and phasing– Douglas Allen's position

12          Allen concurs with Seyfarth's and Slobodin's position on phasing and joins their request

13  to file multiple motions for summary judgment.

14          **5.    Amendment of Pleadings**

15          Seyfarth and Slobodin have asked plaintiffs to stipulate to the filing of an amended

16  answer asserting an affirmative defense that plaintiffs' patents are unenforceable due to their

17  inequitable conduct before the United States Patent and Trademark Office.  This defense is based

18  on documents received during third-party discovery after the filing of Seyfarth's answer.

19  Plaintiffs have not yet responded to Seyfarth's and Slobodin's request for a stipulation.  Absent

20  such a stipulation, Seyfarth and Slobodin will move for leave to file their amended answer.

21          **6.    Evidence Preservation**

22          Plaintiffs have taken reasonable steps to preserve all pertinent evidence in this case

23  including forwarding all pertinent documents to their counsel.

24          Defendants Slobodin and Seyfarth have taken steps to preserve evidence relevant to the

25  issues reasonably evident in this action, including the interdiction of any document-destruction

26  program and ongoing erasures of e-mails and other electronic documents.  While Seyfarth

27  believes that plaintiffs have agreed to provide additional information on their evidence

28  preservation, Seyfarth states they have not yet done so.

424136.01

1    Defendant Allen has taken reasonable steps to preserve evidence including electronic

2  documents in his possession.

3    **7.    Disclosures**

4    The parties made their initial document productions on February 15, 2008, and continue

5  to make productions on a rolling basis.  The parties have served their initial written disclosures

6  under Fed. R. Civ. P. 26.

7    **8.    Discovery**

8    Plaintiffs' statement

9    As set forth above at Section 4, the parties originally intended to limit their initial

10  discovery to issues (1) through (6), (10) and (11) as listed above at Section 3.  The parties had

11  agreed that any depositions taken during this initial round of discovery will be limited to issues

12  (1) through (6), (10) and (11) and will be limited to one day of seven hours pursuant to Fed. R.

13  Civ. P. 30(d)(2).  The parties had further agreed that such depositions would not count against

14  the ten-deposition limit under Fed. R. Civ. P. 30(a)(2)(A)(i) or the seven-hour limit under Fed. R.

15  Civ. P. 30(d)(2) with respect to any subsequent depositions taken after the Court ruled on

16  defendants' initial motion for summary judgment referenced above at Section 4.

17    As set forth above, plaintiffs assert that the court rejected the parties' phased discovery

18  agreement and, in any event, defendants breached that agreement by asking "second phase"

19  questions during "first phase" depositions.  Accordingly, plaintiffs assert that any such

20  agreement is now null and void and that the parties' discovery efforts should proceed as set forth

21  under the Federal Rules of Civil Procedure.

22    Seyfarth's and Slobodin's Statement

23    Aside from the parties' dispute about whether discovery in this action should be phased,

24  which Seyfarth addressed above, at least two other case management related discovery issues

25  exist.

26    *First*, the parties disagree about the scope and length of plaintiffs' depositions.  Plaintiffs

27  argue that defendants should be permitted to depose plaintiffs for only five additional hours each.

28  Seyfarth believes that defendants are entitled to depose plaintiffs for five hours each regarding

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
CASE NO. C07-05279 JSW

1   subjects about which plaintiffs improperly instructed plaintiffs not to answer *and* for seven hours

2   about patent issues. Seyfarth's position is based on the parties' February 12, 2008 agreement,

3   which the parties disclosed to this Court on several occasions in their previous joint CMC

4   statements, and the Court's July 10, 2008 order. When Seyfarth and Slobodin took plaintiffs'

5   depositions on May 12, 2008 and May 14, 2008, they were operating under the parties'

6   agreement that the depositions would be limited to first phase-issues and that the depositions

7   would "not count against the … the seven-hour limit under Fed. R. Civ. P. 30(d)(2)."

8           Essentially, plaintiffs are arguing that the Court's July 10, 2008 order sanctioning them

9   for discovery misconduct should be read to leave them in a more favorable position than they

10  enjoyed prior to the order. Before the order, they were obligated to sit for at least seven further

11  hours of deposition. To read the order as reducing their deposition obligation to five hours

12  would not make sense. The Court sanctioned plaintiffs, not Seyfarth.

13          *Second*, Seyfarth requests that, if and whenever discovery related to the patent litigation

14  commences, it should proceed according to this District's Patent Local Rules. These rules

15  "apply to all civil actions … transferred to this Court which allege infringement of a utility patent

16  in a complaint[.]" Patent L.R. 1-2. Plaintiffs' complaint alleges that Rossignol infringes their

17  patents, and plaintiffs must prove this infringement in order to prevail in this action. Under

18  Patent Local Rule 3-1, plaintiffs' preliminary infringement contentions should be due ten days

19  after the initial case management conference, *i.e.*, on September 19, 2008, unless discovery in

20  this action remains phased or this Court orders otherwise.

21          Allen's Statement

22          Allen is conferring with plaintiffs regarding their conduct during discovery and may be

23  forced to resort to motion practice if these issues are not resolved. Allen joins Seyfarth's

24  requests to apply the Patent Local Rules to discovery related to the patent litigation.

25  **9.      Class Actions**

26          Not applicable.

27  **10.     Related Cases**

28          On October 24, 2007, the Court entered an order deeming this matter related to *Berger v.*

---

11

1    *Rossignol*, Case No. C 05-02523.

2         **11.     Relief**

3         Plaintiffs seek compensatory damages against defendants of approximately $75 million.

4    This figure represents plaintiffs' anticipated recovery against Rossignol for lost profits,

5    reasonable royalties, and enhanced damages.

6         **12.     Settlement and ADR**

7         The parties had originally planned to explore the prospects for settlement after the Court

8    rules on defendants' initial motions for summary judgment.  From plaintiffs' perspective, there is

9    no longer any point to deferring the exploration of ADR options.  Seyfarth continues to believe

10   that the parties will be in a better position to explore the prospects for settlement after the Court

11   rules on its initial motion for summary judgment, assuming this Court adopts the parties' agreed

12   two-phase case-management plan.

13        **13.     Consent to Magistrate Judge For All Purposes**

14        The parties have not consented to a magistrate judge for all purposes.

15        **14.     Other References**

16        Plaintiffs are willing to consider whether this matter is appropriate for reference to

17   binding arbitration or a special master.

18        Defendants Slobodin and Seyfarth believe that this matter is not appropriate for reference

19   to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

20        **15.     Narrowing of Issues**

21        As explained in more detail in Section 4 above, Seyfarth believes that phased discovery

22   and case management presents an efficient approach for narrowing the issues.

23        **16.     Expedited Schedule**

24        Not applicable.

25        **17.     Scheduling**

26        Plaintiffs are not aware of any special scheduling issues at this time.

27        As discussed above, Seyfarth and Slobodin believe that a two-phase schedule is

28   appropriate.  As stated in the parties' June 13, 2008 Joint Case Management Conference

424136.01

1   Statement, the parties expect to complete discovery concerning first-phase issues by November

2   20, 2008 and Seyfarth and Slobodin expect to file their related summary judgment motion by

3   January 20, 2009.

4          **18.    Trial**

5          This case will be tried to a jury.  The parties will work out which issues will be submitted

6   to a jury and the expected length of trial after the Court rules on defendants' initial motions for

7   summary judgment and will file a supplemental Joint Case Management Conference at that time.

8          **19.    Disclosure of Non-party Interested Entities or Persons**

9          Plaintiffs hereby disclose that in addition to the parties to the litigation, the corporation

10  Berger Enterprises Incorporated may have a financial interest in the subject matter in controversy

11  pursuant to a license agreement dated October 4, 1996.  Plaintiffs have not filed a "Certificate of

12  Interested Entities or Persons," under Civil Local Rule 3-16.

13         Defendants Slobodin and Seyfarth have filed the "Certificate of Related Entities or

14  Persons" required by Civil Local Rule 3-16.  It states:  "Pursuant to Civil L.R. 3-16, the

15  undersigned certifies that as of this date, other than the named parties, there is no such interest to

16  report."

17         Defendant Allen filed a certificate of related entities also including John Branton as a

18  person who may have an interest in the litigation.

19         **20.    Other Matters**

20         The parties are not aware of other matters at this time.

21

22  Dated:  August 29, 2008                          BECK, ROSS BISMONTE & FINLEY,
                                                     LLP
23

24

25                                          By:    _____/s/_____
                                                   ALFREDO A. BISMONTE
26                                                 Attorneys for Plaintiffs
                                                   Richard W. Berger and Brant W. Berger
27

28

---

13

424136.01

1    Dated:  August 29, 2008                           KEKER & VAN NEST, LLP

2

3

4                                               By: _____/s/_____
                                                    ELLIOT R. PETERS
5                                                   Attorneys for Defendants
                                                    SEYFARTH SHAW LLP and
6                                                   JACK L. SLOBODIN

7

8    Dated:  August 29, 2008                           BURNETT, BURNETT & ALLEN

9

10                                              By: _____/s/_____
                                                    DOUGLAS B. ALLEN
11                                                  Attorneys for Defendants
                                                    DOUGLAS B. ALLEN and BURNETT,
12                                                  BURNETT & ALLEN

13

14                                          *Filer's Attestation*

15          I, Klaus H. Hamm, the filer of this document, hereby attest that concurrence in the filing

16   of this document has been obtained from each signatory hereto.

17

18

19                                              By: _____/s/_____
                                                    KLAUS H. HAMM
20

21

22

23

24

25

26

27

28

                                                14
                           JOINT CASE MANAGEMENT CONFERENCE STATEMENT
                                      CASE NO. C07-05279 JSW