Justin T. Beck, Esq. (Cal. Bar No. 53138)
Ron C. Finley, Esq. (Cal. Bar No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar No. 209622)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: jbeck@beckross.com
       rfinley@beckross.com
       abismonte@beckross.com
       chansen@beckross.com

Attorneys for Plaintiffs
Richard W. Berger and Brant W. Berger

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RICHARD W. BERGER and BRANT W. BERGER,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>SEYFARTH SHAW LLP, an Illinois limited liability partnership; JACK L. SLOBODIN, an individual; BURNETT, BURNETT, & ALLEN, a California partnership; DOUGLAS B. ALLEN, an individual; and DOES 1-100, inclusive;<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. C 07-05279 JSW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS SEYFARTH SHAW LLP'S AND JACK SLOBODIN'S MOTION FOR SANCTIONS**<br><br>Date:　November 7, 2008<br>Time:　9:00 a.m.<br>Place:　Courtroom 2, 17th Floor<br>Judge:　Hon. Jeffrey S. White |

Plaintiffs Richard Berger and Brant Berger oppose Seyfarth's[1] motion for an additional $1,222.95 payment and other monetary sanctions. Seyfarth's *sui generis* quasi-contempt motion is neither fish nor fowl and is meritless because (1) its motion is procedurally defective; (2) plaintiffs have fully complied with the Court's order; and (3) plaintiffs' understanding of appropriate payment was with substantial justification.

**Introduction**

Seyfarth's motion relates to a July 10, 2008 discovery order requiring plaintiffs to "pay the costs of the depositions … (transcript and court reporter costs, not attorneys' fees)" for the depositions of plaintiffs Richard Berger and Brant Berger. At the time that order was entered, neither the Court nor plaintiffs had any information about what "costs of the depositions" Seyfarth had paid or was seeking.[2]

Seyfarth later sent plaintiffs invoices for the two depositions which included transcript costs of $3,232.65 ($1,762.20+$1,470) plus exhibit costs of $164.45 ($139.75+$24.70), for a total of $3,397.10. Out of an abundance of caution, plaintiffs also agreed to pay Seyfarth's "Video Services" fees of $2,931.25 ($1,618.75+$1,312.5), as those fees are defined as "Deposition Costs" under Civil Local Rule 54-3(c). Accordingly, plaintiffs paid Seyfarth $6,328.05.

Seyfarth now contends that it is entitled to another $1,222.95 in additional fees—such as "Realtime," "Rough ASCII", and "CD Depo"—even though such additional *convenience items* were not specified by the Court, are not transcript or court reporter costs, are not provided for under the Local Rules, and have been excluded by courts addressing this issue.

**Background**

Plaintiffs filed this action in state court on September 12, 2007. It was later removed to this court on October 17, 2007.

**I.   Stipulation re Phased Discovery**

Because Seyfarth insisted it would not engage in meaningful settlement discussions until the Court ruled on its defense that it had no attorney-client relationship with plaintiffs when the

---

[1] "Seyfarth" collectively refers to defendants Seyfarth Shaw, LLP and Jack L. Slobodin.
[2] The Court made its ruling only based upon abbreviated letter briefing.

alleged malpractice occurred, plaintiffs agreed during the Rule 26(f) conference to conduct discovery in two separate phases – the *first phase* focusing on *when* an attorney-client relationship had existed between plaintiffs and defendants, and the *second phase* focusing on the remaining issues in this case. Under that agreement, the parties agreed to limit the *first phase* depositions to the attorney-client relationship issue only so that Seyfarth could promptly file a summary judgment motion.[3] The parties further agreed that they could take a second round of depositions on the remaining issues during the *second phase* of discovery. The parties memorialized that agreement in a Joint Case Management Conference statement filed on February 29, 2008:

> As set forth above at Section 4, the parties intend to limit their initial discovery to issues (1) through (6) as listed above at Section 3. <u>The parties agree that any depositions taken during this initial round of discovery will be limited to issues (1) through (6) and will be limited to one day of seven hours pursuant to Fed. R. Civ. P. 30(d)(2).</u> However, such depositions will not count against the ten-deposition limit under Fed. R. Civ. P. 30(a)(2)(A)(i) or the seven-hour limit under Fed. R. Civ. P. 30(d)(2) with respect to any subsequent depositions taken after the Court rules on defendants' initial motion for summary judgment referenced above at Section 4.[4]

When the parties filed their Joint CMC Statement, they anticipated that the Court would adopt their proposed discovery plan *before* plaintiffs' depositions were taken. But the Court unexpectedly continued the initial CMC to a date beyond the plaintiffs' scheduled depositions. In order to resolve that timing issue, the parties agreed to conduct the depositions in accordance with the Joint CMC Statement—regardless of whether it had been adopted as an order of the Court:

> As for plaintiffs' depositions, I'm awaiting confirmation that April 15 and 16 are workable and will get back to you shortly. <u>Assuming we proceed on those dates and we don't have a case management order in place, I believe that we should just proceed as agreed under the joint case management statement.</u> Does that work for everybody?[5]
>
> . . .
>
> <u>We agree that the plaintiffs' depositions should proceed as agreed under the joint CMC statement.</u>[6]

---

[3] In addition, defendant Allen was permitted to ask questions pertaining to his statute of limitations and waiver defenses.
[4] Docket No. 55.
[5] (Hansen Decl., Ex. A; March 17, 2008 e-mail from Craig Hansen)(emphasis added).
[6] (*Id.*, March 17, 2008 e-mail from Klaus Hamm)(emphasis added).

Following that exchange, Seyfarth proposed also "including the fraud and negligent misrepresentation claims in the first phase, as they <u>appear to be linked to the representation issue</u>, require little discovery and are susceptible to quick resolution, one way or the other."[7] Plaintiffs agreed to that proposal, and a modified Joint CMC Statement was filed on April 11, 2008.[8]

## II.     Plaintiffs Depositions

Richard Berger's deposition was conducted on May 12, 2008. Brant Berger's deposition was conducted the following day on May 13, 2008.

During those depositions, Seyfarth's counsel did not limit his deposition questions to the areas agreed to in the Joint CMC Statement – i.e., (1) *when* an *attorney-client relationship* had existed between plaintiffs and defendants, (2) whether Seyfarth committed *fraud* or *negligent misrepresentation*. Rather, Seyfarth's counsel asked unrelated questions pertaining to:

- The source of funding of plaintiffs' prior businesses unrelated to the subject patents;[9]
- The name of the bank in which plaintiffs had deposited funds acquired from prior ventures;[10]
- The identity of persons other than plaintiffs who may have an "economic interest" in this litigation;[11]
- The terms of engagement agreements between plaintiffs and their corporate counsel;[12]
- The substance of unrelated communications with prospective counsel who plaintiffs met with concerning this litigation;[13]
- The present dealings between plaintiffs and their prior business, Berger Enterprises, Inc. and their business associate, John Branton.[14]

When Seyfarth's counsel refused to stay within the stipulated scope of discovery, plaintiffs' counsel repeatedly reminded him of the parties' discovery agreement:

> I can tell you I hammered this out with Klaus Hamm from your

---

[7] (Hansen Decl., Ex. B; March 26, 2008 e-mail from Klaus Hamm)(emphasis added).
[8] Docket No. 71.
[9] (Hansen Decl., Ex. C; Richard Berger Depo., 15:18-16:24).
[10] (*Id.*, 19:25-20:6).
[11] (*Id.*, 44:20-21).
[12] (*Id.*, 81:8-82:9)
[13] (*Id.*, 84:10-85:13).
[14] (*Id.*, 199:2-200:14; 201:7-19; 203:3-14; 207:5-10; 210:1-5).

BECK, ROSS, BISMONTE & FINLEY, LLP
FAIRMONT PLAZA
50 W. SAN FERNANDO ST., 1300
SAN JOSE, CALIFORNIA 95113
TELEPHONE (408) 938-7900

> office, and we identified 20 issues that are pertinent in this case, and we agreed that discovery would proceed on issues 1 through 6 and 10 and 11.[15]
>
> We sat down and identified issues that we believe are relevant in this case and carved out eight issues that we're going to allow discovery to proceed on. And issues as to who has an interest in this litigation fall outside of those categories.[16]

Despite the repeated admonitions from plaintiffs' counsel that Seyfarth's counsel was violating the parties' discovery agreement, Seyfarth's counsel proceeded to ask improper and impermissible questions. Accordingly, plaintiffs' counsel was left with no choice but to object to those questions and instruct plaintiffs not to answer.

And during the Brant Berger deposition, Seyfarth's counsel asked questions directly aimed at attorney-client communications, such as "what subjects" plaintiffs discussed with their present counsel during pre-deposition meetings.[17] In order to safeguard the privilege, plaintiffs followed their counsel's instruction not to answer.

Seyfarth's counsel also engaged in other deposition misconduct such as yelling at the witness and their counsel:

> MR. PURCELL: Counsel, I'm not talking to you.
>
> MR. FINLEY: If you yell at me again, I'm going to end this deposition and we will be before a judge. Don't yell at me and don't yell at my witness. We won't stand for it. Now, please be polite to this witness.

and refusing to permit the witness to take bathroom breaks under the false pretense that a duplicative question—which had already been answered—was still pending:

> Q. <u>Did the stockholders of Berger Enterprises have any role to play in hiring counsel to sue Rossignol</u>?
>
> MR. FINLEY: Objection. Vague.
>
> THE WITNESS: Yeah. People involved in the corporation -- it's a corporation.
>
> BY MR. PURCELL:
>
> Q. What does that mean?

---

[15] (*Id*. at 48:4-11).
[16] (*Id*. at 45:7-12)
[17] (Hansen Decl., Ex. D; Brant Berger Depo., 28:8-29:7).

> A.  We help run the corporation. We don't own the corporation. The corporation is owned by stockholders.
>
> Q.  <u>Did the stockholders play any role in deciding whether to hire a lawyer to sue Rossignol</u>?
>
> A.  I need to use the rest room.
>
> Q.  I'd appreciate it if you would answer the question that's pending.
>
> MR. PURCELL: You're walking out without answering the pending question?
>
> MR. FINLEY: I think we're going to take a break.
>
> THE WITNESS: Yeah. I just need to use the rest room, okay?
>
> MR. PURCELL: Stay on the record.[18]

In short, believing that the parties should keep their promises to limit discovery, plaintiffs' counsel asserted appropriate objections and instructions to plaintiffs.

## III. Subsequent Discovery Proceedings

On June 11, 2008, the parties conducted an in-person meet and confer conference at the office of Seyfarth's counsel. During that meeting, Seyfarth took the astounding position that plaintiffs counsel could not limit the scope of questions by Seyfarth attorneys regardless of the agreement hammered out.

Consistent with the Court's Standing Order re Civil Discovery, the parties submitted a four-page joint letter brief on July 9, 2008, setting forth their respective positions on multiple discovery items that they met and conferred upon.

The following day, on July 10, 2008, the court issued the following order:

> After a review of the record provided, the Court finds that Plaintiffs' counsel's instructions not to answer, speaking objections and consultation with clients were improper and without substantial justification. See Fed. R. Civ. P. 30(c)(2); see also Court's Standing Order for Civil Practice, Deposition Guidelines ¶¶ 4, 5. Therefore, the Court ORDERS that Plaintiffs shall pay the costs of the depositions which have already occurred (transcript and court reporter costs, not attorneys' fees). See Fed. R. Civ. P. 37(a)(5). In addition, Plaintiffs are ordered to return for their continued depositions, each not to exceed five hours, expeditiously and at a time mutually agreed upon by the parties for the purpose of responding to those questions as to which inappropriate objections or instructions not to answer were made. (*Docket No. 91*).

---

[18] (*Id.*, 108:8-109:5).

That Order made no mention of the stipulated scope of discovery – as set forth in the Joint CMC Statements filed on February 29, 2008 (Docket No. 55) and April 11, 2008 (Docket No. 71) – or to the parties express agreement that "any depositions taken during this initial round of discovery will be limited to issues (1) through (6), (10) and (11)."

On July 11, 2008, Seyfarth sent plaintiffs invoices outlining each expenditure that Seyfarth incurred in connection with the plaintiffs' depositions. In addition to transcript costs and court reporter costs, those invoices included additional discretionary items such as "Realtime," "rough ASCII," "Shipping and handling" and "CD-Depo."[19]

On August 1, 2008, plaintiffs sent Seyfarth a check for $6,328.05 covering the items that they reasonably interpreted as being required under the July 10, 2008 discovery order and the Civil Local Rules.

**Argument**

**I.   Seyfarth's Motion For Sanctions is Procedurally Defective**

For several reasons Seyfarth's motion is procedurally flawed. First, the last letter Seyfarth sent to plaintiffs was that it "believed that plaintiffs are in contempt of that [July 10, 2008] order and we plan to raise this issue with the Court."[20] Bizarrely, rather than bring the expected motion to request that the Court hold plaintiffs in contempt, Seyfarth brings this quasi-contempt motion apparently because payment of a non-specified amount is somehow a violation of FRCP 37.

Presumably, Seyfarth does not seek an actual contempt citation against plaintiffs because it discovered just before filing – but after the meet and confer – that it could not meet contempt's clear and convincing evidence burden that (1) a party violated the order; (2) that the violation did not constitute "substantial compliance" with the order; (3) and the violation was not based on a good faith and reasonable interpretation of the order.[21] FRCP 37, however, is focused on disobedience of discovery orders. In this motion, there is no argument that plaintiffs are currently refusing to submit to discovery or provide information, rather there is only a dispute as to how

---

[19] Docket No. 97-4. Seyfarth also claims that plaintiffs violated the Court's order by not paying for the court reporter's parking fees. But the Court's order does not include such parking payments.
[20] Docket No. 97-9.
[21] *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

much monetary sanctions the Court meant to grant and whether plaintiffs complied with that order. Monetary sanctions under FRCP 37, however, are designed to deter harassment and delay rather than to compel compliance with a court order.   As the Supreme Court stated:

> Petitioner's argument also overlooks the significant differences between a finding of contempt and a Rule 37(a) sanctions order. "Civil contempt is designed to force the contemnor to comply with an order of the court." *Willy v. Coastal Corp.*, 503 U.S. 131, 139, 117 L. Ed. 2d 280, 112 S. Ct. 1076 (1992). In contrast, a Rule 37(a) sanctions order lacks any prospective effect and is not designed to compel compliance. [22]

If Seyfarth were to file any motion, it should have filed a motion for clarification of the July 10, 2008 order.  Apparently because such a logical motion was not sufficiently provocative and bullying, it first threatens a contempt motion.  Presumably, it concluded it would not win a contempt motion, so it brought a defective quasi-contempt motion.  Because Seyfarth brings this motion on improper grounds, it should be denied.

Additionally, while Seyfarth purports to rely on Federal Rule of Civil Procedure 37 to seek "the costs and attorney's fees Seyfarth has incurred in attempting to enforce the Court's order,"[23] Seyfarth's application, omits the necessary information which would even allow a court to grant such "costs" or "attorneys fees."  An "application for an award of fees and expenses should disclose the nature of the services rendered, the amount of attorney time spent and the rates at which the time was billed to the client."[24]

As a preliminary matter, unlike in California State Court, plaintiffs are unaware of any Federal Court motion filing costs, so they are unaware of the nature or amount of any "costs" sought by Seyfarth in its motion.  Further, Federal Rule of Civil Procedure 7(b)(1)(B) and Local Rule 7(b)(3) all mandate fair notice of the specific relief the movant seeks.[25]  However, the MPA filed by Seyfarth, its notice of motion, thick supporting declaration, as well and its proposed order, all fail to set forth the amount of attorneys fees and costs it seeks as well as its hours and billing

---

[22] *Cunningham v. Hamilton County, Ohio,* 527 US 198, 207 (1999).
[23] Seyfarth's MPA at 1, line 9. Docket No. 96.
[24] 2 W. Schwarzer, A. Tashima, and J. Wagstaffe, <u>California Practice Guide: Federal Civil Procedure Before Trial</u>, ¶11:2451 at 11-352 (2008), citing *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993).
[25] Local Rules 7-3(d) and 7-5 also mandate that a declaration or affidavit accompany the motion papers for any factual contentions.

rates.[26] Without any evidence or even notice of the nature and amount of costs and fees sought by Seyfarth, plaintiffs cannot respond, object to, or even know if it is worthwhile to fight about it. Instead, based on Seyfarth's proposed order, it appears to be its intention to make an unspecified demand to plaintiffs sometime after the Court makes a ruling, then hope to file yet another motion with the Court after Seyfarth asserts that it was not fully paid. This is precisely the same ambiguous procedure exploited by Seyfarth in this instant motion.

## II. Plaintiffs Have Complied with the Court's Discovery Order

The Court's discovery order required plaintiffs to "pay the costs of the depositions which have already occurred (transcript and court reporter costs, not attorneys' fees)." But that order provided no guidance as to which items were to be included in "transcript and court reporter costs" and which items were not.

To assist plaintiffs in interpreting the Court's order, plaintiffs referred to Civil Local Rule 54-3, which defines appropriate deposition costs as follows:

> **Depositions**.
>
> (1) The cost of an original and one copy of any deposition (including video taped depositions) taken for any purpose in connection with the case is allowable.
>
> (2) The expenses of counsel for attending depositions are not allowable.
>
> (3) The cost of reproducing exhibits to depositions is allowable if the cost of the deposition is allowable.
>
> (4) Notary fees incurred in connection with taking depositions are allowable.
>
> (5) The attendance fee of a reporter when a witness fails to appear is allowable if the claimant made use of available process to compel the attendance of the witness.

Plaintiffs paid each of the enumerated items.

Seyfarth does not argue that plaintiffs did not pay the "transcript and court reporter costs" as those terms are defined under Local Rule 54-3, rather it argues that the Court's order should be interpreted to include additional convenience items such as "Realtime," "rough ASCII," and "CD-

---

[26] Docket Nos.95, 95-2, and 97.

1  Depo." But Seyfarth offers no authority for their essentially limitless reading of the Court's order.

2  Moreover, the courts which have addressed allowable deposition related costs have

3  expressly excluded expenses incurred for the attorney's convenience. By way of example, such

4  excluded "convenience" expenses include postage and handling charges, and ASCII disks[27].

5  Similarly, "live note hookup" expenses and condensed transcripts have been criticized as being

6  "for the convenience of counsel, rather than a necessity for trial."[28]

7  As with every claimed expenditure, common sense limits must be placed on what is

8  reasonable, necessary, and authorized—and what is merely expended for the "convenience" of the

9  parties' counsel. Plaintiffs reasonably relied upon the Northern District Local Rules to help define

10 those boundaries. And based on that analysis, they paid what was reasonable and necessary and

11 declined to pay what was not.

## III.    Plaintiffs Should Not Be Ordered to Pay Further Sanctions

Seyfarth argues that plaintiffs should be further sanctioned in an unspecified amount because plaintiffs disagreed with Seyfarth's interpretation of the Court's order. Yet as stated above, in interpreting the Court's order and paying the required sanctions, plaintiffs did not act in a way that was either arbitrary or unreasonable. Rather, plaintiffs interpreted that order in good faith and to the best of their ability based on guidance as supplied under the Local Rules of this Court and case law. Indeed, even FRCP 37(b)(2)(C) precludes an award of attorneys fees where noncompliance was substantially justified. It would therefore be unfair and improper to further punish plaintiffs for taking a position that they believe in good faith to be correct and legally supported.

Dated: September 2, 2008                    Beck, Ross, Bismonte & Finley, LLP

By: _____/s/_____
    Craig Alan Hansen
    Attorneys for the Plaintiffs and Counterdefendants
    Richard Berger and Brant Berger

---

[27] *Burton v. R.J. Reynolds Tobacco Co.,* 395 F. Supp. 2d 1065, 1080 (D. Kan. 2005). *Accord Scallet v. Rosenblum,* 176 F.R.D. 522 (W.D. Va. 1997) (functions to facilitate information retrieval are not taxable);

[28] *Irwin Seating Co. v. Int'l Business Machines Corp.*, 2008 U.S.Dist LEXIS 33760 at 4 (W.D. Mich. April 24, 2008). *See Kulumi v Blue Cross Blue Shield Association,* 224 F.3d 681 (7th Cir. 2000) (multiple copies for the convenience of attorneys not allowed).